ORAL ARGUMENT HELD MARCH 20, 2023

**No. 22-7063**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS, et al.,
Appellants

v.

PUBLIC.RESOURCE.ORG, INC.,
Appellee

---

Appeal from the United States District Court
for the District of Columbia
Hon. Tanya S. Chutkan, No. 1:13-cv-1215-TSC

---

**JOINT RESPONSE TO SHOW CAUSE ORDER**

---

On October 23, 2023, this Court directed the parties to show cause why the sealed portions of the record in this case should not be unsealed. In response, the parties jointly state:

1.     Plaintiffs-Appellants the American Society for Testing and Materials ("ASTM"), the National Fire Protection Association, Inc. ("NFPA"), and the American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE") (collectively, "Plaintiffs") and Defendant-Appellee Public.Resource.Org. ("PRO") met and conferred, including by telephone conference on December 6, 2023 and by email thereafter, in an effort to reach

1

agreement as to whether the sealed portions of the record should remain under seal or be unsealed.  While the parties reached agreement regarding most of the sealed portions of the record, the parties have been unable to reach a resolution on certain portions.  Plaintiffs' position is that personally identifying information and information they consider to be competitively sensitive or otherwise confidential— such as non-public financial information—should remain under seal.  PRO's position is that the public interest lies in public availability of almost all materials in the lawsuit except for personally identifiable information that is not relevant to the legal issues or proceedings.  This response lays out the parties' respective positions in more detail below.

2.      The parties agree that all sealed material should be unsealed, except the items specifically identified in paragraphs 5, 10-11, and 22-23 below.

## PLAINTIFFS' POSITION

3.      Given the length of the instant litigation, the record in this case is voluminous.  The sealed volumes of the Joint Appendix span 4,267 pages.  Most of the documents in those sealed volumes were filed under seal below because they contain sensitive information regarding Plaintiffs.  Plaintiffs have agreed to drastically narrow the scope of material that remains under seal, including by proposing targeted redactions of material that would remain under seal, as opposed to keeping entire documents under seal.  The categories of material that Plaintiffs

propose to keep under seal are: (1) personally identifying information; (2) confidential financial information; (3) other competitively sensitive information, including information regarding internal strategy; and (4) discussion of a confidential settlement agreement. The information that Plaintiffs propose to keep sealed are classic examples of the types of materials appropriately filed under seal. Most sealed portions of the record pertain to one Plaintiff in particular, and two documents have information regarding multiple Plaintiffs that should remain under seal. Plaintiffs propose that some documents be kept sealed in full, and that other documents be kept sealed only in part.

4.      As to documents that Plaintiffs propose be kept sealed only in part, Plaintiffs are filing an addendum containing copies of those documents to indicate which portions should remain under seal. In the public version of the addendum, Plaintiffs have redacted the portions of the documents that Plaintiffs propose to remain under seal. In the sealed version of the addendum, Plaintiffs have highlighted in yellow the portions of the documents that Plaintiffs propose to remain under seal.

*Statement of American Society for Testing and Materials*

5.      The following chart lists those documents that contain information specific to ASTM where ASTM takes the position that the documents should remain sealed in part, as well as PRO's position regarding whether the document should remain sealed:

| JA Page Nos. | Docket Entry | Portion to Stay Sealed | Basis for Sealing | PRO Position |
|---|---|---|---|---|
| JA68-JA703 | Dkt. 117-2 | Highlighted material in ¶ 15 (JA00077), ¶ 66 (JA00099), ¶ 83 (JA00107), fn. 147 (JA00107), fn. 150 (JA00107), ¶ 129 (JA00126), fn. 220 (JA00129), Tab 3 (JA00177) | Non-public, commercially sensitive financial data | Unseal. |
| JA704-JA895 | Dkt. 118-12 | Highlighted material in ¶ 15 (JA00713), ¶ 66 (JA00735), ¶ 83 (JA00743), fn. 147 (JA00743), fn. 150 (JA00743), ¶ 129 (JA00762), fn. 220 (JA00765), Tab 3 (JA00813) | Non-public, commercially sensitive financial data | Unseal. |
| JA1122-JA1124 | Dkt. 120-14 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA1125-JA1135 | Dkt. 120-20 | Highlighted material | Customer personally identifiable | PRO consents to unsealing with sensitive |

