**Oral Argument Not Yet Scheduled**

No. 22-7063

_IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT_

AMERICAN SOCIETY FOR TESTING AND MATERIALS, _ET AL_.,

_Plaintiffs-Appellants,_

v.

PUBLIC.RESOURCE.ORG,  INC.,

_Defendant-Appellee._

On Appeal from the United States District Court for the District of Columbia
Case Nos. 1:13-cv-1215-TSC and 1:14-cv-0857-TSC (Hon. Tanya S. Chutkan)

**BRIEF OF AMICI CURIAE ON BEHALF OF AMERICAN NATIONAL
STANDARDS INSTITUTE AND SIX STANDARDS ORGANIZATIONS
IN SUPPORT OF APPELLANTS**

Of Counsel:

Gerald W. Griffin
griffin@clm.com

Gary D. Sesser
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, NY 10005
(212) 732-3200
sesser@clm.com

_Attorneys for Amici Curiae_

11119043.2

## CERTIFICATE AS TO PARTIES, RULINGS UNDER
## REVIEW AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amici curiae certify as following:

**(A)    Parties and Amici.** In addition to the parties, intervenors, and amici appearing before the district court and in this court that are listed in the Brief for Plaintiffs-Appellants, filed September 23, 2022, and any amicus briefs filed prior to this one, the following amici curiae appear via this brief:

> American National Standards Institute, Incorporated, Amicus Curiae
> American Society of Civil Engineers, Amicus Curiae
> International Code Council, Amicus Curiae
> The Institute of Electrical and Electronics Engineers, Incorporated, Amicus Curiae
> National Electrical Manufacturers Association, Amicus Curiae
> North American Energy Standards Board, Amicus Curiae
> ULSE Incorporated, Amicus Curiae

**(B)    Rulings Under Review.** References to the rulings at issue appear in the Brief for Plaintiffs-Appellants filed September 23, 2022.

**(C)    Related Cases.** This case was previously before this Court in No. 17-7035. To the knowledge of counsel, other than any cases listed in the Brief for Plaintiffs-Appellants filed September 23, 2022, there are no other related cases currently pending in this Court or in any other court.

Carter Ledyard & Milburn LLP
28 Liberty Street, 41st Floor
New York, NY 10005

Attorneys of Record for Amici Curiae

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

CONCISE STATEMENT OF IDENTITY OF AMICI CURIAE, INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE ............................ 1

ARGUMENT .............................................................................................. 6

UNDERSTANDING THE STANDARDS DEVELOPMENT ECOSYSTEM IS ESSENTIAL TO BALANCING INTERESTS UNDER AN EQUITABLE RULE OF REASON IN FAIR USE ANALYSIS. ................................................. 6

    A.   If the District Court's View Of Fair Use Is Accepted, The Loss Of Copyright Protection In Standards Would Profoundly Harm SDOs, Federal, State And Local Governments And The Public. ......................... 6

        1.   SDOs Would Be Unable To Fund Standards Development If Deprived Of Revenues From Standards Sales. ...................................................... 6

        2.   Governments Would Lose The Ability To Adopt Standards Into Law Or Utilize Standards Themselves. ......................................................... 8

        3.   The Public Would Be Harmed By Lost Efficiencies And Increased Opportunity Costs. ........................................................................... 14

        4.   United States Industry Would Be Diminished. ..................................... 15

    B.   The Federal Government's Current Policies Relative to Incorporation By Reference Reflect A Proper Balancing of Interests With The Standards Ecosystem Consistent With The Fair Use Doctrine. ............................... 16

CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
2017 U.S. Dist. LEXIS 14623 (D.D.C. 2017) .......................................... 17

*CCC Information Services v. Maclean Hunter Market Reports, Inc.*,
44 F.3d 61 (2d Cir. 1994)........................................................................ 17

*Practice Mgmt. Information Corp. v American Medical Association*,
121 F.3d 516 (9th Cir. 1997).................................................................. 17

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .................. 5

**Statutes**

5 U.S.C. Section 552(a)(1)........................................................................ 10
17 U.S.C. § 107........................................................................................ 17

**Regulations**

74 Fed. Reg. 63,287, 63,302 (Dec. 3, 2009) ........................................ 15
79 Fed. Reg. 66267 (November 7, 2014).............................................. 11

