NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 22-7063

AMERICAN SOCIETY FOR TESTING AND MATERIALS; NATIONAL FIRE PROTECTION ASSOCIATION, INC.; AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.,

*Plaintiffs-Appellants,*

*v.*

PUBLIC.RESOURCE.ORG, INC.,

*Defendant-Appellee.*

_____

THE COPYRIGHT ALLIANCE,

*Amicus Curiae for Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:13-cv-1215-TSC, Honorable Tanya S. Chutkan*

## *AMICUS CURIAE* BRIEF OF COPYRIGHT ALLIANCE IN SUPPORT OF PLAINTIFFS-APPELLANTS

NANCY E. WOLFF
  SCOTT J. SHOLDER
  COUNSEL OF RECORD
COWAN, DEBAETS, ABRAHAMS
  & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
nwolff@cdas.com
ssholder@cdas.com

*Counsel for Amicus Curiae*

October 28, 2022

## CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amici curiae certify as following:

(A)     **Parties and Amic**i. In addition to the parties, intervenors, and amici appearing before the district court and in this court that are listed in the Brief for Plaintiffs-Appellants, filed September 23, 2022, and any amicus briefs filed prior to this one, the following amici curiae appear via this brief:

> Copyright Alliance

(B)     **Rulings Under Review.** References to the rulings at issue appear in the Brief for Plaintiffs-Appellants filed September 23, 2022.

(C)     **Related Case**s. This case was previously before this Court in No. 17-7035. To the knowledge of counsel, other than any cases listed in the Brief for Plaintiffs-Appellants filed September 23, 2022, there are no other related cases currently pending in this Court or in any other court.

Dated:      New York, New York
            October 28, 2022

                              /s/ Nancy E. Wolff
                              Nancy E. Wolff
                                Scott J. Sholder
                                *Counsel of Record*
                              COWAN DEBAETS ABRAHAMS &
                                SHEPPARD LLP
                              41 Madison Avenue, 38th Floor
                              New York, New York 10010
                              Tel: (212) 974-7474

                              *Attorneys for Amicus Curiae*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* the Copyright Alliance states that it does not have a parent corporation, and that no publicly held corporation owns 10% or more of *amicus*'s stock.

# <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE AS TO PARTIES, RULINGS & RELATED
CASES ........................................................................................... i

CORPORATE DISCLOSURE STATEMENT ............................................ ii

TABLE OF CONTENTS................................................................. iii

TABLE OF AUTHORITIES .......................................................... iv

INTEREST OF *AMICUS* ............................................................. 1

SUMMARY OF ARGUMENT .................................................... 4

ARGUMENT ............................................................................. 5

CONCLUSION .......................................................................... 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                 Page(s)

*American Soc'y for Testing & Materials v. Public.Resource.org, Inc.,*
  2017 WL 473822 (D.D.C. Feb. 2, 2017) ........................................ 5, 6, 7, 8

*American Soc'y for Testing & Materials v. Public.Resource.org, Inc.,*
  896 F.3d 437 (D.C. Cir. 2018) ........................................................ 5, 6, 13

*Association of Am. Publishers, Inc. v. Frosh,*
  586 F. Supp. 3d 379 (D. Md. 2022) .................................................. 10, 11

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994) .................................................................................. 10

*Capitol Recs., LLC v. ReDigi Inc.,*
  910 F.3d 649 (2d Cir. 2018) ..................................................................... 10

*Eldred v. Ashcroft,*
  537 U.S. 186 (2003) .................................................................................. 10

*Goldstein v. California,*
  412 U.S. 546 (1973) .................................................................................. 11

*Graham v. John Deere Co. of Kansas City,*
  383 U.S. 1 (1966) ...................................................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enters.,*
  471 U.S. 539 (1985) .................................................................................... 8

*Orson, Inc. v. Miramax Film Corp.,*
  189 F.3d 377 (3d Cir. 1999) ..................................................................... 11

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984) .................................................................................. 10

*Stewart v. Abend,*
  495 U.S. 207 (1990) .................................................................................. 10

*Thompson v. Hubbard,*
  131 U.S. 123 (1889) .................................................................................. 11

iv

*United States v. Fausto*,
    484 U.S. 439 (1988) ................................................................. 13

*Wayman v. Southard*,
    23 U.S. 1 (1825) ...................................................................... 13

*Wheaton v. Peters*,
    33 U.S. 591 (1834) ................................................................. 11

