ORAL ARGUMENT NOT YET SCHEDULED

Case No. 22-7063

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

AMERICAN SOCIETY FOR TESTING AND MATERIALS, *et al.*,
*Appellants*,

v.

PUBLIC.RESOURCE.ORG, INC.,
*Appellee.*

_____

**BRIEF OF *AMICI CURIAE* INTELLECTUAL PROPERTY LAW
PROFESSORS IN SUPPORT OF
APPELLEE AND SUPPORTING AFFIRMANCE**

_____

On Appeal from the U.S. District Court for the District of Columbia
Case No. 1:13-cv-1215-TSC
Hon. Tanya S. Chutkan

_____

Erik Stallman
UC Berkeley School of Law
353 Law Building
Berkeley, CA 94720
(510) 642-2485
estallman@clinical.law.berkeley.edu

Jennifer M. Urban
UC Berkeley School of Law
353 Law Building
Berkeley, CA 94720
(510) 642-7338
jurban@law.berkeley.edu

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES,
## RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amici curiae* certify as follows:

A. **Parties and *Amici*.** In addition to the parties, intervenors, and *amici* appearing before the district court and in this Court that are listed in the Brief for Appellee, filed November 14, 2022, and any *amicus* briefs filed prior to this brief, the following *amici* appear via this brief:

> James Boyle, Michael A. Carrier, Michael W. Carroll, Julie E. Cohen, Christine Haight Farley, Shubha Ghosh, James Gibson, Peter Jaszi, Mark A. Lemley, Lawrence Lessig, Yvette Joy Liebesman, Aaron Perzanowski, Victoria Phillips, Matthew Sag, Pamela Samuelson, Joshua D. Sarnoff, Jessica Silbey, Xiyin Tang, and Rebecca Tushnet.

*Amici* are intellectual property law professors, filing this brief in their personal capacities. The affiliations listed in Appendix A are for identification purposes only. No statement under Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1(a) is required because *amici* are not a corporation or similar entity.

B. **Rulings Under Review.** Reference to the rulings at issue appear in the Brief for Appellee, filed November 14, 2022.

C. **Related Cases.** This case was previously before this Court in No. 17-7035, *American Society for Testing & Materials, et al. v Public.Resource.Org., Inc.* Counsel are not aware of any other related cases before this Court.

Dated: December 12, 2022        /s/ *Erik Stallman*
                                Erik Stallman

                                *Counsel for Amici Curiae*

## CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to Circuit Rule 29(d), counsel certifies that the present separate brief is necessary. *Amici* intellectual property law professors have a unique interest in the sound development of copyright doctrine that is not represented by the parties or other *amici curiae* of which the undersigned is aware. As individuals who have dedicated their careers to teaching and scholarship about the law, *amici* also have a perspective on copyright doctrine that may uniquely assist the Court.


Dated: December 12, 2022          */s/ Erik Stallman*
                                   Erik Stallman

                                   *Counsel for Amici Curiae*

# TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES** ........................................................................... i

**CERTIFICATE REGARDING SEPARATE BRIEFING** ................. iii

**TABLE OF CONTENTS** ...................................................................... iv

**TABLE OF AUTHORITIES** ............................................................... vi

**GLOSSARY OF ABBREVIATIONS** ..................................................... x

**INTEREST OF *AMICI*** ....................................................................... 1

**SUMMARY OF ARGUMENT** .............................................................. 1

**ARGUMENT** ......................................................................................... 3

I.    The purpose and character of providing free public access to the law weighs decisively in favor of fair use. ...................................... 3

    A.    Providing free public access to the law furthers the purposes of copyright ................................................................. 4

    B.    Providing free public access to the law facilitates all six of section 107's favored purposes, is noncommercial, and is for a nonprofit, educational purpose. ............................................. 9

    C.    The district court properly found that providing free public access to the law can constitute a transformative purpose, and properly assessed the degree of transformativeness standard-by-standard. .......................................................... 12

II.   The district court properly found that the fourth factor weighs in favor of fair use for each standard at issue. ........................... 16

    A.    The first factor weighs heavily when a noncommercial follow-on use serves a vital public interest. ........................... 17

B.  The district court properly placed the burden on Plaintiffs to show a meaningful likelihood of harm under the fourth fair use factor. ........................................................................ 19

  1.  When a noncommercial use furthers a vital public interest, the burden to show a meaningful likelihood of harm is properly placed on the copyright holder. .......... 20

  2.  Pragmatic considerations counsel in favor of requiring copyright holders to come forward with evidence of harm. ............................................................................. 24

C.  Providing free public access to the law does not create cognizable market harm. ....................................... 26

**CONCLUSION** ...................................................................... **30**

**CERTIFICATE OF COMPLIANCE** .................................... **31**

**CERTIFICATE OF SERVICE** ............................................. **32**

**APPENDIX: LIST OF SIGNATORIES** .............................. **33**

# TABLE OF AUTHORITIES

## CASES

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
  562 F.3d 630 (4th Cir. 2009) ................................................................12

*Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
  No. 12-cv-528-RHK-JJK, 2013 WL 4666330
  (D. Minn. Aug. 30, 2013) ................................................................14, 15

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
  896 F.3d 437 (D.C. Cir. 2018) ....................2, 4, 5, 7, 8, 10, 11, 12, 15, 16

