NOT YET SCHEDULED FOR ORAL ARGUMENT
No. 22-7063

IN THE

United States Court of Appeals
for the District of Columbia Circuit

———————————

American Society for Testing and Materials, et al.

*Appellants*,

v.

Public.Resource.Org, Inc.,

*Appellee*.

———————————

Appeal from the United States District Court
for the District of Columbia
Hon. Tanya S. Chutkan, No. 1:13-cv-1215-TSC

———————————

**BRIEF OF CONGRESSWOMAN ZOE LOFGREN
IN SUPPORT OF APPELLEE AND AFFIRMANCE**

———————————

Jef Pearlman
Intellectual Property &
    Technology Law Clinic
USC Gould School of Law
699 Exposition Blvd.
Los Angeles, CA 90089-0071
Telephone: (213) 740-7613
Facsimile: (213) 740-5502
Email: jef@law.usc.edu

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amicus curiae certifies as follows:

## A. Parties

Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellants filed September 23, 2022. The following additional individuals/entities have submitted amicus briefs to this Court:

- American Dental Association

- American Medical Association

- American Federation of State, County and Municipal Employees

- American Hospital Association

- American National Standards Institute

- American Society of Civil Engineers

- Copyright Alliance

- International Code Council, Inc.

- Institute of Electrical and Electronics Engineers

- National Electrical Manufacturers Association

- North American Energy Standards Board

- Prime Access Consulting, Inc.

- Raymond A. Mosley

- Robert C. Tapella

- ULSE, Inc.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1(a), amicus is not a corporation.

## B. Rulings Under Review

References to the rulings at issue appear in the Brief for Appellants filed September 23, 2022.

## C. Related Cases

This case was previously before this Court in No. 17-7035, *American Society for Testing, et al v. Public.Resource.Org, Inc.* Counsel are not aware of any other related cases before this Court.

## CERTIFICATE OF COUNSEL REGARDING
## NECESSITY OF SEPARATE AMICUS BRIEF

Pursuant to Circuit Rule 29(d), counsel states that this brief on behalf of Congresswoman Zoe Lofgren is necessary because this brief does not substantially address the same issues that amicus expects other amici to present.

Counsel for amicus Congresswoman Zoe Lofgren is aware of amicus briefs on behalf of journalists, unions, cities, and people with disabilities, and counsel does not expect any of these to address the issues or viewpoints in this brief. Counsel for amicus Congresswoman Zoe Lofgren has consulted specifically with counsel for amicus Prime Access Consulting to ensure their briefs do not significantly overlap.

This brief provides the perspectives of a current Member of Congress who, with colleagues, drafts, debates, and passes the bills that eventually become law; creates and empowers the agencies that promulgate regulations; and represents constituents who will be subject to these laws and regulations. Amicus Congresswoman Zoe Lofgren expects that other briefs will not present these perspectives and has endeavored to ensure that this brief does not repeat other amici's arguments.

Dated: December 12, 2022                    Respectfully submitted,


                    /s/Jef Pearlman
_____
Jef Pearlman
Intellectual Property &
    Technology Law Clinic
USC Gould School of Law
699 Exposition Blvd.
Los Angeles, CA 90089-0071
Telephone: (213) 740-7613
Facsimile: (213) 740-5502
Email: jef@law.usc.edu

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ............. ii

CERTIFICATE OF COUNSEL REGARDING NECESSITY OF
SEPARATE AMICUS BRIEF ................................................................. iv

TABLE OF CONTENTS ......................................................................... vi

TABLE OF AUTHORITIES .................................................................. viii

GLOSSARY OF ABBREVIATIONS ....................................................... x

IDENTITY AND INTEREST OF AMICUS CURIAE AND SOURCE OF
AUTHORITY TO FILE ........................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT .......................................................................................... 4

I.    Democratic principles demand that the law be free to access, copy,
      search, share, and otherwise process. .................................................. 4

      A.   The principle that the law must be "promulgated and known to the
           people" is a foundation of our government. .................................. 5

      B.   Private ownership of the law violates the First Amendment and due
           process. ....................................................................................... 7