| JA Page Nos. | Docket Entry | Portion to Stay Sealed | Basis for Sealing | PRO Position |
|---|---|---|---|---|
| | | | information /sensitive personal information | personal information redacted. |
| JA1136-JA1148 | Dkt. 120-21 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA1149-JA1203 | Dkt. 120-22 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA1204-JA1205 | Dkt. 120-23 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA1206-JA1207 | Dkt. 120-24 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |

| JA Page Nos. | Docket Entry | Portion to Stay Sealed | Basis for Sealing | PRO Position |
|---|---|---|---|---|
| JA1231-JA1237 | Dkt. 120-26 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA1238-JA1244 | Dkt. 120-27 | Highlighted material | Customer personally identifiable information /sensitive personal information | PRO consents to unsealing with sensitive personal information redacted. |
| JA8729-JA87312 | Dkt. 204-103 | Highlighted material | Non-relevant, commercially sensitive information | PRO consents. |
| Appellants' Reply Brief | - | Highlighted material at p. 28 | Non-public, commercially sensitive financial data | Unseal. |

6. ASTM seeks to seal (1) non-public, commercially sensitive financial data, (2) customer personally identifiable information/sensitive personal information, and (3) non-relevant, commercially sensitive information. "[T]he starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." *E.E.O.C. v. Nat'l Children's Ctr.,*

*Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal quotations omitted). "However, the right of access is far from absolute." *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 925 (D.D.C. 2003). When considering whether a party has overcome the presumption of public access, courts consider six factors: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *E.E.O.C.,* 98 F.3d at 1409.

7.      Non-public, commercially sensitive financial data is "commonly sealed in federal civil litigation." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.,* 292 F.R.D. 19, 25 (D.D.C. 2013) (citing *King v. E.F. Hutton & Co.,* 117 F.R.D. 2, 12 (D.D.C. 1987)). The public interest in the redacted financial information is limited. ASTM has restricted its sealing request to only sensitive, non-public detailed financial analysis related to the sales of ASTM's copyrighted works, such as the expenses from those products, the costs of publications and technical committee operations, and the net income from ASTM's standards-related products. ASTM has been judicious in its sealing application and seeks only to redact the dollar amounts associated with these revenue-related calculations. Although

7

PRO objects to ASTM's proposed redactions, "[d]isclosure of these documents risks causing [ASTM] significant competitive harm because it would grant its competitors insight into [ASTM] business strategy, pricing information, and related concerns." *United States v. Aetna Inc*., 2016 WL 8739257, at *2 (D.D.C. Dec. 4, 2016). ASTM respectfully requests that the Court grant ASTM's request to seal commercially sensitive detailed ASTM financial breakdowns, and in light of the prejudice to ASTM upon disclosure.

8.     ASTM also seeks to seal customer personally identifiable information/sensitive personal information, including names, addresses, phone numbers, email addresses, credit card, and bank account information. This non-public business information contains personal information regarding ASTM's customers and there is a *de minimis* public need for access. PRO consents to the sealing of this information. "Where a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great." *United States v. Anthem, Inc.*, 2016 WL 11164031, at *2 (D.D.C. Dec. 1, 2016) (internal quotations omitted) (citing *United States v. Hubbard*, 650 F.2d 293, 319 (D.C. Cir. 1980)). Here, ASTM seeks to redact personally identifying customer information and has a very strong interest in keeping this information sealed both to protect the privacy interests of its customers and to keep "its proprietary business information private, and is likely to suffer injury if this information is not sealed." *Anthem, Inc.,* 2016

WL 11164031, at *2.  Additionally, the identities of customers are not at issue in this appeal and, therefore, the factors favor sealing.