**Other Authorities**

OMB Circular A-119, 63 Fed. Reg. 8546 (1998) ..................................... 9
Petition submitted by Peter Strauss et al, February 21, 2012................................... 10
Testimony of Mary H. Saunders Before the House Committee on Science,
Space, and Technology, February 29, 2012................................................ 12

## CONCISE STATEMENT OF IDENTITY OF AMICI CURIAE, INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE

Amici are non-profit standards development organizations ("SDOs") and a national standards coordinating institution that participate in developing private technical and specialized standards.  SDOs invest substantial resources to produce these high-quality standards that are vital to the operation and safety of a range of industries and products.  Consistent with their public-service mission, amici make these standards easily and widely accessible to the public.  The copyright laws make it possible for SDOs to fund their work through the sale and licensing of their standards.  The 185 privately-authored standards at issue in the current appeal were selected by the federal government for incorporation into federal statutes and regulations, including the Code of Federal Regulations.

American National Standards Institute, Incorporated ("ANSI") is a not-for-profit membership organization that, for more than 100 years, has administered and coordinated the voluntary standardization system in the United States.  ANSI facilitates the development of American National Standards ("ANS") by accrediting the procedures of SDOs.  These SDOs work cooperatively to develop voluntary national consensus standards that are used in virtually every industry sector and in all aspects of daily life, from toys and food safety to IT and the built environment. Accreditation by ANSI signifies that the procedures used by the standards developer in connection with the development of ANS meet ANSI's essential requirements for

openness, balance, consensus and due process.  Each of the three appellants and each of the other amici are among the approximately 240 SDOs accredited by ANSI, known as Accredited Standards Developers ("ASDs"), and they are representative of ANSI's broader ASD community.

The American Society of Civil Engineers ("ASCE") is a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business in Reston, Virginia.  Founded in 1852, ASCE is an educational and scientific society representing more than 150,000 members worldwide, including some 110,000 engineers and comprising hundreds of technical and geographic organizations, chapters, and committees.  Its objective is to advance the science and profession of engineering to enhance the welfare of humanity.

The International Code Council, Inc. ("ICC") is a non-profit membership association dedicated to building safety.  The International Codes, or I-Codes, published by ICC, provide one set of comprehensive and coordinated model codes covering all disciplines of construction including structural safety, plumbing, fire prevention and energy efficiency.  All fifty states and the District of Columbia have adopted certain I-Codes at the state or other jurisdictional levels.  Federal agencies including the Architect of the Capitol, General Services Administration, National Park Service, Department of State, U.S. Forest Service and the Veterans Administration also use I-Codes for the facilities that they own or manage.

The Institute of Electrical and Electronics Engineers, Incorporated ("IEEE") is a not-for-profit professional organization dedicated to the advancement of technology for the benefit of humanity with a 125-year history of technological innovation. The organization comprises more than 400,000 members who participate in its activities across the world in more than 160 countries. IEEE, through its Standards Association, comprised of both individual and corporate members, is a globally recognized standards development body that has an open and inclusive process consistent with the World Trade Organization principles on international standardization. IEEE has a portfolio of over 1,000 active standards and over 900 standards under development impacting a wide range of industries including: power and energy, information technology, telecommunications, transportation, nanotechnology, and information assurance.

National Electrical Manufacturers Association ("NEMA") is the association of electrical equipment manufacturers, founded in 1926. NEMA sponsors the development of and publishes over 500 standards relating to electrical products and their use. NEMA's member companies manufacture a diverse set of products including power transmission and distribution equipment, lighting systems, factory automation and control systems, building controls and electrical systems components, and medical diagnostic imaging systems.

North American Energy Standards Board ("NAESB") was formed in 1994. NAESB maintains a membership of over three hundred corporate members

representing the wholesale gas, wholesale electric, retail gas and retail electric markets and has more than two-thousand participants active in standards development.

ULSE Inc. ("UL") is an independent, not-for-profit standards developer dedicated to promoting safe living and working environments since the founding of its parent Underwriters Laboratories Inc. in 1894. UL's standards provide a critical foundation for the safety system in the United States and around the world, as well as promote innovation and environmental sustainability. With over 120 years of experience and the development of over 1,500 standards, UL advances safety science through careful research and investigation.