United States Constitution

U.S. Const., Art. I, § 1 ................................................................ 13

U.S. Const., Art. I, § 8, cl. 8 ....................................................... 11

Statutes

17 U.S.C. § 102(b) ...................................................................... 9

17 U.S.C. § 105(b) ...................................................................... 14

17 U.S.C. § 701 ........................................................................... 11

17 U.S.C. § 701(b) ...................................................................... 12

17 U.S.C. § 702 ........................................................................... 11

National Technology Transfer and Advancement Act of 1995,
    Pub. L. No. 104-113, 110 Stat. 775 (1996) ............................... 7

Regulations

79 Fed. Reg. 66267 (Nov. 7, 2014) ............................................ 7

Other Authorities

H.R. REP. 94-1476, 1976 U.S.C.C.A.N. 5659.............................................. 14

Emily S. Bremer, *Incorporation by Reference in an Open-Government A*ge,
   36 Harv. J.L. & Pub. Pol'y 131 (2013) ....................................................... 7

Pursuant to Federal Rule of Appellate Procedure 29(a), *amicus curiae* the Copyright Alliance respectfully submits this brief in support of appellants the American Society for Testing and Materials ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air-Conditioning Engineers ("ASHRAE") (collectively, "Appellants"). This brief is submitted with consent by the parties.[1]

## <u>INTEREST OF *AMICUS CURIAE*</u>

The Copyright Alliance is dedicated to promoting and protecting the ability of creative professionals to earn a living from their creativity. It is a nonprofit, nonpartisan 501(c)(4) public interest and educational organization and represents the copyright interests of over 2 million individual creators and over 15,000 organizations across the entire spectrum of creative industries, including authors, songwriters, musical composers and recording artists, graphic and visual artists, photographers, journalists, documentarians, television and filmmakers, and software developers. The Copyright Alliance's membership encompasses these individual creators and innovators, creative

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no counsel for any party authored this brief in whole or in part, and no party or counsel for any party made a monetary contribution intended to fund the preparation or submission of this brief. Only *amicus curiae* made such a monetary contribution. Some Copyright Alliance members are, or are affiliates of, Appellants in this matter.

union workers, and small businesses in the creative industry, as well as the organizations and corporations that support and invest in them. The livelihoods of this diverse array of creators and companies depend on the exclusive rights guaranteed by copyright law.

The Copyright Alliance's members rely heavily on copyright law to protect and commercialize their works, which in turn incentivizes the creation of new works and promotes the progress of the arts. The Copyright Alliance and its members have a strong interest in the proper application of copyright law, including with respect to appellee Public.Resource.Org, Inc.'s ("Appellee") practice of copying and distributing—for free—Appellants' copyrighted works in their entireties on Appellee's website without authorization. While it is clear that Appellee's infringing activity causes harm to the existing and potential markets for Appellants' works (particularly hard copy and printable and downloadable PDF copies of the standards they create), any expansion of the practice by Appellee or other parties, whether to other standards or different copyrighted works, would cause widespread harm to many other creative professionals and undermine the very purpose of copyright.

The Copyright Alliance submits this amicus brief in support of Appellants to highlight the reasons that dictate a rejection of the manufactured

carve-out from copyright protection that Appellee advances in defense of its unauthorized reproduction and distribution of full versions of copyright protected works. Allowing a private party like Appellee to manufacture exceptions to copyright law threatens not only print works like those created and sold by Appellants, but potentially all other types of copyrighted works, creative professionals, and creative industries. Indeed, only Congress—not private litigants or even the courts—is empowered to create such exceptions.

The Copyright Alliance supports making federal, state, and local laws—including privately-authored standards that become governing law—freely accessible to the public and would not support any policy that would restrict access to the law. However, Appellee's approach short circuits the process by which politically accountable bodies determine how to best implement free access to the law. Permitting any organization, such as Appellee, to wholesale copy and distribute for free scanned versions of Appellants' copyrighted works to any user anywhere, without license or authorization, would strip creators and copyright owners of their statutory rights to commercialize and control their works and upend the balance established by Congress in setting the metes and bounds of copyright protection under the Copyright Act.

## SUMMARY OF THE ARGUMENT

Appellants create vital works in the form of written standards guides, manuals, and procedural documents that inform issues of public health and safety and promote industry regulations and best practices for many critical professions from firefighters to electricians, and from medical devices to consumer products. These types of standards have been around for more than a century and are relied upon not only by private industries but also local, state, and federal governments.