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
  No. 13-cv-1215-TSC, 2022 WL 971735
  (D.D.C. Mar. 31, 2022) ................................................15, 16, 25, 28, 29

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
  402 F.3d 700 (6th Cir. 2005) ................................................................7

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) ................................................................27

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014) ........................................................10, 13, 28

*Banks v. Manchester*,
  128 U.S. 244 (1888) ........................................................................1, 26

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) ............................................................18, 27

*Bldg. Offs. & Code Adm'rs Int'l, Inc. v. Code Tech., Inc.*,
  628 F.2d 730 (1st Cir. 1980) ......................................................5, 7, 8, 26

*Cambridge Univ. Press v. Patton*,
  769 F.3d 1232 (11th Cir. 2014) ......................................................10, 25

vi

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ..................................................9, 11, 16, 17, 20, 22

*De Fontbrune v. Wofsy*,
    39 F.4th 1214 (9th Cir. 2022)......................................................23

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020) ......................................................22

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..................................................................25

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ....................................................................4

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
    747 F.3d 1060 (9th Cir. 2014) ................................................20, 23

*Georgia v. Public.Resource.Org, Inc.*,
    140 S. Ct. 1498 (2020) ....................................1, 3, 7, 8, 18, 26

*Google LLC v. Oracle, Inc.*,
    141 S. Ct. 1183 (2021) ..................................11, 12, 16, 17, 18, 19, 24, 26

*Ingraham v. United States*,
    808 F.2d 1075 (5th Cir. 1987) ....................................................24

*Katz v. Google Inc.*,
    802 F.3d 1178 (11th Cir. 2015) ....................................................9

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ......................................................13

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ....................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ........................................................7

*Long v. Jordan,*
    29 F. Supp. 287 (N.D. Cal. 1939) ........................................................26

*MCA, Inc. v. Wilson,*
    677 F.2d 180 (2d Cir. 1981) ..................................................................18

*Núñez v. Caribbean Int'l News Corp.,*
    235 F.3d 18 (1st Cir. 2000)....................................................................10

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) .......................................................13, 20

*Princeton Univ. Press v. Michigan Doc. Servs., Inc.,*
    99 F.3d 1381 (6th Cir. 1996) .................................................................23

*Rosemont Enterprises, Inc., v. Random House, Inc.,*
    366 F.2d 303 (2d Cir. 1966) ..................................................................18

*S. Bldg. Code Cong. Int'l, Inc. v. Veeck,*
    537 U.S. 1043 (2002) ...............................................................................6

*S. Bldg. Code Cong. Int'l, Inc. v. Veeck,*
    539 U.S. 969 (2003) .................................................................................7

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984) ..........................................................4, 20, 21, 22

*Suntrust Bank v. Houghton Mifflin Co.,*
    268 F.3d 1257 (11th Cir. 2001) ............................................................19

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
    241 F.3d 398 (5th Cir. 2001) ................................................................21

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
    293 F.3d 791 (5th Cir. 2002) ....................5, 6, 19, 21, 26, 27, 28, 29, 30

*Williams & Wilkins Co. v. United States,*
    487 F.2d 1345 (Ct. Cl. 1973) ...............................................................10

**STATUTES**

17 U.S.C. § 107 ....................................................................................9, 11

**OTHER AUTHORITIES**

Br. for the United States as *Amicus Curiae*,
    *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 539 U.S. 969 (2003) ...............7

Glynn S. Lunney Jr., *Fair Use and Market Failure:* Sony *Revisited*,
    82 B.U. L. Rev. 975 (2002) ....................................................................23

H.R. Rep. No. 60-2222 (1909) ....................................................................5

H.R. Rep. No. 94-1476 (1976) ................................................................9, 11

Lydia P. Loren, *Fair Use: An Affirmative Defense?*,
    90 Wash. L. R. 685 (2015) ....................................................................24

Pamela Samuelson, *Possible Futures of Fair Use*,
    90 Wash. L. Rev. 815 (2015)..................................................................13

Pamela Samuelson, *Unbundling Fair Uses*,
    77 Fordham L. Rev. 2537 (2009)............................................................9

Pierre N. Leval, *Toward a Fair Use Standard*,
    103 Harv. L. Rev. 1105 (1990) ...........................................................27

## GLOSSARY OF ABBREVIATIONS

Public Resource          Public.Resource.Org., Inc.

SDO                      Standards development organization

## INTEREST OF *AMICI*[1]

*Amici*, listed in an appendix to this brief, are law professors who teach and write about intellectual property law. *Amici*'s sole concern in submitting this brief is the proper development of the copyright law. *Amici* submit this brief to assist this Court in its analysis of the first and fourth fair use factors.

## SUMMARY OF ARGUMENT

Because "[e]very citizen is presumed to know the law . . . all should have free access to its contents." *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020) (citing *Banks v. Manchester*, 128 U.S. 244, 253–54 (1888)). Accordingly, this Court directed the district court to consider whether "distributing copies of the law for purposes of facilitating public access" is a fair use. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.* (*ASTM II*), 896 F.3d 437, 450 (D.C. Cir.

---

[1] *Amici* hereby certify that, pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), this brief was not authored in whole or in part by a party's counsel, neither a party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting the brief. *Amicus* Pamela Samuelson sits on Public.Resource.Org, Inc.'s board of trustees but has not consulted with the organization regarding this brief or proceeding. All parties consent to the filing of this brief.