      C.   Our constituents are entitled to know the standards and regulations
           that govern their daily lives, even when incorporated by reference. .......... 9

      D.   The Legislative and Executive Branches have consistently
           recognized that citizens must have access to the law ................................ 12

II.   Providing unfettered access to the law bolsters research and innovation ......... 13

      A.   The public benefits greatly from access to the law. .................................. 13

      B.   Machine readability and other access-enhancing tools make access
           to and use of the law more effective. ......................................................... 14

C.  Full and free access to regulations and standards promotes beneficial public discourse. ........................................................................16

III. Congress has established what genuine access to the law entails in the digital age. ...................................................................................17

A.  The definition of genuine access to the law has changed in the internet era. ...................................................................................18

B.  The Open Government Data Act demonstrates that genuine access includes openness, shareability, and machine readability.........................19

C.  Public.Resource.Org contributes to amicus' goals by making the law free, findable, and machine-readable. ................................................21

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Banks v. Manchester,*
  128 U.S. 244 (1888).................................................................................6

*California Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972).................................................................................8

*Georgia v. Public.Resource.Org, Inc.*,
  140 S. Ct. 1498 (2020).............................................................................7

*Lambert v. People of the State of California*,
  355 U.S. 225 (1957).................................................................................9

*United States v. Lanier*,
  520 U.S. 259 (1997).................................................................................9

*Veeck v. S. Bldg. Code Cong. Int'l*,
  293 F.3d 791 (5th Cir. 2002)...................................................................7

*Wheaton v. Peters*,
  33 U.S. (8 Pet.) 591 (1834).....................................................................6

## Statutes and Regulations

29 C.F.R. § 1910.6.................................................................................10

29 U.S.C. § 666.......................................................................................9

44 U.S.C. § 3501(2)...............................................................................21

44 U.S.C. § 3502.....................................................................................20

44 U.S.C. § 3506.....................................................................................20

44 U.S.C. § 3506(b)(6)...........................................................................20

44 U.S.C. § 3506(d)(4)...........................................................................20

44 U.S.C. § 3601.....................................................................................19

49 C.F.R. § 171.7.....................................................................................10

49 C.F.R. § 571.5.....................................................................................10

5 U.S.C. § 552(a)(1)(E)..........................................................................12

780 Mass. Code Regs. 35.00.................................................................10

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2900 (2002) (codified as amended at 44 U.S.C. § 3601 *et seq.*)...............................................................18

H.R. Rep. No. 89-1497 (1966).................................................................................12

OPEN Government Data Act, Pub. L. No. 115-435, §§ 201-202, 132 Stat. 5534-44 (2019) (codified at 44 U.S.C. § 3502 *et seq.*) ......................................................19

## Other Authorities

Administrative Conference of the United States, *Recommendation No. 2011-5*: *Incorporation by Reference*, (Dec. 8, 2011) ........................................................17

Dean Ritz, *Understanding Machine-Readability in Modern Data Policy*, The Data Foundation (July 2020) .........................................................................................15

Jim Hendler and Theresa A. Pardo, *A Primer on Machine Readability for Online Documents and Data*, Data.gov Developers — Blog (Sept. 24, 2012) ........ 15, 16

National Electrical Manufacturers Association, *American National Standard for Safety Colors* (last visited Nov. 26, 2022) ...........................................................11

Peter R. Orszag, *Memorandum for the Heads of Executive Departments and Agencies re Open Government Directive*, Office of Management and Budget (Dec. 8, 2009).........................................................................................................12

UL Standards Sales Site, *Safety of Household and Similar Appliances, Part 1: General Requirements* (last visited Nov. 26, 2022)..................................... 10, 11

## Treatises

John Locke, *Two Treatises of Government* (Peter Laslett ed., Cambridge Univ. Press 1988) (1690) ...............................................................................................5

## GLOSSARY OF ABBREVIATIONS

ASTM                American Society for Testing and Material

OSHA                Occupational Safety and Health Administration

## IDENTITY AND INTEREST OF AMICUS CURIAE
## AND SOURCE OF AUTHORITY TO FILE

Amicus curiae Congresswoman Zoe Lofgren has represented California's Nineteenth District in the 117th Congress since 1994.[1] She currently serves as the Chair of the Committee on House Administration on the House. She also serves on the Committee on the Judiciary, and the Committee on Science, Space, and Technology. In each role she works closely on issues related to copyright, patent reform, and other digital rights issues, as well as being an advocate for government transparency generally.