9.    ASTM finally seeks to seal, in one instance, non-relevant, commercially sensitive information contained in a strategy memorandum.  ASTM has identified the portion of the document at issue relevant to the appeal.  For the remaining information proposed to be sealed, there is little public need to evaluate ASTM's non-relevant, commercially sensitive information as this information is not at issue in this appeal.  Further, PRO consents to ASTM's proposed sealing of this information.  ASTM would be prejudiced by the disclosure of this information as it would "grant its competitors insight into [ASTM] business strategy." *Aetna Inc.*, 2016 WL 8739257, at *2.

<u>*Statement of National Fire Protection Association*</u>

10.    The following chart lists documents that contain NFPA-confidential information and that should remain sealed in full, as well as PRO's position regarding whether the document should remain sealed:

| JA Page Nos. | Docket Entry | Basis for Sealing | PRO Position |
|---|---|---|---|
| JA1100-1118 | Dkt. 120-10 | Competitively sensitive internal strategy. | Unseal the section spanning JA1104-1110. PRO consents to redacting remainder of document as not relevant to the courts' decisions. |
| JA1257-1259 | Dkt. 120-34 | Competitively sensitive internal strategy. | Unseal. |
| JA7197-7198 | Dkt. 203-27 | Competitively sensitive financial information. | Unseal. |
| JA8435-8437 | Dkt. 204-82 | Competitively sensitive financial information. | Unseal. |
| JA8438-8439 | Dkt. 204-83 | Competitively sensitive financial information. | Unseal. |
| JA8440-8445 | Dkt. 204-84 | Competitively sensitive financial information. | Unseal. |
| JA8446-8447 | Dkt. 204-85 | Competitively sensitive financial information. | Unseal. |
| JA8448-8449 | Dkt. 204-86 | Competitively sensitive financial information. | Unseal. |

11.    The following chart lists documents that contain NFPA-confidential information and that should remain sealed in part, as well as PRO's position regarding whether the document should remain sealed:

10

| JA Page Nos. | Docket Entry | Basis for Sealing | PRO Position |
|---|---|---|---|
| JA1013-1049 | Dkt. 120-3 | Competitively sensitive internal strategy. | Unseal in full. |
| JA1245-1253 | Dkt. 120-29 | Personally identifying information. | PRO consents to unsealing with personally identifying information redacted. |
| JA7142-7196 | Dkt. 203-2 | Competitively sensitive internal strategy. | Unseal in full. |
| JA7761-7860 | Dkt. 204-48 | Competitively sensitive financial information; personally identifying information; marketing, product development, and customer information; and confidential settlement. | Unseal material on JA7782-7783. PRO does not oppose the continued sealing of the other portions of the document that NFPA has identified. |
| JA8165-8268 | Dkt. 204-52 | Personally identifying information. | PRO consents to unsealing with personally identifying information redacted. |
| JA8733-JA8857 | Dkt. 212-1 | Competitively sensitive internal strategy. | Unseal in full. |

12.    While there is a "strong presumption in favor of public access to judicial proceedings . . . that presumption may be outweighed by competing interests." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020).  This Circuit "identified such interests," in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), which "subsequent cases [have] crafted . . . into a six-factor test." *In re Leopold*, 964 F.3d at 1127.

13.    Acknowledging the presumption in favor of public access, NFPA consents to the unsealing of a significant amount of the material that it had previously determined should be protected from public disclosure.

14.    But the *Hubbard* factors point the other direction for the narrow and targeted information that NFPA has designated to remain under seal.  For that information:  (1) There is no meaningful need for public access to the information given its negligible, if any, bearing on the issues on appeal—particularly in light of the many other sources of similar, but less sensitive information made publicly available in the record.  (2) Because NFPA has endeavored to isolate only that material that is not publicly available, this information has not been previously disclosed to the best of NFPA's knowledge.  (3) NFPA strenuously objects to the disclosure of its highly sensitive, internal information.  (4 & 5) There are significant privacy interests in keeping this information sealed because of the competitive harm that NFPA would suffer if this information was released—a form of prejudice that

courts routinely find warrants sealing.  (6) This information was introduced to give the court the full background on this long-running appeal but was not the focus of the briefing or decision.