The copyrighted standards at issue in this case are part of a large and important ecosystem of creative works developed by not-for-profit SDOs. SDOs create and maintain at their own substantial expense their copyrighted standards and make them available to interested parties, government regulators, and the public at large. Loss of copyright protection for these works would drastically undermine the ability of SDOs to fund the ongoing creation and updating of these important works and would therefore harm the governments and the public who benefit from and rely on the work of these SDOs. ASCE, ICC, IEEE, NAESB, NEMA and UL are just six of the hundreds of private SDOs that support their standards development activities through revenues derived from the publication, sale, and licensing of standards made possible by the protection of the copyright laws.

Amici address the court at this time to present one point they believe is important to the resolution of the fair use question in this case. Below, we describe for the court the standards ecosystem in which appellants and amici operate, which we believe the court must consider in connection with its fair use analysis. Fair use contemplates a balancing of interests and an equitable rule of reason. In the words of the Supreme Court, the failure of lower courts to apply "an equitable rule of reason" and balance the interests of the parties and other members of the public in connection with fair use analysis is "erroneous." *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417, 454-55 & n.40 (1984) ("Congress has plainly instructed us that fair use analysis calls for a sensitive balancing of interests.").

The standards development ecosystem serves a vital public interest in the United States and internationally and weighs heavily, in the view of amici, in favor of a conclusion that the balancing of interests does not support the appellee's view of fair use.

## ARGUMENT

Appellee's primary position is that because appellants' privately authored standards have been referenced in statutes and regulations, including the Code of Federal Regulations, those works have forever lost their copyright protection. If this sweeping contention were accepted, it would profoundly harm private SDOs, governments – state, local, and federal – who benefit from private standards development, and the public who benefit from standardization's efficiencies in hundreds of industries, including improvements in the way product components interoperate, and the avoided fiscal burden that would result from government authorship of standards. These legal considerations, which support amici's position, are detailed below.

## UNDERSTANDING THE STANDARDS DEVELOPMENT ECOSYSTEM IS ESSENTIAL TO BALANCING INTERESTS UNDER AN EQUITABLE RULE OF REASON IN FAIR USE ANALYSIS

### A. If the District Court's View Of Fair Use Is Accepted, The Loss of Copyright Protection In Standards Would Profoundly Harm SDOs, Federal, State and Local Governments and the Public.

#### 1. SDOs Would Be Unable To Fund Standards Development If Deprived Of Revenues From Standards Sales.

SDOs rely on copyright protection and the ability it affords to generate revenue from the sale and licensing of the works they create to sustain their ongoing standards creation, refinement, and updating. The development of useful, high-

11119043.2

quality, up-to-date, consensus-based standards is a costly, time-consuming process. Drafting standards requires wide-ranging creative input from a variety of concerned constituencies and sources of expertise, including representatives of the consuming public, industry, and the public safety and regulatory community. In addition, the standards drafting process draws heavily on the administrative, technical, and support services provided by the organizations where the standards are developed.

NEMA, for example, arranges for hundreds of standards-related meetings that take place yearly.  They provide logistical, administrative, and editorial support to the hundreds of technical committees that draft and regularly update standards, and maintain a permanent staff of engineers, technical program managers, and administrative staff who support their standards activities.   These costs are commonly underwritten, in whole or significant part, by the revenues made possible from the copyright-protected sales and licensing of the standards themselves.  For its part, NEMA allocates a substantial portion of the royalties earned from the sale of standards developed by a given technical committee to the committee's next annual budget, thereby reducing the participants' cost of supporting the committee's ongoing work, which in turn results in greater participant involvement.

Similarly, IEEE uses all sales of codes and standards to fund its not-for-profit mission, while UL funds its standards-development activities in part from the licensing of its standards.   Amicus ANSI, while not an SDO, similarly funds

mission-related activities with revenues derived from the sale of standards under licensing agreements with the SDO copyright holders. Without copyright protection, others (not just Public.Resource.Org., Inc. ("PRO"), the appellee) would be free to expropriate and sell or give away the works created or licensed by SDOs, and the ability of ANSI and these SDOs to sustain their standards coordination and development activities, as well as other mission-related programs, would be seriously compromised.