Appellee's reproduction and distribution of Appellants' copyrighted works, purportedly in the interest of transparency and public access to law and legal information, violates several exclusive rights granted to copyright owners under Section 106 of the Copyright Act. The Copyright Alliance does not repeat the fair use arguments made in Appellants' brief, and so focuses on Appellee's attempt to manufacture a carve-out from copyright protection for standards materials, which should fail given the broad rights conferred to Appellants by Congress and the Constitution. But creating carve-outs and exclusions from copyright protection is the job of the legislature, not private lawyers or even the judiciary. Indeed, courts have repeatedly, and correctly, rejected prior efforts to find lawyer-created loopholes in these broad rights. No basis exists for Appellee to dictate a different outcome.

The arguments Appellee makes would unleash dire consequences for creators and copyright owners of all stripes. It would open the door for commercial actors to exploit others' hard work and financial investments, without seeking permission or contributing to the creative effort, simply by fabricating exceptions to the law that do not exist under the proper and rightful authority of Congress.

## ARGUMENT

## I. STANDARDS MATERIALS ARE VALUABLE COPYRIGHT-PROTECTED WORKS THAT ARE CRITICALLY IMPORTANT TO MANY INDUSTRY SECTORS AND GOVERNMENT ENTITIES

Appellants' mission is to develop standards across myriad industries in pursuit of the incalculable societal benefit derived from helping to ensure public health, safety, sustainability, and efficiency through the establishment of voluntary consensus-based specifications concerning product and materials manufacturing, testing, protocols, and procedures. *See Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, 2017 WL 473822, at *2 (D.D.C. Feb. 2, 2017) ("*ASTM I*"); *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, 896 F.3d 437, 441 (D.C. Cir. 2018) ("*ASTM II*"). These works support best practices in numerous professions and safeguard the public against health and safety risks associated with innumerable everyday products.

5

Appellants create their standards painstakingly, with the input of many stakeholders, and at tremendous cost. *See ASTM II*, 896 F.3d at 441. Some, like NFPA's National Electrical Code (one of more than 300 of their standards in the areas of fire, electrical, and building safety), have been in existence for more than 100 years. *See ASTM I*, 2017 WL 473822, at *1. ASTM alone "has developed over 12,000 standards" related to consumer products, medical services and devices, electronics, construction, petroleum, energy, and water, that "are [a result of] the combined efforts of over 23,000 technical members." *Id.* ASHRAE has created and published more than 100 standards in the areas of construction, including with respect to air quality and sustainability. *Id.*

Appellants' standards serve a valuable purpose. While the standards Appellants develop typically serve as "voluntary guidelines for self-regulation," the federal government, as well as state and local governments, have incorporated many of these guidelines by reference into their laws, demonstrating the importance of these works not only to the private industries they seek to guide and improve, but to elected officials and their constituents around the country. *ASTM II*, 896 F.3d at 440. For instance, the federal government incorporates many of the voluntary standards Appellants draft by reference "to achieve several goals, including eliminating the cost to the federal government of developing its own standards, encouraging long-term

6

growth for U.S. enterprises, promoting efficiency, competition, and trade, and furthering the reliance on private sector expertise." *ASTM I*, 2017 WL 473822, at *3 (citing 5 U.S.C. § 552). Indeed, in 1995, Congress passed the National Technology Transfer and Advancement Act, which states that agencies "use technical standards that are developed or adopted by voluntary consensus standards bodies, using such technical standards . . . to carry out policy objectives or activities . . . ." Pub. L. No. 104- 113, § 12(d)(1), 110 Stat. 775, 783 (1996).

This incorporation-by-reference process also shows deference for the rights of copyright owners such as Appellants. *See, e.g.*, 79 Fed. Reg. 66267, at *66268 (Nov. 7, 2014) ("[W]hen the Federal government references copyrighted works, those works should not lose their copyright."), *66273 ("[W]e cannot issue regulations that could be interpreted as removing copyright protection from IBR'd standards."). Specifically, legislatures, including Congress, do not wholesale copy the text of Appellants' works, but rather direct the readers of applicable statutes or regulations to the proper standard by referencing that standard's unique identifiers so the full text can be easily accessed in a lawful manner, *see, e.g.*, *ASTM I*, 2017 WL 473822, at *3; Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36 Harv. J.L. & Pub. Pol'y 131, 143–44, 200–01 (2013), which includes

7

free read-only online access as well as downloadable PDFs and printed versions to purchase. *See ASTM I*, 2017 WL 473822, at *4; Appellants' Br. at 3–4, 6, 8–9.