2018). In response, the district court properly concluded that Public.Resource.Org's ("Public Resource") online posting of standards that had been incorporated as law was a fair use.

The purpose and character of Public Resource's use of Plaintiffs' standards decidedly favors its fair use defense for three principal reasons. First and foremost, Public Resource provides free public access to the law, which furthers the underlying goals of copyright law. Second, Public Resource's use serves the favored purposes identified in section 107 of the Copyright Act and is noncommercial. Third, under the district court's application of this Court's prior ruling, Public Resource's use serves a transformative purpose.

The strength of Public Resource's showing under the first factor informs the analysis of market harm under the fourth factor. When the purpose factor weighs decidedly in favor of fair use, that factor enjoys greater weight and courts consider the public benefits of the challenged use in their assessment of market harm. When a noncommercial use confers substantial public benefits, copyright plaintiffs should have to prove a meaningful likelihood of harm to their markets. If they cannot, their claims of infringement should fail. Regardless of who bears the

burden, *Georgia* reaffirmed that no one should be able to exercise exclusive rights over the law that governs us all. *See* 140 S. Ct. at 1507. This Court therefore should reject Plaintiffs' attempt to demonstrate market harm premised on claiming standards-incorporated-as-law as their market.

## ARGUMENT

### I. The purpose and character of providing free public access to the law weighs decisively in favor of fair use.

In *Georgia*, the Supreme Court held that Public Resource's online posting of government edicts was not copyright infringement, emphasizing the importance of public access to "the law we are all presumed to know and understand." 140 S. Ct. at 1513. Public Resource's online posting of Plaintiffs' standards-incorporated-as-law serves the public interest even more directly than the annotations in the state code at issue in *Georgia*—the standards here are incorporated by reference in their entirety and thus carry the force of law. This use fulfills the purposes of copyright and fair use in three ways. First, it promotes access to knowledge. Second, it facilitates the six statutorily favored purposes and is noncommercial. Third, it is transformative because it serves a different purpose from Plaintiffs' works. As this Court has observed,

providing free public access to the law is a quintessential example of "a use that further[s] the purposes of the fair use defense," and tips heavily in favor of fair use. *See ASTM II*, 896 F.3d at 449.

## A. Providing free public access to the law furthers the purposes of copyright.

Copyright is a "means by which an important public purpose may be achieved," namely, "to allow the public access" to knowledge by balancing authors' interests against "society's competing interest in the free flow of ideas [and] information." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984). Indeed, it is "well settled" that the copyright system ultimately serves "the purpose of enriching the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994)).

Here, allowing Plaintiffs to exclude others from copying incorporated standards would erect a barrier to accessing a critical type of knowledge—the law itself. This would defeat Congress's "constant" purpose in promulgating copyright law: to serve the "welfare of the public" by ensuring public access to the free flow of ideas, information,

4

and knowledge. *See ASTM II*, 896 F.3d at 445 (quoting H.R. Rep. No. 60-2222, at 7 (1909).

Other appellate courts also have emphasized the vital public interest in public access to the law. In *Building Officials & Code Administrators International, Inc v. Code Technology, Inc.* (*BOCA*), the First Circuit concluded that enforcing a copyright in standards-adopted-as-law cannot be "squared with the right of the public to know the law to which it is subject." 628 F.2d 730, 735 (1st Cir. 1980). The court noted that technical standards and codes "have the effect of law and carry sanctions of fine and imprisonment for violations." *Id.* at 734. Citizens must "have notice of what the law requires of them so that they may obey it and avoid its sanctions." *Id.* If copyright protection limits access to the law, "then the people will or may be unable to learn of its requirements and may be thereby deprived of the notice to which due process entitles them." *Id.*

Similarly, in *Veeck v. Southern Building Code Congress International, Inc.*, the Fifth Circuit held that codes-adopted-as-law were uncopyrightable. 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*). Peter Veeck—a private individual who operated a noncommercial website

providing information about north Texas—posted building codes adopted as law by two towns. *Id*. at 793. The Fifth Circuit concluded that it was "compelled" by Supreme Court precedent "that 'the law' is not copyrightable." *Id*. at 794. Citing nearly two centuries of Supreme Court case law, the Fifth Circuit explained that "public ownership of the law means precisely that the law is in the public domain for whatever use the citizens choose to make of it." *Id*. at 799 (quotation marks omitted). The court observed that it is "difficult to reconcile the public's right to know the law with the statutory right of a copyright holder to exclude his work from any publication or dissemination." *Id*.

When reviewing the plaintiff standards development organization's ("SDO") petition for *certiorari*, the Supreme Court invited the views of the United States. *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 537 U.S. 1043 (2002). In response, the Solicitor General advised the Court that the case was correctly decided because the codes-adopted-as-law in the case were "indistinguishable from other laws of general applicability that the public has always had the right to copy freely." Br. for the United States as *Amicus Curiae* at 14, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 539 U.S. 969

6

(2003). The Supreme Court subsequently denied the petition for a writ of *certiorari. S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 539 U.S. 969 (2003).