This case is about whether and how the people may access, use, and share the law and regulations that govern them. Amicus, as a Member of Congress, is one of the progenitors of the law. Members of Congress also write and pass the laws that create federal agencies and empower those agencies to promulgate regulations that also carry the force of law. Amicus understands the needs of the federal legislature and their constituents—including the need for genuine access to the law and regulations, with the ability to search, share, and otherwise process it free of the constraints of copyright. The views of amicus are thus critical and unique.

---

[1] No party or party's counsel authored any part of this brief or contributed money that was intended to fund its preparation or submission. No one other than amicus and amicus' counsel contributed money that was intended to fund the preparation or submission of this brief.

1

Amicus files this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2) and Circuit Rule 29(b). Pursuant to Federal Rule of Appellate Procedure 29(a), amicus certifies that all parties in this case have consented to the filing of this brief.[2]

---

[2] Amicus wishes to thank USC Gould School of Law students Hyeisoo Kim, Eli Levinson, Reema Moussa, and Michael E. Salamy for their substantial assistance in drafting this brief.

## SUMMARY OF ARGUMENT

When Members of Congress make laws, we expect that our constituents will be able to access them, understand their obligations under them, and share their opinions about them. This is the core of the democratic process. It allows the people to hold lawmakers accountable for the laws they make. If the people lack genuine access to the law, this democratic process crumbles. Reaffirmed many times by the Judicial, Executive, and Legislative Branches, this principle is key to democratic governance.

Over the past fifty years, regulations have gained increasing prominence as sources of law. As regulations have become more and more relevant to their everyday lives, our constituents have developed a particular need for access. And because standards incorporated by reference function like any other regulation, the public's ability to access those standards—and search, share, and otherwise process them—must be protected, just as access to statutes is. Indeed, a contrary decision would run afoul of citizens' First, Fourth, and Fifteenth Amendment rights.

In the digital age, genuine access to the law means free, public access on the internet—not in a severely restricted "reading room" designed to limit rather than promote effective use of the law. Laws such as the Open Government Data Act demonstrate what Members of Congress understand genuine access to the law to

3

mean—and how important it is—in the 21st century. In short, access to the law must include the ability to remotely access, copy, share, search, and otherwise process on a computer statutes and regulations, including standards incorporated by reference.

Allowing copyright law to override fundamental constitutional principles and stand between the public and genuine access to the law would harm research and innovation. Without machine readability and other access-enhancing tools provided by entities such as Public.Resource.Org, the public will lack genuine access to the law and suffer. This Court cannot allow this to happen.

## ARGUMENT

### I.    Democratic principles demand that the law be free to access, copy, search, share, and otherwise process.

Along with other Members of Congress, amicus drafts and enacts laws that govern the United States. For our laws to govern, we must ensure that the people have access to them. Throughout American history, the Judicial, Legislative, and Executive Branches have recognized this principle of ensuring access to the law. Federal regulations, some of which carry the threat of criminal and civil penalties for their violation, increasingly touch the everyday lives of our constituents. It is, therefore, particularly important that they have unfettered access to these regulations, including standards incorporated by reference. The law must not condition access on irrelevancies such as whether a regulator copied and pasted a

4

standard or incorporated it by reference. Preventing our constituents from accessing, copying, searching, sharing, and otherwise processing these standards is contrary to bedrock principles of American law and raises significant First Amendment and due process concerns.