15.    Below, NFPA explains the basis for retaining the sealing designations on those documents where the parties have reached agreement.  As to documents where the parties have not reached agreement, NFPA explains in more detail the privacy interests at issue, the prejudice NFPA would suffer from disclosure, and the lack of public need for the information that PRO objects to keeping sealed.  *See Hubbard*, 650 F.2d 293.[1]

*NFPA's and PRO's Agreements*

16.    <u>Personally identifying information</u>:  NFPA has proposed to keep under seal certain personally identifying information—*e.g.*, home addresses.  *See Stachmus v. Guardian Life Ins. Co. of Am.*, 853 F. App'x 268, 273 (10th Cir. 2021) (granting motion to seal personally identifying information).  PRO does not oppose keeping that information under seal.

---

[1] NFPA did not learn about PRO's objections to retaining sealing designations on its material until two days prior to this filing and has not had an opportunity to review and respond to PRO's positions as set forth in this document.  To the extent the Court is inclined to unseal any of the information that NFPA requests be kept sealed, NFPA requests the opportunity to submit further briefing and/or a declaration or declarations explaining further the need for the information to remain under seal.

17.  <u>Marketing, product development, and customer information</u>:  NFPA has proposed to keep under seal information about NFPA's strategy with respect to marketing and product development, and customer information.  *See Clearly Food & Beverage Co., Inc. v. Top Shelf Beverages, Inc.*, 102 F. Supp. 3d 1154, 1178 (W.D. Wa. 2015); *Mezzadri v. Med. Depot, Inc.*, 2015 WL 12564223, at \*2-3 (S.D. Cal. Dec. 18, 2015); *Nanometrics, Inc. v. Optical Sols.*, 2023 WL 7356602, at \*2 (N.D. Cal. June 21, 2023).  PRO does not oppose keeping that information under seal.

18.  <u>Confidential settlement</u>:  NFPA has designated information about a confidential legal settlement as information that should be kept under seal.  *See Microsoft Corp. v. Motorola, Inc.*, 2012 WL 5476846, at \*5 (W.D. Wa. Nov. 12, 2012).  PRO does not oppose keeping that information under seal.

*NFPA's and PRO's Disagreements*

19.  <u>Competitively sensitive financial information</u>:  NFPA agrees that financial information that is now publicly available should be unsealed, and it has accordingly reached compromise on almost all of the financial information in the record.  But the record also contains non-public financial information that should remain sealed.  Specifically, NFPA proposes to keep under seal financial information that is more granular than what it makes publicly available—for instance, the percentage of publications revenue that comes from particular products, and specific sales figures.  If this information were disclosed, it would cause NFPA

14

competitive harm and prejudice.  For example, NFPA proposes to keep sealed information about the royalties NFPA receives from its licensees.  *See* JA7782-7783. If this information is unsealed—as PRO proposes—then it could give NFPA's licensees a competitive advantage in negotiating license terms with NFPA, which they could use to extract lower prices from NFPA.  NFPA also proposes to keep sealed information about sales of particular products, *see, e.g.*, JA8437, JA8447, which anyone looking to compete with NFPA could use to formulate their strategies and intrude in NFPA's market (as one for-profit company has already done).  As other courts have recognized, NFPA could suffer competitive harm if its non-public financial information becomes public, and it should accordingly remain under seal. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225-26 (Fed. Cir. 2013) (explaining that companies had a "significant interest" in "keeping their detailed product-specific financial information secret," and ruling that district court abused its discretion in ordering the information unsealed); *Nat'l Prods., Inc. v. Arkson Resources, Inc.*, 294 F. Supp. 3d 1042, 1054 (W.D. Wa. 2018) (granting sealing of detailed sales information); *Mezzadri*, 2015 WL 12564223, at *2-3 (sealing "unit and dollar sales information for Defendant's products"); *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 2020 WL 3618573, at *1 (S.D.N.Y. July 2, 2020) (revenue breakdowns subject to sealing).