>    **2.    Governments Would Lose The Ability To Adopt Standards Into Law Or Utilize Standards Themselves.**

The impact of losing copyright protection if appellees' view of "fair use" were accepted, however, would be felt by more than just the SDOs. Private standards development provides federal, state, and local governments with valuable and high-quality codes and standards that are created at no cost to taxpayers, and governments at all levels have recognized the importance of privately developed codes and standards by adopting them in great numbers.

In recognition of the benefits of private standards development, the federal government has long made it a policy to adopt such standards unless there is a valid reason for not doing so. That policy is expressed by the Office of Management and Budget ("OMB") in Circular A-119, which directs all federal agencies to incorporate "in whole, in part, or by reference" privately developed standards for regulatory and other activities "whenever practicable and appropriate." OMB Circular A-119, 63

Fed. Reg. 8546, 8554-55.  OMB Circular A-119 expressly acknowledges that doing

so "[e]liminate[s] the cost to the government of developing its own standards." *Id.*

at 8554.  Importantly, for this policy to succeed, private authors must have an

incentive to create works useful to the government.  OMB thus requires agencies to

"observe and protect the rights of the copyright holder and any other similar

obligations." *Id.* at 8555.  This policy of federal government use of privately

developed standards was codified and fortified in the *National Technology Transfer*

*and Advancement Act of 1995* ("NTTAA").

　　　OMB revised Circular A-119 on January 27, 2016, 81 FR 4673 (January 27,

2016), and made clear the government's position on copyright when standards are

referenced by federal agencies in agency regulations.   After noting that the Office

of Federal Register ("OFR") had, in November 2014, developed a rule to ensure that

standards referenced in federal agency regulations were "reasonably available" (see

discussion below),  OMB stated that OFR had "balanced its statutory obligations

regarding reasonable availability of the standards with: (1) U.S. copyright law, (2)

U.S. international trade obligations, and (3) agencies' ability to substantively

regulate under their authorizing statutes,"[1] and then directed in Circular A-119:

> If an agency incorporates by reference material that is
> copyrighted or otherwise subject to legal protection and

---

[1] OMB Circular A-119 at 7, available at
https://obamawhitehouse.archives.gov/sites/default/files/omb/inforeg/revised_circular_a-119_as_of_1_22.pdf.

> *not freely available*, the agency should work with the
> relevant standards developer to promote the availability of
> the materials, consistent with applicable law, such as
> through the use of technological solutions, low-cost-
> publication, or other appropriate means, *while respecting
> the copyright owner's interest in protecting its intellectual
> property*.[2]

Importantly, the Freedom of Information Act ("FOIA") provides an effective

mechanism to balance the rights of copyright holders in standards incorporated by

reference with the public's right to access the law.  Specifically, FOIA expressly

authorizes reference by the Code of Federal Regulations ("CFR") to materials

incorporated by reference, with the approval of the OFR, that are "reasonably

available to the class of persons affected thereby." 5 U.S.C. Section 552(a)(1).  In

other words, a standard is eligible for incorporation by reference only if the federal

agency wishing to include the standard determines that it is "reasonably available"

to the class of persons affected by the anticipated public law.

The "reasonably available" approach was reaffirmed by the OFR in response

to a petition signed by a number of petitioners, including PRO.[3]  That petition asked

the National Archives and Records Administration ("NARA") to define "reasonably

available" in the regulations to require free access to standards incorporated by

reference into the CFR.  The OFR rejected this request, reaffirming in its Final Rule

---

[2] *Id.* at 21 (emphasis supplied).  OMB added, "If a standard is used and published in an agency document, your agency must observe and protect the rights of the copyright holder . . ."
[3] *See* Petition submitted by Peter Strauss et al, February 21, 2012.
http://www.gpo.gov/fdsys/pkg/FR-2012-02-27/pdf/2012-4399.pdf.

on November 7, 2014, that "reasonably available" means that the standard is accessible to any potential user but does not require that the standard be available without a fee. 79 Fed. Reg. 66267 (November 7, 2014).  Instead, the OFR announced non-confiscatory revisions to its rules, including clarifying that government agencies "should collaborate with the [SDOs] and other publishers of [incorporated by reference] materials, when necessary, to ensure that the public does have reasonable access to the referenced documents." *Id.* at 66268.   The government's balancing of interests by requiring reasonable access as a precondition to referencing a standard in a regulation satisfies the alleged purpose of making standards available under Factor 1 of the fair use analysis.