The widespread adoption, use, and utilization of Appellants' standards, guidelines, and procedures is a testament to their quality and value. However, there is a cost to their elaborate development process, and Appellants must recoup the cost of creating their valuable works mainly by selling and licensing print and PDF copies of their works to those in the applicable industries who rely on the standards in their professions. *ASTM I*, 2017 WL 473822, at *4, *10–11. These sales allow industry players to obtain physical works as well as digital copies that they can use in their business. Anyone, including industry players, can also access Appellants' online "reading rooms," which only offer free read-only access to the standards. *Id.* at *4.

Unchecked infringement, such as that engaged in by Appellee, threatens Appellants' ability to control and commercialize their works—endangering their ability to earn revenue, fund future projects, and perpetuate their mission-driven work. This usurpation of rightsholders' exclusive rights of reproduction and distribution causes harm as it erodes existing markets, which runs expressly contrary to the intent of copyright. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985) ("[I]t should not

8

be forgotten that the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas.").

## II. ONLY CONGRESS IS EMPOWERED TO DECIDE WHETHER AND UNDER WHAT CIRCUMSTANCES TO EXPAND EXCEPTIONS THAT ALLOW UNAUTHORIZED USE OF COPYRIGHTED WORKS

Appellee is reproducing and distributing online entire copyrighted works of the Appellants *en masse* with no valid legal basis. *See* Appellants' Br. at 2. Worse, it attempts to justify its policy of aggressive reproduction and distribution of full-print works in knowing contravention of the Copyright Act by claiming that the standards Appellants author, immediately upon incorporation by reference, are in their entirety "the law" and thus either are unprotected completely under 17 U.S.C. § 102(b) or may be wholesale copied and distributed. *See id.* Appellee does not have the power to make such broad unilateral pronouncements about what should and should not be protected by the Copyright Act.[2]

---

[2] Even so, Appellee conveniently ignores that Appellants already provide free public read-only online access to the same published standards Appellee has poached and disregards the harm to the creators of these materials that results from its practices, i.e., the cannibalization of Appellants' print volume sales, which are the lifeblood of their self-funded business model. Appellants' Br. at 3–4, 6, 8–9.

9

Only Congress has the authority to expand, contract, or make carveouts to the scope of copyrightable works under the Copyright Act or to alter or modify statutory exceptions (such as fair use and the first-sale doctrine), or the law generally. *See, e.g.*, *Eldred v. Ashcroft*, 537 U.S. 186, 205 (2003) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984)) ("[I]t is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors . . . ."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (explaining Congress's intent in codifying fair use); *Stewart v. Abend*, 495 U.S. 207, 230 (1990) ("Th[e] evolution of the duration of copyright protection tellingly illustrates the difficulties Congress faces. . . . [I]t is not our role to alter the delicate balance Congress has labored to achieve."); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 6 (1966) ("Within the limits of the constitutional grant, the Congress may, of course, implement the stated purpose of the Framers by selecting the policy which in its judgment best effectuates the constitutional aim."); *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 664 (2d Cir. 2018) (court declining to "substitute [its] judgment for that of Congress" regarding the first sale doctrine's applicability to digital works); *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 395–96 (D. Md. 2022) (same).

10

The allocation to Congress of the balancing of rights and exceptions surrounding the unauthorized use of copyrighted works is clear from the Constitution and the text and history of the Copyright Act itself.  *See* U.S. Const., Art. I, § 8, cl. 8 ("Congress shall have Power . . . [t]o promote the Progress of Science . . . by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."); *see also* 17 U.S.C. §§ 701, 702; *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889) (holding that the remedies for infringement "are only those prescribed by [C]ongress"); *Wheaton v. Peters*, 33 U.S. 591, 662–64 (1834) (stating that long before the enactment of the Copyright Act, it was settled that the protection given to copyrights is wholly statutory and led by Congress); *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 382 (3d Cir. 1999) (stating that Congress passed the Copyright Act to protect private rights by "implement[ing] a nationally uniform system for the creation and protection of rights in a copyrighted work" (citing *Goldstein v. California*, 412 U.S. 546, 561 (1973)); *Frosh*, 586 F. Supp. 3d, at 388–89.