Although this Court previously decided not to reach the "far thornier question of whether standards retain their copyright after they are incorporated by reference into law,"[2] *ASTM II*, 896 F.3d at 441, the Court can still "square" the "right of the public to know the law" with copyright by holding that a noncommercial reproduction of the law is a fair use, *BOCA*, 628 F.2d at 735.[3]

Consider a homeowner who wants to provide childcare services at their home. To comply with local law in some jurisdictions, certain equipment and furnishings provided by the homeowner must conform to specific standards established by a private SDO. The homeowner's access

---

[2] *Amici* note that this question is less thorny in light of the Supreme Court's holding in *Georgia*. There, the Court cautioned against "premium legal works for those who can afford the extra benefit" such as a "subscription or pay-per-law service." *See* 140 S. Ct. at 1513.

[3] Courts have answered the fundamental question of copyright's lawful scope by using different doctrinal tools at different times. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) (merger doctrine, scenes-a-faire doctrine, and fair use); *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700 (6th Cir. 2005) (multiple doctrines invoked).

to the entirety of the law thus turns on access to those standards. To ensure effective access to knowledge of the law, courts shouldn't "undersell" the "practical significance" of the available materials to "a citizen interested in learning his legal rights and duties." *See Georgia*, 140 S. Ct. at 1512–13.[4] Paraphrases, summaries, and descriptions of a standard-as-law "do not capture the precision necessary" for an aspiring home childcare provider to understand the "information essential to comprehending one's legal duties[.]" *See ASTM II*, 896 F.3d at 450.

To obtain the law, the homeowner could pay the SDO for access to the full, "first-class" version of the incorporated standard. Or they could access an "economy-class" version of the incorporated standard in the SDO's reading room, on its terms and subject to its limited usability. *See Georgia*, 140 S. Ct. at 1512 (cautioning against a regime of "economy-class" and "first-class" versions of the law). But this wouldn't "square" with the "right of the public to know the law to which it is subject." *See BOCA*, 628 F.2d at 735. Accordingly, fair use remains necessary to

---

[4] In *Georgia*, the Court addressed the reproduction of a state's annotated code rather than standards-incorporated-as-law. In neither case, however, should a second comer be required to make fine distinctions about what portions of text are or are not legally binding.

"square" copyright with public rights and prevent it from creating barriers to access to the law.

**B.    Providing free public access to the law facilitates all six of section 107's favored purposes, is noncommercial, and is for a nonprofit, educational purpose.**

Section 107's preamble identifies six purposes—criticism, comment, news reporting, teaching, scholarship, and research—that tend to favor fair use. 17 U.S.C. § 107. They exemplify certain public purposes that fair use intends to promote, such as learning and access to knowledge. *See* Pamela Samuelson, *Unbundling Fair Uses*, 77 Fordham L. Rev. 2537, 2580–81 (2009).

The Supreme Court has explained that the preambular purposes provide "general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses" when section 107 was written. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994). The six exemplars stem from "ample case law" in which "courts . . . considered and ruled upon the fair use doctrine over and over again" prior to its codification in 1976. H.R. Rep. No. 94-1476, at 65 (1976). Today, uses are often found fair when they serve a purpose listed in the preamble. *See, e.g.*, *Katz v. Google Inc.*, 802 F.3d 1178 (11th Cir. 2015)

9

(criticism and comment); *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) (news reporting); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232 (11th Cir. 2014) (teaching); *Williams & Wilkins Co. v. United States*, 487 F.2d 1345 (Ct. Cl. 1973) (scholarship and research), *aff'd by an equally divided court*, 420 U.S. 376 (1975); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) (same).

This Court has recognized that "by all accounts, Public Resource distributed these standards for the purpose of educating the public about the specifics of governing law." *ASTM II*, 896 F.3d at 448. This educational purpose—itself salutary—facilitates criticism, comment, news reporting, teaching, scholarship, and research. Examples abound. An engineer may need the text of an incorporated standard to critique a new building code's effect on public safety; free public availability of incorporated standards enables this critique. A news outlet may need access to an incorporated standard covering in-home gas appliances to report on efforts to combat climate change; free public availability of incorporated standards enables accurate and effective news reporting. A computer science professor may need access to an incorporated standard for biometric data formats to teach students about the use and regulation

10

of automated facial recognition; free availability of incorporated standards enables teaching. While the favored purposes are not necessarily dispositive, the "enquiry [into the first factor] may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like." *Campbell*, 510 U.S. at 578–79.

The first fair use factor also asks whether a use "is of a commercial nature or is for nonprofit educational purposes[.]" 17 U.S.C. § 107(1). This inquiry also stems from "a process of accretion." *See* H.R. Rep. No. 94-1476, at 66. It is an "express recognition" that "the commercial or non-profit character of an activity . . . can and should be weighed along with other factors in fair use decisions." *Id.* Today, there is "no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021).

Public Resource's use is for the nonprofit educational purpose of "educating the public about the specifics of governing law." *ASTM II*, 896 F.3d at 448. There is also no indication that Public Resource "stands to profit from its reproduction" of Plaintiffs' standards-as-law. *Id.* at 449. Accordingly, its use is an exemplar of a noncommercial "use that

further[s] the purposes of the fair use defense," consistent with section 107's guidance. *See id.* at 448–49.

### C. The district court properly found that providing free public access to the law can constitute a transformative purpose, and properly assessed the degree of transformativeness standard-by-standard.