A.     *The principle that the law must be "promulgated and known to the people" is a foundation of our government.*

The principles at stake in this case—and their consequences—are not new. John Locke, whose views on government were among the greatest influences on the founders, advocated the principle that "whoever has the Legislative or Supream Power of any Common-wealth, is bound to govern by establish'd *standing laws*, promulgated and known to the People, and not by Extemporary Decrees."[3] As those who make the law, amicus recognizes that the people must have access to it so that "the people may know their Duty, and be safe and secure within the Limits of the Law."[4]

Throughout our history, the Supreme Court has recognized this principle as fundamental to U.S. law. In its very first case on copyright, the Court emphasized that copyright law cannot be used to restrict access to the law. In *Wheaton v. Peters*, Henry Wheaton, a reporter for the Supreme Court in the early nineteenth

---

[3] John Locke, *Two Treatises of Government* § 131 (Peter Laslett ed., Cambridge Univ. Press 1988) (1690).
[4] *Id*. § 137.

century, tried to claim copyright protection over the publication of the Justices' opinions. The Court held that "no reporter has *or can have* any copyright in the written opinions delivered by this Court."[5] The Court explained that for "all countries that are subject to the sovereignty of the laws . . . their promulgation is as essential as their existence."[6] Recognizing that the principle was not limited to judicial works, the Court explained that "[i]f *either statutes or decisions* could be made private property, it would be in the power of an individual to shut out the light by which we guide our actions."[7]

Fifty-five years later, the Supreme Court reaffirmed this principle in *Banks v. Manchester*,[8] in which the state of Ohio attempted to offer an exclusive license to the publishing rights of its supreme court's opinions. Again, the Court held that neither individuals nor the state may obtain copyright protection over judicial opinions. The Court reasoned that "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."[9]

---

[5] 33 U.S. (8 Pet.) 591, 668 (1834) (emphasis added).
[6] *Id.* at 619.
[7] *Id*. at 621 (emphasis added).
[8] 128 U.S. 244, 247 (1888).
[9] *Id.* at 253.

More than 100 years later, in *Georgia v. Public.Resource.Org*, the Court continued to uphold "the animating principle" that "no one can own the law."[10] In *Georgia*, the Court clarified that copyright cannot be used to control works created by "officials empowered to speak with the force of law . . . in the course of their official duties."[11] And even before *Georgia,* courts recognized the principle's application to regulations, which carry the force of law: "[W]e read *Banks*, *Wheaton*, and related cases consistently to enunciate the principle that 'the law,' whether it has its source in judicial opinions or statutes, ordinances or *regulations*, is not subject to federal copyright law."[12] Under this reasoning, a standard incorporated by reference into a statute or regulation is just as much the law as one that is written out in longhand. Congress has recognized that it would make no sense to require regulators to copy and paste the full text of standards into regulations. Those standards are the law, and the courts have repeatedly recognized that *all* law must be and remain free.

B.    *Private ownership of the law violates the First Amendment and due process.*

In a democracy, all citizens must be free to speak the law. When we as Congress pass a law, we expect that we will be able to freely communicate it to our

---

[10] 140 S. Ct. 1498, 1507 (2020).

[11] *Id.* at 1504.

[12] *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 799 (5th Cir. 2002) (emphasis added).

constituents. We also expect that our constituents will be free to access, critique, and share the substance of that law. Similarly, when government agencies enact regulations, they expect to be able to engage and communicate with the public about them.

Appellants seek to use copyright to gag a nonprofit, preventing it from telling others what the law is. But the Free Speech Clause of First Amendment does not permit this.[13] The First Amendment's right of petition also precludes such a result.[14] As the Supreme Court has observed, the right of petition also applies to "the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) . . . ."[15] The right to seek redress from regulators—or from Congress, which creates and empowers federal regulators—must surely include the right to access and share regulations.

The Fifth and Fourteenth Amendments also protect that right, establishing that no person may be "deprived of life, liberty, or property, without due process of law."[16] To ensure compliance, regulations that incorporate standards by reference often carry the threat of criminal liability for their violation. For example, violation

---

[13] *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech").

[14] *See id.* ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the government for a redress of grievances.").

[15] *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

[16] U.S. Const. amend. V; U.S. Const. amend. XIV.

8

of OSHA regulations may result in fines or imprisonment: "[A]ny employer who willfully violates any standard, rule, or order . . . or of any regulations prescribed pursuant to this chapter . . . shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both . . . ."[17] Significant due process concerns are implicated if individuals face criminal prosecution for violating standards they cannot freely access.