20.    There also is no meaningful need for the public to access NFPA's non-public financial information that it has designated to remain under seal.  The record already contains less-sensitive financial information, and NFPA has agreed to unseal its public financial information.  *See, e.g.*, JA8327-8351, JA8352-8377.  The public does not need access to NFPA's non-public, granular financial information in order to understand the issues in this case.  There also is not a general public interest in having access to the ins-and-outs of the finances of a private nonprofit organization.  *Compare United States v. Puma*, 2023 WL 2727755, at *4 (D.D.C. Mar. 31, 2023).

21.    Competitively sensitive internal strategy:  Certain documents reflecting NFPA's internal strategy should also remain under seal.  Several documents in the record contain highly sensitive internal discussions regarding potential threats to NFPA's business model and assessments of NFPA's legal and business practices.  Making public these discussions of internal "business decision-making . . . would expose [NFPA] to competitive harm if disclosed" and cause NFPA prejudice.  *Rodman v. Safeway, Inc.*, 2015 WL 13673842 at *2 (N.D. Cal. Aug. 4, 2015) (sealing "internal, nonpublic information discussing Safeway's . . . business decision-making . . . , which would expose Safeway to competitive harm if disclosed"); *see also Clearly Food & Beverage Co.*, 102 F. Supp. 3d at 1178 (good cause to seal "business plans, all of which could be used against Clearly Food by competitors").  For example, NFPA proposes to keep sealed information about efforts it has made

to evolve its business, *see, e.g.*, JA1107, which anyone looking to compete with NFPA could use to inform their own business strategy.  And there is no meaningful need for public access to documents regarding NFPA's internal strategy. Understanding the issues in this case—including whether unauthorized posting of NFPA materials poses a threat to its existence—does not require the public to know the specifics of how NFPA has analyzed and responded to that threat.  Moreover, there is no general public interest in access to the details of internal deliberations of a private nonprofit. *See Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) (public interest in access higher when *government* is a party).

### *Statement of American Society of Heating, Refrigerating, and Air Conditioning Engineers*

22.    The following chart lists documents that contain ASHRAE-confidential information and that should remain sealed in full, as well as PRO's position regarding whether the document should remain sealed:

| JA Page Nos. | Docket Entry | Basis for Sealing | PRO Position |
|---|---|---|---|
| JA03929 | Dkt. 163-7 | Sensitive financial information. | Unseal the portions of this document relating to revenues and net profits.<br><br>PRO does not oppose redacting the rest of the |

| | | | document as not relevant to the courts' decisions. |
|---|---|---|---|
| JA08270-96 | Dkt. 204-61 | Sensitive financial information. | Unseal material on JA08274-8275 and JA08283-84.<br><br>PRO does not oppose redacting the rest of the document as not relevant to the courts' decisions. |
| JA08298-23 | Dkt. 204-62 | Sensitive financial information. | Unseal material on JA08302-8303 and JA08311-8312.<br><br>PRO does not oppose redacting the rest of the document as not relevant to the courts' decisions. |

23.    The following chart lists documents that contain ASHRAE-confidential information and that should remain sealed in part, as well as PRO's position regarding whether the document should remain sealed:

| JA Page Nos. | Docket Entry | Basis for Sealing | PRO Position |
|---|---|---|---|
| JA00069-181 | Dkt. 117-2 | Sensitive financial information. | Unseal in full. |
| JA00705-817 | Dkt. 118-12 | Sensitive financial information. | Unseal in full. |

24.    ASHRAE's limited proposals for material to remain under seal all relate to non-public financial information.  That information—for instance, ASHRAE's specific costs or revenues for a given service—is more granular than publicly disclosed financial information and would cause ASHRAE competitive harm and prejudice if it were disclosed.  Unsealing this information could give ASHRAE's licensees a competitive advantage in negotiating license terms with ASHRAE, which they could use to extract lower prices.  As other courts have recognized, this non-public financial information is the type of information that should remain under seal. *See Samsung Elecs. Co.*, 727 F.3d at 1225-26 (explaining that companies had a "significant interest" in "keeping their detailed product-specific financial information secret," and ruling that district court abused its discretion in ordering the information unsealed); *Nat'l Prods., Inc. v. Arkson Resources, Inc.*, 294 F. Supp. 3d 1042, 1054 (W.D. Wa. 2018) (granting sealing of detailed sales information); *Mezzadri*, 2015 WL 12564223, at *2-3 (sealing "unit and dollar sales information for Defendant's products"); *Haley v. Teachers Ins. &*

*Annuity Ass'n of Am.*, 2020 WL 3618573, at *1 (S.D.N.Y. 2020) (revenue breakdowns subject to sealing).