As the federal policy reflected in OMB Circular A-119, the NTTAA, and the OFR's rulemaking make clear, the U.S. government has important interests at stake and the effective destruction of copyright protections in SDO-developed standards incorporated by reference would have a damaging impact on the federal government. Indeed, according to the U.S. National Institute of Standards and Technology ("NIST"), federal government agencies engage in standardization in a wide range of mission specific roles, including contributing to development of standards in the private sector, ensuring that standards are not used as technical barriers to trade by trading partners, using standards for procurement or regulatory actions, and addressing competition-related aspects of standards-setting activities.

The federal government also itself relies heavily on privately developed standards to serve diverse regulatory objectives. For example, the Federal Energy Regulatory Commission ("FERC") uses incorporation by reference to make standards developed by NAESB mandatory for participants in the wholesale energy markets. The use of consensus standards reduces the cost to agencies due to economies of scale resulting from using the same standards for government as are used for the commercial sector, and while simultaneously spurring innovation and greater product choice.[4]

At the state and local level, as is the case at the federal level, it is fair to say that governments could not effectively function without privately developed standards. Virtually all safety regulation requires expertise and experience that is beyond the resources of government agencies alone to marshal. A prime example of this governmental reliance is in the regulation of buildings and their related systems such as heating and cooling, plumbing, and electrical. Virtually all state and local plumbing and mechanical codes are based on a model building code developed by an SDO.

SDOs like amici, in furtherance of their not-for-profit safety and welfare

---

[4] *See* Testimony of Mary H. Saunders, Director, Standards Coordination Office National Institute of Standards and Technology U.S. Department of Commerce Before the House Committee on Science, Space, and Technology, Subcommittee on Technology and Innovation, February 29, 2012, available at
https://science.house.gov/sites/republicans.science.house.gov/files/documents/hearings/HHRG-112-SY19-WState-MSaunders-20120228.pdf

purposes, make available the use of their works by governmental entities in setting safety and other regulations when those entities deem it in the public interest.   They do so with the understanding that these works will retain their copyright protection while still being made reasonably available to anyone who needs them in order to comply with the law or to participate in the government programs that incorporate those works. Indeed, for these works to have any utility for the governments that utilize them, they must be made generally and reasonably available, and it is in the interests of the SDOs to see that they are.

In keeping with the "reasonably available" requirement, amici make their standards available through multiple distribution channels, including online "reading rooms" and retail sales sites, and they offer them in a variety of formats, including subscriptions, compilations, and various other electronic products. ANSI, for example, offers an Incorporated By Reference ("IBR") Portal that provides free, read-only, online access to a number of standards that have been incorporated by reference.  NEMA relies upon the ANSI IBR Portal to host 25 of its standards that have been incorporated by reference in federal regulations.  UL and IEEE host their own IBR portals that provide free, read-only, online access to each of their standards that have been incorporated by reference.  NAESB provides free access to its standards through requests of waivers and requests for access through an electronic product that allows for electronic review for a limited period, at no fee.  The

appellants make their standards that have been incorporated by reference available through a similar mechanism.

### 3. The Public Would Be Harmed By Lost Efficiencies And Increased Opportunity Costs.

The lessening of copyright protection in standards ultimately would have the greatest negative impact on the very group that the PRO in this case purports to represent – citizens whose access to the law is allegedly compromised because they may have to pay for a copy of a standard. Indeed, the public has the most to lose if copyright protection is lost every time federal, state, or local governments incorporate a standard into law.

If SDOs lose copyright protection in standards, they may be forced to increase stakeholder participation fees in order to offset the loss of revenues from the sale of standards. This would, in turn, disenfranchise consumers, small businesses, and local governments and potentially result in a situation where those with money could have a disproportionately increased influence over the standards development process. This would also likely result in fewer and lower-quality standards for use by the consuming public. The lack of industry-wide contributions and fewer participants in the standards development process would result in less transparency, diminished inclusivity, and standards becoming less broad- based.