Congress, in turn, has historically delegated some authority to agencies, such as the U.S. Copyright Office, to assist in and advise on striking the balance between the limited rights of unlicensed users of copyrighted materials and the importance of preserving the exclusive rights of copyright

holders. *See* 17 U.S.C. § 701(b) (directing the Copyright Office to advise Congress on issues relating to copyright, provide assistance to federal departments regarding matters which relate to copyright, and participate in meetings with international and intergovernmental organizations and officials on matters relating to copyright); *id.* § 702 ("The Register of Copyrights is authorized to establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title."); U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 101 (3d ed. 2021) (stating that Congress has delegated authority to the Copyright Office to develop regulations concerning many areas of copyright law).

Resting these decisions with Congress and its delegates, not the courts or any one individual or company, is both intentional and crucial. Congress and the Copyright Office have the responsibility and expertise to undertake the significant research, review, and (where applicable) notice-and-comment periods to determine changes to the law. Appellee is a private non-profit entity, not a legislative body and cannot simply make its own rules. Appellee also lacks the incentive that Congress has to ensure that the interests of all stakeholders and creators are considered, and that precaution is taken to avoid harming existing markets for copyrighted works such as Appellants'.

12

The foundational notion of separation of powers makes clear that legislative and policy decisions such as what works should be included and excluded from copyright protection are squarely in the province of Congress and not the courts and cannot be left in the hands of one entity, such as Appellee. *See* U.S. Const., Art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States . . . ."); *Wayman v. Southard*, 23 U.S. 1, 42–43 (1825) (holding that Congress cannot delegate to the Courts, or any other tribunals, the powers which are strictly and exclusively legislative). Indeed, this Court, in *ASTM II*, declined to create "*sui generis* caveats to copyright law for incorporated standards." 896 F.3d at 447. By extension, Appellee certainly cannot be the one to determine the format and distribution method of a copyright holder's work without the owner's authority and consent, and cannot decide, on its own, that Appellants' works fall outside the scope of copyright protection and within the realm of public law that must be freely available to all.

As noted above, standards such as Appellants' works have been around for more than a century, and Congress has known about the way such codes and standards are created for many years and has had many opportunities, through various amendments to the Copyright Act, to say that these works should not be protected by copyright. *United States v. Fausto*, 484 U.S. 439,

13

453 (1988) ("[It] can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change."). But Congress has never done so. To the contrary, in the legislative history of the 1976 revision to the Copyright Act, Congress even stated that privately authored works do not lose protection simply because they are published by the government. *See* H.R. REP. 94-1476, 60, 1976 U.S.C.C.A.N. 5659, 5673 ("Section 8 of the statute now in effect includes a saving clause intended to make clear that the copyright protection of a private work is not affected if the work is published by the Government."); *Cf.* 17 U.S.C. § 105(b). ("[T]he covered author of a covered work owns the copyright to that covered work."). Of course, Appellants' works cannot even be considered published by the government when they are merely incorporated by reference.

Appellee should not be allowed to rewrite the law to eliminate Appellants' copyright protections through its misguided theory that Appellants' privately authored works are equivalent to uncopyrightable public laws and thereby freely available for anyone to post, share, download, print, and distribute online with impunity.

14

## <u>CONCLUSION</u>

For the reasons set forth above, and for those set forth in Appellants'

brief, the Copyright Alliance, as *amicus curiae* respectfully requests that the

Court rule in favor of Appellant.

Dated:          New York, New York
                October 28, 2022

                              /s/ Nancy E. Wolff

                              Nancy E. Wolff
                                 Scott J. Sholder
                                 *Counsel of Record*
                              COWAN DEBAETS ABRAHAMS &
                                 SHEPPARD LLP
                              41 Madison Avenue, 38th Floor
                              New York, New York 10010
                              Tel: (212) 974-7474

                              Keith Kupferschmid
                              Kevin Madigan
                              COPYRIGHT ALLIANCE
                              1224 M Street, NW, Suite 101
                              Washington, DC  20005
                              Tel: (202) 540-2247

                              *Attorneys for Amicus Curiae*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,092 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as counted by Microsoft® Word 2007, the word processing software used to prepare this brief.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2007, Times New Roman, 14 point.

/s/ Nancy E. Wolff
Nancy E. Wolff
*Attorneys for Amicus Curiae*
Dated:      October 28, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2022, I caused the foregoing Brief of *Amicus Curiae* Copyright Alliance in Support of Plaintiff-Appellant to be filed electronically with the Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

<u>/s/ Nancy E. Wolff</u>
Nancy E. Wolff
Attorney for *Amicus Curiae*

Dated: October 28, 2022