In assessing the purpose and character of a use, courts since *Campbell* have considered whether the use serves a "transformative" purpose. Here, facilitating public access to standards-as-law can be transformative even if the use does not actually alter or add to the original work. *ASTM II*, 896 F.3d at 450 (citing *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009)); *see also Google*, 141 S. Ct. at 1203 (explaining why precise copying was necessary for that transformative use). Indeed, because these standards carry the force of law, alterations would be irresponsible.

In *ASTM II*, this Court instructed the district court to consider whether "distributing copies of the law for purposes of facilitating public access could constitute [a] transformative use." *ASTM II*, 896 F.3d at 450. This direction is consistent with a broader fair use principle: a use can be transformative not merely when it alters expression from a work, but also when it serves a purpose different from that of the original work. *See*

Pamela Samuelson, *Possible Futures of Fair Use*, 90 Wash. L. Rev. 815, 831 (2015) (noting a "significant number of fair use cases in recent years in which differences between the purpose of the original work and the purpose of the use made by a putative fair user have been treated as transformative").

For example, in *Kelly v. Arriba Soft Corp.*, the Ninth Circuit held that it was transformative to reproduce thumbnails of photographs for online search results. 336 F.3d 811, 818 (9th Cir. 2003). There, while the original images had an artistic purpose, the defendant's purpose differed—to "improve access to information." *Id.* at 819. This difference in purpose was transformative and the use promoted the goals of copyright by "enhancing information-gathering techniques." *Id.* at 819–20. The Ninth Circuit reaffirmed its reasoning in *Perfect 10, Inc. v. Amazon.com, Inc.*, holding that it was transformative to use thumbnail images in search results as a "pointer directing a user to a source of information." 508 F.3d 1146, 1165 (9th Cir. 2007); *see also HathiTrust*, 755 F.3d at 97 (holding that the creation of a full-text searchable database of copyrighted works was a "quintessentially transformative use").

Courts also have recognized a transformative purpose when the reproduction of a work is motivated by that work's relevance to potential legal rights and obligations. For example, in *American Institute of Physics v. Schwegman, Lundberg & Woessner, P.A.*, it was fair for a law firm to copy entire scientific articles to assess prior art for patent applications. No. 12-cv-528-RHK-JJK, 2013 WL 4666330, at *10 (D. Minn. Aug. 30, 2013). There, "the Publishers produced their journals in which the Articles were published for a purpose that has little, if any, relationship to Schwegman's purpose in using them." *Id.* Given the different purposes, the first factor weighed "heavily in favor of finding fair use as a matter of law." *Id.*

In this case, Plaintiffs' purpose is to fulfill their "public-service missions [which] include promoting public health and safety and encouraging environmental sustainability." Appellant Br. at 5. Public Resource's purpose, by contrast, is not to develop standards in competition with Plaintiffs but to make government information— including the law—more accessible. As in *Kelly*, *Perfect 10*, and *Schwegman*, Plaintiffs here developed their standards "for a purpose that

14

has little, if any, relationship to [the defendant's] purpose in using them." *See Schwegman*, 2013 WL 4666330, at \*10.

This Court recognized this distinction by noting that "[w]here an incorporated standard provides information essential to comprehending one's legal duties," the first factor "would weigh heavily in favor of permitting a nonprofit seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." *ASTM II*, 896 F.3d at 450.

The district court found that Public Resource's reproduction of the 185 standards either incorporated into law or identical to incorporated standards furthered its stated purpose "to inform the public about the law and facilitate public debate." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.* (*ASTM III*), No. 13-cv-1215-TSC, 2022 WL 971735, at \*23–166 (D.D.C. Mar. 31, 2022). And the district court found that "the incorporated standard provides information essential for a private entity to comprehend its legal duties, which weighs heavily in favor of permitting Defendant's reproduction" under the first fair use

15

factor. *Id.* at *23.[5] For the three reasons stated above, the purpose and character inquiry favors providing free access to the law.

## II. The district court properly found that the fourth factor weighs in favor of fair use for each standard at issue.

The market harm inquiry does not take place in a vacuum. *See Campbell*, 510 U.S. at 578, 590 n.21; *Google*, 141 S. Ct. at 1197. Rather, the fact that a use is noncommercial and transformative can diminish the weight of the fourth factor. Further, substantial public benefits of the follow-on use must be weighed against market harm. Those same features can also influence the parties' respective burdens in that inquiry, as the district court correctly understood. And regardless of how the Court assigns burdens here, copyright cannot be the market-maker for law. Accordingly, the district court's conclusion that there was no actual harm to a cognizable market was proper.

---

[5] This brief focuses on the first and fourth factors; however, the district court correctly found that Plaintiffs' standards are near "the outer edge of copyright's protective purposes" (second factor) and that since "most of the standards at issue have been incorporated by reference into regulations that do not specify that only certain provisions of the standards are incorporated by reference into law . . . a greater amount of the standard's text might be fairly reproduced" (third factor). *ASTM III*, 2022 WL 971735, at *14 (quoting *ASTM II*, 896 F.3d at 451, 452) (quotation marks omitted).

### A.   The first factor weighs heavily when a noncommercial follow-on use serves a vital public interest.

*Campbell* instructed that the four fair use factors are not "treated in isolation"; rather, all "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. Further, the Supreme Court has explained that "some factors may prove more important in some contexts than in others[.]" *Google*, 141 S. Ct. at 1187. "Market harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors." *Campbell*, 510 U.S. at 590 n.21.