To uphold due process, the Supreme Court has historically refrained from imposing criminal liability on individuals who did not have sufficient notice or fair warning of the law.[18] In these cases, the Court raised due process concerns when there *was* access to the law, but the law was unclear. When there is *no* access to the law, or only limited, paid access to the law, there is certainly a due process concern. This Court must ensure our constituents are not blindsided by civil and criminal penalties for violating standards to which they had no realistic access.

C.     *Our constituents are entitled to know the standards and regulations that govern their daily lives, even when incorporated by reference.*

Increasingly, federal and state regulatory laws govern our constituents. These regulations—the violation of which can result in civil and criminal

---

[17] 29 U.S.C. § 666.

[18] *See, e.g.*, *Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957) ("[n]otice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act"); *United States v. Lanier*, 520 U.S. 259 (1997) (defining "fair warning" in criminal cases to denote the requirement of clear and unambiguous statutory language dictating punishable behavior).

penalties—have a significant impact on the lives of Americans. These regulations govern building, electrical, fire, elevator, fuel and gas, mechanical, and plumbing safety, among other things. These regulations have more impact on the everyday lives of our constituents than many other government pronouncements.

Many of these regulations incorporate standards by reference. For example, the Massachusetts building code references the Standard for Water Spray Fixed Systems for Fire Protection, the Standard for Hazardous Materials, and the National Electrical Code.[19] OSHA regulations alone reference more than 100 standards from more than thirty different private organizations.[20] The Pipeline and Hazardous Materials Safety Administration incorporates 209 technical regulations.[21] The National Highway Traffic Safety Administration incorporates 277 technical regulations governing the testing of automobile safety, including standards for brakes, tires, lights, warning devices, and crash test dummies.[22]

Many of these standards are prohibitively expensive to access. For example, a PDF of the standards for "Safety of Household and Similar Appliances, Part 1: General Requirements" from Underwriters Laboratories costs $514.00.[23] Further,

---

[19] 780 Mass. Code Regs. 35.00 (2022).

[20] *See* 29 C.F.R. § 1910.6.

[21] 49 C.F.R. § 171.7.

[22] *Id*. § 571.5.

[23] UL Standards Sales Site, *Safety of Household and Similar Appliances, Part 1: General Requirements* (last visited Nov. 26, 2022), https://www.shopulstandards.com/PurchaseProduct.aspx?UniqueKey=31904.

Underwriters Laboratories permanently locks the purchased document to a single computer and restricts purchasers from copying and pasting from the document.[24] An electronic copy of American National Standard for Safety Colors from the National Electrical Manufacturers Association costs $156.00—the same as a hardcopy—and carries similar restrictions.[25]

Our constituents have a right to know, and often have a need to know, the standards and regulations that govern their daily lives. Any tenant should be able to check applicable building codes to ensure they have a fully functional fire alarm. Any factory worker should have access to OSHA standards to ensure they are wearing the proper safety equipment. Any parent should be able to check the gas, electrical, and plumbing codes to ensure they are purchasing a safe home for their family. Similarly, landlords, employers, and manufacturers should have access to these standards to ensure their own compliance. Neither the financial status of the person trying to access standards or regulations nor their author or source should have any impact on accessibility.

---

[24] *Id*.

[25] National Electrical Manufacturers Association, *American National Standard for Safety Colors* (last visited Nov. 26, 2022), https://www.nema.org/standards/view/american-national-standard-for-safety-colors.

D.    *The Legislative and Executive Branches have consistently recognized that citizens must have access to the law.*

Although the means of creating and promulgating the law have changed over time, Congress has consistently made the law free and has taken measures to increase public access to it. With enactment of the Freedom of Information Act in 1966, Congress first made incorporation by reference part of federal regulatory law."[26] As regulatory law became more prominent, the Executive Branch emphasized that the public must have access to regulations. President Barack Obama's 2009 Open Government Directive sought to "increase accountability, promote informed participation by the public, and create economic opportunity," and accordingly instructed executive departments and agencies to "take prompt steps to expand access to information by making it available online in open formats."[27]

The Executive and Legislative Branches have consistently promoted robust public access to the law. The Supreme Court and other courts have regularly upheld that access. This Court should as well.