25.    On the other side of the scales, there is no need for access to ASHRAE's non-public financial information.  There is no general public interest in having access to the ins-and-outs of the finances of a private nonprofit organization, and the public does not need access to this information to understand the issues in this case. *Compare United States v. Puma*, 2023 WL 2727755, at *4 (D.D.C. Mar. 31, 2023).

## PRO'S POSITION

26.    Consistent with its view that the public should have access to the law, PRO believes that public availability should be the default in legal proceedings—and the law agrees. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017).  PRO's position is that the public interest lies in public availability of almost all materials in the lawsuit except for personally identifiable information that is not relevant to the legal issues or proceedings. PRO's opposition to maintaining other material under seal in this case is based on the following:

(a)  Plaintiffs' pretextual reading-room strategy implicates broad public interest beyond this lawsuit, namely in the availability of materials incorporated by reference.  Their documents relating to the reading rooms deserve public attention.

(b)  Plaintiffs have publicly disclosed much of their finances, as required by law, in Forms 990, and they made public assertions about the effect of PRO's actions upon

their finances that justify public exposure of the relevant financial data. Moreover, the financial information at issue is all years old, and there is no competitive need for protection.

(c) There is no reason to protect, as commercially sensitive, strategic plan documents over a decade old. Plaintiffs' discussion of their strategy with respect to PRO and Mr. Malamud are relevant to the public's understanding of the issues and context of the case.

(d) Public availability of the materials is important in light of Plaintiffs' efforts to change copyright law through proposed legislation (which they referred to in court proceedings). Persons evaluating that proposed legislation should have the fullest possible context regarding this lawsuit to better understand the motives for the legislation.

Dated December 15, 2023

/s/ J. Kevin Fee
J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

*Counsel for American Society for Testing and Materials d/b/a/ ASTM International*

/s/  David P. Mattern
Jeffrey S. Bucholtz
David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 737-0500
jbucholtz@kslaw.com

Kenneth L. Steinthal
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
ksteinthal@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc.*

Respectfully submitted,

/s/ Rose Leda Ehler
Rose Leda Ehler
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
rose.ehler@mto.com

Kelly M. Klaus
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
kelly.klaus@mto.com

Donald B. Verrilli, Jr.
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
donald.verrilli@mto.com

*Counsel for National Fire Protection Association, Inc.*

22

*/s/  Corynne McSherry*
Corynne McSherry
Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333
corynne@eff.org
mitch@eff.org

Andrew P. Bridges
Matthew B. Becker
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (415) 875-2300
abridges@fenwick.com
mbecker@fenwick.com

David Halperin
1805 9th Street NW
Washington, DC 20005
Tel: (202) 905-3434
davidhalperindc@gmail.com

*Counsel for Public.Resource.Org*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Rule 27(d)(2)(A). As measured by the word-processing system used to prepare this response, there are 3,756 words in the response excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14 point font.

Dated:  December 15, 2023                    */s/  Rose Leda Ehler*
                                             Rose Leda Ehler

## CERTIFICATE OF SERVICE

I certify that on December 15, 2023, a true and correct copy of the public version of this document was filed via the Court's electronic filing system, which will forward a copy to all counsel of record.  I certify that all participants in this case are registered CM/ECF users.

I certify that on December 15, 2023, a true and correct copy of the sealed version of this document this document was served on the following counsel of record by FedEx:

J. Kevin Fee
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004

*Counsel for American Society for Testing and Materials d/b/a/ ASTM International*

David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc.*

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109

*Counsel for Public.Resource.Org*

Dated:  December 15, 2023

*/s/ Rose Leda Ehler*
Rose Leda Ehler