Equally significant, if SDOs lose copyright protections in their standards, governments may be compelled to develop more detailed regulations afresh,

resulting in increased regulatory costs that would be passed on to consumers.  If for example NAESB could no longer afford to stay in the standards-writing space and FERC took over the task of writing standards, the process probably would be done substantially less efficiently and more costly. FERC has explained that "[f]rom our experience, the NAESB process is [a] far more efficient and cost effective method of developing technical standards for the industries involved than the use of a notice and comment rulemaking process involving numerous technical conferences in Washington that all believe they have to attend," concluding that "the benefits of having a well-established, consensus process outweigh whatever costs non-members may incur in having to obtain copies of the standards."[5]

### 4.    United States Industry Role in Establishing Standards for New and Emerging Technologies Would Be Diminished.

Finally, if SDOs were forced to withdraw from standards development because they could no longer fund their operations, standards for new and emerging technologies could go undeveloped in the United States.  The United States, as a leader in innovation through industry-led standards development, would be negatively impacted.  Because standards development is so costly – in time, personnel, travel and international membership fees – if U.S. SDOs were to lose

---

[5] Standards for Business Practices and Communication Protocols for Public Utilities, Final Rule, 74 Fed. Reg. 63,287, 63,302 (Dec. 3, 2009).

copyright revenue and pull back from engagement in standards development activities, the United States would reduce or even lose its role in international standards development organizations and technical committee work. This, in turn, could allow countries, particularly those for which government funding rather than industry funding drives the standardization process, to play a greater role in contributing to standards adopted by the international community. This could result in fewer opportunities for U.S. companies and workers in industries driven by standardization activities and fewer opportunities for U.S. products, innovations, and services to be produced and sold around the world.

The importance of reliable, consistent funding of U.S. standards development through copyright-based revenue is an issue that extends beyond leadership and involvement in standards development work: standards are a tremendous part of international market access and related issues that have been negotiated as part of the United States Mexico Canada Agreement (USMCA) and continue to be negotiated as part of other trade agreements.

**B.** **The Federal Government's Current Policies Relative to Incorporation By Reference Reflect A Proper Balancing of Interests With The Standards Ecosystem Consistent With The Fair Use Doctrine.**

As the foregoing discussion demonstrates, the interests of governments and standards development organizations are well balanced under current federal policy that protects the copyright interests of standards development organizations while

16

providing public policy with informational resources that advance government interests. Current federal policy has reasonably and "sensitively" balanced the private interests of copyright holders and the public. Amici submit that the District Court was right when it concluded in connection with granting appellants' first motion for summary judgment, "[h]owever, changes to the statutory or regulatory framework that reconsider the balancing of interests underlying modern copyright law and incorporation by reference must be made by Congress, not this court." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc*., 2017 U.S. Dist. LEXIS 14623 at *47 (D.D.C. 2017). That conclusion is highly relevant to the balancing of interests contemplated by the fair use doctrine in this case.

Indeed, it is precisely this balancing that permits this Court to avoid reaching a Constitutional question. A rule that the incorporation of a standard by a legislature or administrative body deprives the copyright owner of its property would, as one court observed, "raise very substantial problems under the Takings Clause of the Constitution." *CCC Information Services v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994), *cert. denied*, 516 U.S. 817 (1995); *Practice Mgmt. Information Corp. v American Medical Association*, 121 F.3d 516, 520 (9th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998) (same concern). When considering the construction of Section 107 of the Copyright Act, this Court should balance the interests in a manner that forecloses a Takings Clause problem.

## CONCLUSION

For the forgoing reasons, amici respectfully ask this honorable

Court to enter judgment for appellants.

11119043.2

Respectfully submitted,

CARTER LEDYARD & MILBURN, LLP

*/s/ Gary D. Sesser*

 Gary D. Sesser

Of Counsel:

Gerald W. Griffin
griffin@clm.com

28 Liberty Street, 41st Floor
New York, NY 10005
Phone: (212) 238-8672
Fax: (212) 732-3232
sesser@clm.com
*Attorneys for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3,837 words.  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

Dated: October 27, 2022

*/s/ Gary D. Sesser*
Gary D. Sesser
*Counsel for Amici Curiae*

11119043.2

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on this October 27, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system, which will serve notice of such filing upon all counsel of record.

Dated: October 27, 2022

*/s/ Gary D. Sesser*
Gary D. Sesser
*Counsel for Amici Curiae*

11119043.2