Following *Campbell*, when the challenged use has the purpose and character of a quintessential fair use, furthers a vital public interest, and is transformative, the first factor deserves more weight relative to the other factors. Here, the strong public interest served by providing unfettered access to the law and the overall strength of the first factor lessen the weight given to market harm in the fair use inquiry. That Public Resource's purpose in providing free public access to the law is distinct from Plaintiffs' purpose of publishing and selling industry standards further warrants affording the fourth factor less weight.

17

Moreover, when a challenged use confers substantial benefits, those benefits must be weighed against the asserted market harm to the original work as part of the fourth factor inquiry. In a recent fair use decision, the Supreme Court began its evaluation of a use's market effects by observing that the Court "must take into account the public benefits the copying will likely produce." *Google*, 141 S. Ct. at 1206; *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (explaining that fourth factor analysis "requires a balancing of the 'benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied'") (quoting *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981)).

It is always necessary to consider public benefits. But it is crucial to consider public benefits where, as here, the challenged use implicates free expression and due process. The fair use defense is "designed to accommodate First Amendment concerns." *Georgia*, 140 S. Ct. at 1513; *see also Rosemont Enters., Inc., v. Random House, Inc.*, 366 F.2d 303, 307 (2d Cir. 1966) (explaining that fair use accounts for "the public interest in the free dissemination of information"). Because fair use is a key tool for reconciling the exclusionary effects of copyright protection with the

First Amendment, the fourth-factor balancing must consider the public benefits that flow from access to the law and the risk of public harm if that access is foreclosed. *See Google*, 141 S. Ct. at 1208 (considering the risk of public harm that would result if the copyright holder "alone would hold the key" to the work at issue).

Where the challenged use serves the public by allowing everyone to learn and abide by the law, the many benefits the public derives from that use weigh against any harm to the plaintiff. As the *Veeck* court explained, "[c]itizens may reproduce copies of the law for many purposes, not only to guide their actions but to influence future legislation, educate their neighborhood association, or simply to amuse." 293 F.3d at 799. The benefits that flow from these uses factor into the market harm inquiry.

### B. The district court properly placed the burden on Plaintiffs to show a meaningful likelihood of harm under the fourth fair use factor.

The showing necessary to support or defeat a fair use defense varies with the specifics of the challenged use. *See, e.g.*, *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1275 (11th Cir. 2001) ("[P]articularly in the case of parody, evidence of harm to the potential market for or value of the original copyright is crucial to a fair use

determination."). In view of the noncommercial purpose and broad public benefits of Public Resource's use, rejecting a presumption of market harm and requiring Plaintiffs to show that "some meaningful likelihood of future harm exists" was appropriate. *See Sony*, 464 U.S. at 451. Further, copyright plaintiffs' superior access to evidence necessary to make an accurate market harm determination supports requiring them to come forward with that evidence.

> **1. When a noncommercial use furthers a vital public interest, the burden to show a meaningful likelihood of harm is properly placed on the copyright holder.**

Courts consider the purpose and character of a use when determining whether market harm may be presumed or must be demonstrated. When a use is noncommercial, courts do not presume market harm. *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1069 (9th Cir. 2014). So, too, if a use is transformative and serves a different purpose from the original. *Perfect 10*, 508 F.3d at 1168 (finding that a likelihood of market harm cannot be presumed for a commercial use when the use is transformative because "market substitution is at least less certain, and market harm may not be so readily inferred") (quoting *Campbell*, 510 U.S. at 591). Therefore, having carefully

20

evaluated Public Resource's challenged use, it was proper for the district court to deny a presumption of market harm.

When a copyright holder seeks to bar a use that furthers a public interest, it is especially important to require the plaintiff to come forward with evidence of market harm. In *Veeck*, which also considered the reproduction of standards-as-law, the Fifth Circuit panel thus placed the burden to show a meaningful likelihood of harm on the copyright holder. 241 F.3d 398, 410 (5th Cir. 2001) ("When, as with Veeck's activity here, the use of a copyrighted work is noncommercial, defeating a fair use defense requires 'proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work.'" (quoting *Sony*, 464 U.S. at 451)).[6] The *Veeck* panel's allocation of burdens tracks other cases where the challenged use was noncommercial and served vital public interests.

This case exemplifies the type of noncommercial use that warrants placing the burden on copyright plaintiffs: it is a highly favored use that

---

[6] The panel in *Veeck* eventually ruled in favor of the plaintiff SDO on the question of fair use. However, the Fifth Circuit reheard the case *en banc*, ruling in favor of the defendant on copyrightability grounds. *See Veeck*, 293 F.3d at 806 (5th Cir. 2002).

21

furthers a vital public interest. The Supreme Court has held that the "public interest" in use of a copyrighted work "supports an interpretation of the conception of 'fair use' that requires the copyright holder to demonstrate some likelihood of harm before he may condemn" the challenged use. *Sony*, 464 U.S. at 454. In *Sony*, the Court noted that the social benefits created by time-shifting "buttressed" the district court's conclusion that any market harm was speculative and that plaintiffs had shown no evidence of it. *Id*. Of course, the social benefits of time-shifting pale in comparison to the public interest benefits that attend providing the public with free and comprehensive access to the law that binds it.