---

[26] *See* H.R. Rep. No. 89-1497 (1966); 5 U.S.C. § 552(a)(1)(E) ("For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.").

[27] Peter R. Orszag, *Memorandum for the Heads of Executive Departments and Agencies re Open Government Directive*, Office of Management and Budget (Dec. 8, 2009), https://obamawhitehouse.archives.gov/open/documents/open-government-directive.

II.    **Providing unfettered access to the law bolsters research and innovation.**

Congress seeks to keep the law abreast of changes in society. To do so, Congress cannot act in a void. It requires input from industry, civil society, academia, and the public. This collaboration suffers if stakeholders lack full and free access to the law.

Full and free access necessarily means access that is not limited or cabined. In today's digital society, full and free access must include the ability to search the law, comment on it, and share it. Full and free access must include features such as machine-readability, which is a tool that enables individuals to search for and use the law in new and different ways. And full and free access must not require a party to bring or defend a lawsuit in order to access the law. With true access, our constituents can be genuinely informed, and democracy is better served by a well-informed constituency.

A.    *The public benefits greatly from access to the law.*

When the public can truly access the law, the web of interconnected stakeholders that make up our society benefit from one another. Industry is better able to comply with the laws that Congress passes, thereby protecting consumers. Innovators are better able to create new products, tools, and ideas that push society forward. Researchers can build upon the knowledge of the legal system, using

interdisciplinary models to bring together science, health, technology, law, and policy.

Without unfettered access, however, these contributors are left to their own devices. They may be forced to forego compliance with regulations and standards, placing themselves at legal risk and others at physical risk. They may choose to reinvent the wheel—selecting their own standards, cutting regulators out of the equation, and eliminating the benefits of the public regulatory processes. Or they may give up entirely, leaving society without the benefit of their experience or the tools they would have developed.

B.    *Machine readability and other access-enhancing tools make access to and use of the law more effective.*

The basic ability to read the law is essential, but it is insufficient alone. Access is meaningless in practice without tools that allow users to discover, interact with, and share laws, statutes, or regulations of interest. Machine readability is a critical tool that enables these and myriad other uses. The control Appellants seek to exert over incorporated regulations would stymie these efforts.

A document in machine-readable format contains more than words that a human can read. It also holds information in a standard computer language that software can automatically process. This enhancement is key for data usability, transparency, accessibility, interoperability, and facilitated data processing by

14

consumers, researchers, innovators, and other stakeholders.[28] Many assistive

technologies that help our constituents with disabilities access digital materials

require machine-readable documents. For example, a text-to-speech system that

reads text aloud cannot function unless the text is directly available to the system

in a known digital format.[29]

Search is another critical capability that relies on machine readability. A

machine-readable document lets users find research materials based not just on

document titles but on the document's text. Machine-readability allows users to

perform searches *within* a document, an essential function for conducting research

and finding sought-after information within a given document or regulation,

especially lengthy ones.[30] Indeed, this Court recognizes the importance and utility

of this function; Circuit Rule 32(b)(1) provides that "documents created by the filer

and filed electronically must be in Portable Document Format (PDF), which is

generated from an original word-processing file and is text searchable." Machine-

---

[28] Jim Hendler and Theresa A. Pardo, *A Primer on Machine Readability for Online Documents and Data*, Data.gov Developers — Blog (Sept. 24, 2012), https://data.gov/developers/blog/primer-machine-readability-online-documents-and-data/.
[29] For an in-depth explanation on the importance of accessibility within the law for individuals with disabilities, see Brief of Amicus Prime Access Consulting.
[30] *See* Dean Ritz, *Understanding Machine-Readability in Modern Data Policy*, The Data Foundation (July 2020), https://www.datafoundation.org/understanding-machine-readability-in-modern-data-policy-2020.

readability also enables searching *across* many documents, as one might do on Google or Westlaw.