To be sure, in *Campbell*, the Court explained that "the commercial or nonprofit educational character of a work is 'not conclusive,'" and rejected presumptions that all commercial uses were unfair. 510 U.S. at 584–85 (quoting *Sony*, 464 U.S. at 448–49). It also described fair use as an affirmative defense. *Id.* at 591. However, *Campbell* and later decisions similarly rejecting presumptions tied to commerciality or declining to place any burden on the plaintiff generally involved *commercial* uses. *See, e.g.*, *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) (declining to place the burden of proof on

22

the copyright holder where the challenged use was commercial and nontransformative). And even some of those cases state that burdens or presumptions tied to commerciality persist. *See, e.g.*, *Princeton Univ. Press v. Michigan Doc. Servs., Inc.*, 99 F.3d 1381, 1385–86 (6th Cir. 1996) (citing *Sony* for the proposition that "[t]he burden of proof as to market effect rests with the copyright holder if the challenged use is 'noncommercial' in nature"); *cf. De Fontbrune v. Wofsy*, 39 F.4th 1214, 1226 (9th Cir. 2022) (stating that "where the allegedly infringing use is both commercial and non-transformative, a presumption of market harm arises"), *petition for cert. filed*, No. 22-531, (U.S. filed Dec. 5, 2022). Accordingly, requiring a copyright plaintiff to demonstrate potential harm from a noncommercial use, particularly one that makes the law freely available to all, is appropriate. *See Fox Broad.*, 747 F.3d at 1069 (harm to potential markets must be demonstrated when the challenged use is noncommercial); Glynn S. Lunney Jr., *Fair Use and Market Failure:* Sony *Revisited*, 82 B.U. L. Rev. 975, 989 n.70 (2002) (explaining that *Campbell*'s limited holding did not overrule *Sony*'s placement of the burden of proof on plaintiff for noncommercial challenged uses).

**2. Pragmatic considerations counsel in favor of requiring copyright holders to come forward with evidence of harm.**

Copyright holders are often best positioned to bear the burden of proof for the fourth factor because they have greater access to the information needed to show a meaningful likelihood of harm to the market for the copyrighted work. *See Ingraham v. United States*, 808 F.2d 1075, 1078–79 (5th Cir. 1987) (considering "which party, if either, has access to the relevant evidence" in determining whether a defense is an affirmative defense). For example, following *Google*'s directive to consider the public benefits of a use requires balancing those benefits against "dollar amounts likely lost"—information that is within a plaintiff's knowledge but difficult for the defendant to obtain. 141 S. Ct. at 1206. Where there is this kind of information asymmetry, placing the burden on the copyright holder is appropriate. Lydia P. Loren, *Fair Use: An Affirmative Defense?*, 90 Wash. L. R. 685, 707 (2015).

Requiring the copyright holder to demonstrate a meaningful likelihood of harm also aligns with requiring the copyright holder to demonstrate its entitlement to a permanent injunction. Indeed, a copyright holder seeking an injunction must show more than a mere

24

likelihood of harm; it must show "irreparable injury" and inadequacy of remedies at law. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs were unable to do so here. *See ASTM III,* 2022 WL 971735, at *21.[7]

Even after declining to place the burden of *proof* on copyright holder plaintiffs, at least one court has placed the burden of *production* on them for information within their domain. In *Patton*, the Eleventh Circuit reasoned that "Plaintiffs—as publishers—can reasonably be expected to have the evidence as to availability of licenses for their own works. It is therefore reasonable to place on Plaintiffs the burden of going forward with the evidence on this question." 769 F.3d 1232, 1279 (11th Cir. 2014). This approach "merely recognizes that [when] one party has all the evidence on a particular issue . . . it is equitable to require that party to go forward with the evidence." *Id.* at 1279 n.34.

---

[7] The injunction standard is also instructive here because the copyright holder must show that the public interest "would not be disserved" by an injunction. *eBay*, 547 U.S. at 391. The district court found the opposite: that enjoining Public Resource's reproduction of the law would disserve the public. *See ASTM III*, 2022 WL 971735, at *22.

### C.  Providing free public access to the law does not create cognizable market harm.

In *Google v. Oracle*, the Supreme Court clarified that the fourth factor analysis "must consider not just the amount but also the source of the loss" in the market harm inquiry. *Google*, 141 S. Ct. at 1206. That clarification has added significance here given that "no one can own the law." *Georgia*, 140 S. Ct. at 1507; *see also BOCA*, 628 F.2d at 735. Reproductions of the law—even proposed laws—do not create cognizable market harm under the fourth factor: courts have recognized for more than a century that no one can exercise exclusive rights in the law. *See Banks*, 128 U.S. at 253 (the work of judges is "free for publication to all"); *see also Long v. Jordan*, 29 F. Supp. 287, 289 (N.D. Cal. 1939) ("The method of expression used in proposed legislation providing for and describing the operation of a system of government is an inseparable adjunct to the use of the system itself and therefore cannot be protected by copyright any more than can the use of the system."); *Veeck*, 293 F.3d at 800 (finding no infringement where a defendant "copied *only* 'the law' . . . which he obtained from [plaintiff SDO's] publication").