Machine-readability is particularly important in the case of laws, regulations, and other official U.S. government materials.[31] When creating a new product or expanding on an idea, innovators rely on machine-readable documents to navigate the law's intricacies, ensuring they can respect the legal guardrails regulators have established. Small businesses and startups often cannot afford legal counsel to help them understand the regulatory landscape and must research applicable law on their own. Medical professionals use machine-readable law to grasp an array of complex and frequently changing healthcare laws and regulations; it would effectively be impossible if, instead of word-searching those materials, they had to read each one start-to-finish.

C.      *Full and free access to regulations and standards promotes beneficial public discourse.*

Full and free access to regulations and standards increases discourse on how to improve them. Students, researchers, and industry professionals can review and critique laws, leading to amendments and revisions. For instance, Ph.D. students or other researchers in materials science and engineering can likely provide unique insights on building codes that Congress, regulators, and industry may not have

---

[31] Hendler and Pardo, *supra* n.28.

considered—so long as they can afford access or are not confined to access so limited as to be useless.

The work of the Administrative Conference of the United States (ACUS) shows why access is key. ACUS is an independent federal agency whose mission is to identify ways to improve federal agencies' procedures. In a recommendation on incorporation by reference, ACUS explains that, as a policy rationale, Congress allowed federal agencies to incorporate material into regulations by reference because it "enabl[es] agencies to draw on the expertise and resources of private sector standard developers to serve the public interest."[32] But to realize this public benefit, the incorporated material must be accessible to those who can help improve it. When the law is free, more organizations like Public.Resource.Org can help to find newer, more effective ways to promulgate the law to the public and further these policy goals.

## III. Congress has established what genuine access to the law entails in the digital age.

Congress has consistently made clear that access to the law is a fundamental right. Congress has also signaled that it intends for that access to keep pace with the progress of technology. It has expressed this understanding, in part, through

---

[32] Administrative Conference of the United States, *Recommendation No. 2011-5: Incorporation by Reference*, (Dec. 8, 2011), https://www.acus.gov/recommendation/incorporation-reference.

17

laws that provide for and define access to various government documents. Importantly, amicus does not argue that Congress can or should act to make the law and regulations free from copyright; Congress need not. As explained in Section I, fundamental constitutional and democratic principles require that the law be free. Congress's understanding and articulation of meaningful access tells a singular story: It must be online, machine-readable, and unrestricted—much like the access Public.Resource.Org provides by republishing the standards at issue here.

A.    *The definition of genuine access to the law has changed in the internet era.*

In this digital age, nearly everyone—from scholars to researchers to businesses to consumers—relies on the internet to learn. Particularly in the wake of the COVID-19 pandemic, daily life no longer takes place solely in the physical world; it is now inexorably intertwined with online life. As part of this shift, the internet has become a tool for education, civic engagement, and otherwise ensuring an informed public.

Congress foresaw this shift and applied it to government some twenty years ago through enactment of the E-Government Act of 2002.[33] That law explicitly states that its purposes are, inter alia, to "promote access to high quality

---

[33] Pub. L. No. 107-347, § 2, 116 Stat. 2900 (2002) (codified as amended at 44 U.S.C. § 3601 *et seq.*).

Government information and services across multiple channels," and "promote the use of the internet and emerging technologies within and across Government agencies to provide citizen-centric Government information and services."[34] The notion that government information should be accessible across multiple channels, promoting internet use, underscores Congress' longstanding belief that its constituents need access to government information in a fashion that keeps up with developments in technology.

Two decades later, anyone seeking information looks first and foremost to the internet. As explained above, regulations that are the subject of an internet search must be online and machine-readable. Restricted online "reading rooms" of the type Appellants provide do not suffice. Access to the law in the 21st century (and beyond) must entail free, public access on the internet—which this Court cannot allow an unsupported and unjust application of copyright law to prevent.

B.    *The Open Government Data Act demonstrates that genuine access includes openness, shareability, and machine readability.*

More recently, Congress has enshrined into law genuine, 21st century public access to government data. On January 14, 2019, the Open, Public, Electronic, and Necessary (OPEN) Government Data Act (hereafter, the Act) became law.[35] It

---

[34] 44 U.S.C. § 3601.