Similarly, there is no market in factual material that a copyright holder may monopolize. In its market harm analysis, the court in *Authors*

*Guild v. Google, Inc.* distinguished between factual and expressive content to determine whether a "type of loss of sale" related to "interests that are not protected by the copyright." 804 F.3d 202, 224 (2d Cir. 2015). Even if accompanied by some expressive content, reproduction of an unprotected fact is not copyright infringement. *Id*. Notably, the *Veeck* court treated laws as facts to further support denying the plaintiff a monopoly over incorporated standards. 293 F.3d at 801 (stating that "[i]t should be obvious that for copyright purposes, laws are 'facts'").

Because courts have consistently refused to recognize access to law or facts as cognizable markets, Plaintiffs could not have reasonably expected to profit from sale of their incorporated standards. *See Bill Graham Archives*, 448 F.3d at 612 (explaining that courts consider "the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage") (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1122 (1990)). With *BOCA* and *Veeck* as the backdrop, Plaintiffs could not have reasonably relied on copyright exclusivity as the incentive for developing and promoting standards-incorporated-as-law.

27

Even if that reliance were reasonable, the district court properly concluded that a reasonable jury could not find that market harm occurred, or that it was likely to occur, for any of the 217 standards at issue. *ASTM III*, 2022 WL 971735, at *17. Rather, the court found that Plaintiffs' claims of harm were unsubstantiated. *Id*. at *17 (finding that Plaintiffs "do not provide any quantifiable evidence, and instead rely on conclusory assertions and speculation"). Harms that are "merely speculative" are not recognized by copyright. *See, e.g.*, *HathiTrust*, 755 F.3d at 101 (noting that plaintiffs were "unable to identify any specific, quantifiable past harm, or any documents relating to any such past harm" (quotation marks omitted)). And as the district court noted, Plaintiffs provide access to their standards for free and "presumably do so without entirely cannibalizing sale of their standards[.]" *ASTM III*, 2022 WL 971735, at *15.

The missing evidence of harm here echoes prior standards-as-law cases where SDOs could not demonstrate market harm stemming from a follow-on use's reproduction of the law. *See Veeck*, 293 F.3d at 805 n.21 (finding it insufficient that plaintiff's "factual 'evidence' on this point consisted of self-serving affidavits from its officers and employees, and

28

proof that it earns perhaps 40% of its revenue from sales of the domestic model codes and amendments"). The Fifth Circuit in *Veeck* pointed out that the plaintiff SDO had been able to survive for more than sixty years even though "no court has previously awarded copyright protection for the copying of an enacted building code under circumstances like these." *Id.* at 805. Similarly, Plaintiffs here have provided no more than conclusory opinions that Public Resource's reproduction would threaten their standards markets. *ASTM III*, 2022 WL 971735, at *17. This is despite having had fourteen years since Public Resource's reproduction began to collect substantiating data, including four years during this litigation. *Id.*

Plaintiffs seek to put provisions of the law under lock and key without any showing that they are harmed by the public's unfettered access to them. Their continued inability to demonstrate a meaningful likelihood of harm exemplifies why market harm under the fourth factor must be investigated carefully when a challenged use furthers vital public interests. When cognizable harm to a copyright holder's market is lacking, foreclosing publicly beneficial uses frustrates, rather than furthers, the purposes of copyright. Here, blocking public access to the

law would simply undermine the significant public benefits that fair use seeks to enable. *See, e.g.*, *Veeck.* at 799.

## CONCLUSION

For the reasons above, this Court should affirm the judgment of the district court.

Dated: December 12, 2022                Respectfully submitted,[*]

                                         /s/ Erik Stallman
                                         Erik Stallman
                                         Jennifer M. Urban
                                         UC Berkeley School of Law
                                         353 Law Building
                                         Berkeley, CA 94720
                                         (510) 642-2485
                                         estallman@law.berkeley.edu

                                         *Counsel for Amici Curiae*

---

[*] Counsel thank Eric Nikolaides and Catherine Sakurai, clinical law students at UC Berkeley School of Law, for their contributions to this brief.

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,122 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: December 12, 2022          */s/ Erik Stallman*

## CERTIFICATE OF SERVICE

I, Erik Stallman, an attorney, hereby certify that on December 12, 2022, I caused the foregoing brief to be filed with the Court and to be served upon counsel via the Court's ECF email system.


Dated: December 12, 2022                 */s/ Erik Stallman*

# APPENDIX:
# LIST OF SIGNATORIES

(Institutions are listed for identification purposes only)

James Boyle
Duke University School of Law

Michael A. Carrier
Rutgers Law School

Michael W. Carroll
American University Washington College of Law

Julie E. Cohen
Georgetown University Law Center

Christine Haight Farley
American University Washington College of Law

Shubha Ghosh
Syracuse University College of Law

James Gibson
University of Richmond School of Law

Peter Jaszi
American University Washington College of Law

Mark A. Lemley
Stanford Law School

Lawrence Lessig
Harvard Law School

Yvette Joy Liebesman
Saint Louis University School of Law

Aaron Perzanowski
University of Michigan School of Law

Victoria Phillips
American University Washington College of Law

Matthew Sag
Emory University School of Law

Pamela Samuelson
University of California, Berkeley, School of Law

Joshua D. Sarnoff
DePaul University College of Law

Jessica Silbey
Boston University School of Law

Xiyin Tang
University of California, Los Angeles, School of Law

Rebecca Tushnet
Harvard Law School