[35] OPEN Government Data Act, Pub. L. No. 115-435, §§ 201-202, 132 Stat. 5534-44 (2019) (codified at 44 U.S.C. § 3502 *et seq.*).

19

requires federal agencies to publish information online in standardized, machine-readable formats.[36] The Act underscores that Congress has expressly recognized the importance of open, public, machine-readable access to government documents, even if—unlike the regulations at issue here—they lack the force of law.[37]

Access to the law under the Act is also inherently non-restrictive. As the Act states: "With respect to information dissemination, each agency shall . . . not, except where specifically authorized by statute . . . restrict or regulate the use, resale, or redissemination of public information by the public."[38] The Act requires that agencies "make each public data asset of the agency available" in an "open format" and under an "open license."[39] The Act defines an open license as "a legal guarantee applied to a public data asset that the data asset is made available" at "no cost to the public" and "with no restrictions on copying, publishing, distributing, transmitting, citing, or adapting" that data.[40]

Congress has made explicit its understanding of the meaning of access to government data in the internet era. This understanding applies equally to the data

---

[36] 44 U.S.C. § 3506.

[37] *Id.*

[38] *Id.* § 3506(d)(4).

[39] *Id.* § 3506(b)(6).

[40] *Id.* § 3502.

that the Act regulates, as well as to the law and regulations, which are already free for all.

C.    *Public.Resource.Org contributes to amicus' goals by making the law free, findable, and machine-readable.*

Here, Public.Resource.Org is doing for standards incorporated by reference what Congress has envisioned for all government data: making them publicly accessible in a machine-readable, open format, for a wide variety of uses. For this, Public.Resource.Org was sued. But it should not be punished for doing what Congress promoted and fundamental democratic principles permit, even if Congress and federal agencies have not yet done it themselves and profit-driven entities would prefer they stop.

One purpose of the subchapter of the U.S. Code containing the Act is to "ensure the greatest possible public benefit from and maximize the utility of information created, collected, maintained, used, shared and disseminated by or for the Federal Government."[41] Public.Resource.Org supports this purpose through its dissemination of the law in accessible formats.

Organizations such as Public.Resource.Org endeavor to make the law accessible to all. Public.Resource.Org supports and supplements Congress's work and the democratic values it reflects and embodies: that the law should be widely

---

[41] *Id.* § 3501(2).

21

available, shareable, and useful for many purposes, seen and unforeseen. This Court should applaud, not halt, these efforts.

## CONCLUSION

For the foregoing reasons, the Court should hold that the standards incorporated by reference are free for all to access, copy, share, search, and otherwise process from copyright constraints, and ensure that the public is not deprived of effective access to the laws and regulations that govern us all.

Dated: December 12, 2022                     Respectfully submitted,

                                             _____/s/Jef Pearlman_____
                                             Jef Pearlman
                                             Intellectual Property &
                                                Technology Law Clinic
                                             USC Gould School of Law
                                             699 Exposition Blvd.
                                             Los Angeles, CA 90089-0071
                                             Telephone: (213) 740-7613
                                             Facsimile: (213) 740-5502
                                             Email: jef@law.usc.edu

                                             *Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and D.C. Cir. R. 32(e), I certify that this brief complies with the applicable type-volume limitations. This brief was prepared using a proportionally spaced typeface using Microsoft Word for Windows version 2210 in 14-point Times New Roman. Exclusive of the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. R. 32(e)(1), this brief contains 4,591 words as reported by the Microsoft Word word count feature.

_____/s/Jef Pearlman_____

Jef Pearlman
Intellectual Property &
    Technology Law Clinic
USC Gould School of Law
699 Exposition Blvd.
Los Angeles, CA 90089-0071
Telephone: (213) 740-7613
Facsimile: (213) 740-5502
Email: jef@law.usc.edu

*Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that, on December 12, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

      /s/Jef Pearlman

Jef Pearlman
Intellectual Property &
   Technology Law Clinic
USC Gould School of Law
699 Exposition Blvd.
Los Angeles, CA 90089-0071
Telephone: (213) 740-7613
Facsimile: (213) 740-5502
Email: jef@law.usc.edu

*Counsel for Amicus Curiae*
