ORAL ARGUMENT NOT YET SCHEDULED

**No. 22-7063**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN SOCIETY FOR TESTING AND MATERIALS, et al.,
Appellants

v.

PUBLIC.RESOURCE.ORG, INC.,
Appellee

Appeal from the United States District Court
for the District of Columbia
Hon. Tanya S. Chutkan, No. 1:13-cv-1215-TSC

**APPELLANTS' BRIEF**

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

*Counsel for American Society for Testing
and Materials d/b/a/ ASTM International*

Donald B. Verrilli, Jr.
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
donald.verrilli@mto.com

Kelly M. Klaus
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
kelly.klaus@mto.com

*Counsel for National Fire Protection
Association, Inc.*

September 23, 2022
(*additional counsel on inside cover*)

Jeffrey S. Bucholtz
David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 737-0500
jbucholtz@kslaw.com

Kenneth L. Steinthal
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
ksteinthal@kslaw.com

*Counsel for American Society of Heating,
Refrigerating, and Air Conditioning
Engineers, Inc.*

Rose Leda Ehler
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
rose.ehler@mto.com

*Additional Counsel for National Fire
Protection Association, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Appellants certify as follows:

## A.     Parties and amici

Appellants are American Society for Testing and Materials d/b/a/ ASTM International ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE"), which were the Plaintiffs/Counter-Defendants in the district court. Appellee is Public.Resource.Org, Inc., which was the Defendant/Counter-Plaintiff in the district court.

The following individuals/entities submitted amicus briefs to the district court:

- Ann Bartow

- American Insurance Association

- American Library Association

- American National Standards Institute, Incorporated

- American Property Casualty Insurance Association

- American Society of Safety Engineers

- Brian L. Frye

- David Ardia

- Elizabeth Townsend Gard

- Institute of Electrical and Electronics Engineers, Incorporated

- International Association of Plumbing & Mechanical Officials

- International Code Council, Inc.

- James Gibson

- Jessica Silbey

- Jennifer Urban

- Jonathan Zittrain

- Knowledge Ecology International

- National Electrical Manufacturers Association

- North American Energy Standards Board

- Pamela Samuelson

- Public Knowledge

- Rebecca Tushnet

- Reporters Committee for Freedom of the Press

- Sina Bahram

- Stacey Dogan

- Stacey M. Lantagne

- Underwriters Laboratories Inc.

### B.    Rulings under review

The rulings under review are (1) an Order, Dkt. 240 (Chutkan, J.), filed on March 31, 2022, by the U.S. District Court for the District of Columbia in No. 13-cv-1215, for which no reported citation exists; and (2) a Memorandum Opinion, Dkt. 239 (Chutkan, J.), and the Appendix thereto, Dkt. 239-1 (Chutkan, J.), filed on March 31, 2022, by the U.S. District Court for the District of Columbia in No. 13-cv-1215, available at 2022 WL 971735.

### C.    Related cases

This case was previously before this Court in No. 17-7035, *American Society for Testing, et al v. Public.Resource.Org, Inc.*  Counsel are not aware of any other related cases before this Court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 28(a)(1), Appellants respectfully submit the following corporate disclosure statements.

American Society for Testing and Materials ("ASTM") hereby submits the following disclosure as a nongovernmental corporate party: ASTM is a not-for-profit corporation. It has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

National Fire Protection Association, Inc. ("NFPA") hereby submits the following disclosure as a nongovernmental corporate party: NFPA is a not-for-profit corporation. It has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE") hereby submits the following disclosure as a nongovernmental corporate party: ASHRAE is a not-for-profit corporation. It has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ........................................iv

TABLE OF CONTENTS..........................................................v

TABLE OF AUTHORITIES .................................................. viii

GLOSSARY OF ABBREVIATIONS ........................................ xiii

STATEMENT OF JURISDICTION.........................................1

STATEMENT OF ISSUES .....................................................1

STATUTES AND REGULATIONS....................................1

INTRODUCTION ................................................................2

STATEMENT OF THE CASE ..............................................5

I.      BACKGROUND ....................................................5

    A.      Plaintiffs' creation of voluntary consensus standards depends on robust copyright protection. ........................................5

    B.      Incorporation by reference is a longstanding public-private partnership that protects copyright.........................................6

    C.      Plaintiffs make their IBR'd standards widely available to the public, including through free online access..........................9

II.     PROCEDURAL HISTORY ........................................10

    A.      *ASTM I*............................................................10

    B.      *ASTM II* .........................................................11

    C.      *ASTM III* ........................................................12

SUMMARY OF ARGUMENT .............................................14

STANDARD OF REVIEW ..................................................16

ARGUMENT ...................................................................17

I.      THE DISTRICT COURT ERRED IN ANALYZING FAIR USE. ..............17

    A.      Factor 1:  Public.Resource.Org's wholesale distribution of Plaintiffs' Works is not transformed by purportedly making "the law" available to the public. ........................................18

# TABLE OF CONTENTS
## (continued)

Page

1. Public.Resource.Org does not limit its copying to portions of Works that are essential to comprehending legal duties. ...............................................................19

    a. Plaintiffs introduced substantial evidence showing that whole Works and portions thereof were not essential to complying with the law. ...............................20

    b. The district court's truncated review of the Works did not follow this Court's direction. ...........................24

2. Under the "circumstances" of Public.Resource.Org's copying and distribution, Public.Resource.Org's use is not transformative because Plaintiffs already make their standards freely available..........................................................31

B. Factor 2: The "nature of the copyrighted works" does not favor fair use. ...................................................................34

C. Factor 3: Public.Resource.Org copies and posts entire Works without attempting to limit its distribution to those portions of Works that are essential to complying with the law. .........................36

D. Factor 4: Public.Resource.Org's substitutional use undermines the actual and potential markets for Plaintiffs' Works. ......................39

1. Public.Resource.Org bears the burden on the fourth fair use factor. ...................................................................40

2. Public.Resource.Org did not meet its burden. .........................42

II. THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT ENJOINING PUBLIC.RESOURCE.ORG FROM FUTURE INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS. ...............................48

A. The district court correctly found that remedies available at law are inadequate and the balance of hardships favors an injunction. ...................................................................49

B. The district court correctly found at least some irreparable harm and a public interest that favors an injunction. ...................................50

C. The district court erred in not recognizing that Plaintiffs had proven several types of substantial irreparable harm..........................51

**TABLE OF CONTENTS**
**(continued)**

Page

    1.    Public.Resource.Org's copyright infringement threatens Plaintiffs' business models. ......................................................51

    2.    Plaintiffs face irreparable harm to the exclusivity of their rights...........................................................................................53

    3.    Public.Resource.Org's conduct poses substantial reputational harm. ....................................................................54

D.    The district court abused its discretion in allowing the speculative possibility of future IBR to thwart entry of a permanent injunction.............................................................55

CONCLUSION ...............................................................................57

CERTIFICATE OF COMPLIANCE....................................................59

APPENDIX TO APPELLANTS' BRIEF..........................................APP-1

ADDENDUM OF STATUTES AND REGULATIONS ...............................ADD-1

CERTIFICATE OF SERVICE .......................................................COS-1

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

\* *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*,
  2017 WL 473822 (D.D.C. Feb. 2, 2017)........................................5, 6, 10, 11, 42

\* *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
  896 F.3d 437 (D.C. Cir. 2018) ........ 2, 4, 5, 11, 12, 15, 17, 18, 19, 20, 22, 23, 24
  ....................26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 43, 45, 45, 46, 47, 48

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
  No. 21-869 (U.S.) ...............................................................................................18

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014) ................................................................................32

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) ..............................................................................37

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
  78 F. Supp. 3d 253 (D.D.C. 2015)......................................................................49

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
  27 F.4th 313 (5th Cir. 2022) ..............................................................................41

*BMG Music v. Gonzalez*,
  430 F.3d 888 (7th Cir. 2005) .............................................................................45

*Cambridge Univ. Press v. Patton*,
  769 F.3d 1232 (11th Cir. 2014) ...........................................................40, 41, 42

\* *Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)...................................................... 19, 31, 33, 34, 39, 40, 43

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
  630 F.3d 217 (D.C. Cir. 2011)............................................................................16

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ..............................................................................32

\* Authorities upon which Plaintiffs principally rely are marked with asterisks.

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ...............................................................51

*Doe v. Mattis*,
    889 F.3d 745 (D.C. Cir. 2018)..............................................................16

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020) ...............................................................41

\*  *eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006).............................................................................48

*Fox Broad. Co. v. Dish Network LLC*,
    747 F.3d 1060 (9th Cir. 2014) ........................................................41, 42

*Georgia v. Public.Resource.Org, Inc.*,
    140 S. Ct. 1498 (2020)..........................................................................13

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
    774 F.3d 192 (3d Cir. 2014) .................................................................54

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985).........................................................................39, 40

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
    2020 WL 2750636 (S.D.N.Y. May 27, 2020) ........................................4

*Jennings v. Stephens*,
    574 U.S. 271 (2015)..............................................................................14

*Klein v. Perry*,
    216 F.3d 571 (7th Cir. 2000) ..........................................................25, 29

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...............................................53

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,
    2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) ....................................4, 48

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*OSI, Inc. v. United States*,
   285 F.3d 947 (11th Cir. 2002) ............................................................25

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) ........................................................51

*Sony Corporation of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)...............................................................40, 41

*Stoe v. Barr*,
   960 F.3d 627 (D.C. Cir. 2020)..........................................................16

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .........................................................55

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*,
   695 F.3d 676 (7th Cir. 2012) ...........................................................51

*Walt Disney Co. v. Powell*,
   897 F.2d 565 (D.C. Cir. 1990)......................................................53, 56

*William R. Warner & Co. v Eli Lilly & Co.*,
   265 U.S. 526 (1924)..................................................................53

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) .........................................................37

**FEDERAL STATUTES**

5 U.S.C. § 552(a)(1).....................................................................7

17 U.S.C. § 107(1) .....................................................................18

17 U.S.C. § 107(3) .....................................................................36

17 U.S.C. § 107(4) .....................................................................39

17 U.S.C. § 502(a) .....................................................................48

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

National Technology Transfer and Advancement Act of 1995, Pub. L. No. 104-113, § 12(d)(1), 110 Stat. 775 (1996)......................................7

**STATE STATUTES**

Alaska Stat. Ann. § 44.42.067(b)-(c)...........................................47

Cal. Health and Safety Code § 18910 *et seq.*................................7

30 Tex. Admin. Code § 217.326......................................................47

**FEDERAL REGULATIONS**

1 C.F.R. § 51.1 *et seq.* (2021) ......................................................7

33 C.F.R. Pt. 154, App. C, § 2.3.1 (1999) ..................................30

33 C.F.R. Pt. 154, App. C, § 6.2 (1999) ....................................30

33 C.F.R. Pt. 154, App. C, § 6.3 (1999) ....................................30

33 C.F.R. Pt. 154, App. C, § 2.3.1 (2014) ..................................30

33 C.F.R. Pt. 154, App. C, § 6.2 (2014) ....................................30

33 C.F.R. Pt. 154, App. C, § 6.3 (2014) ....................................30

38 C.F.R. § 39.63 (2011) ..................................................21, 28, 36

40 C.F.R. Pt. 75, App. D (2010) ..........................................22, 30

40 C.F.R. § 136.3(a) (2003)....................................................29, 39

40 C.F.R. § 1065.1010 (2008) ......................................................23

40 C.F.R. § 1065.1010 (2021) ......................................................24

46 C.F.R. § 39.1005(h)(1) (2021) ................................................28

46 C.F.R. § 39.2009(a)(1)(iii)(B) (2021)....................................28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

46 C.F.R. § 56.60-2 (1997) .........................................................................20

73 Fed. Reg. 25,098 (May 6, 2008) ...........................................................24

79 Fed. Reg. 66,267 (Nov. 7, 2014)..............................................................8

**OTHER AUTHORITIES**

Emily S. Bremer, *Technical Standards Meet Administrative Law: A Teaching Guide on Incorporation by Reference*, 71 Admin. L. Rev. 315 (2019).............................................................................................8

Office of Management and Budget Circular A-119, 63 Fed. Reg. 8546 (Feb. 19, 1998), *as revised* 81 Fed. Reg. 4673 (Jan. 27, 2016)...........................7

4 *Patry on Copyright* § 10:148 ................................................................41

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ASHRAE | American Society of Heating, Refrigerating, and Air Conditioning Engineers |
| ASTM | American Society for Testing and Materials |
| IBR | Incorporation by Reference |
| NFPA | National Fire Protection Association |
| SMF | Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment |
| 2d. Supp. SMF | Plaintiffs' Second Supplemental Statement of Material Facts in Support of Their Second Motion for Summary Judgment |
| 3d. Supp. SMF | Plaintiffs' Third Supplemental Statement of Material Facts in Support of Their Second Motion for Summary Judgment |

## STATEMENT OF JURISDICTION

The district court had jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a) because this case involves claims of copyright infringement in violation of 17 U.S.C. § 501.  On March 31, 2022, the district court issued an order and opinion granting in part and denying in part Plaintiffs' motion for a permanent injunction. Plaintiffs filed a timely notice of appeal on April 28, 2022.  This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court denied in part Plaintiffs' motion for injunctive relief.

## STATEMENT OF ISSUES

1.    Whether the district court erred in holding that Defendant Public.Resource.Org's indiscriminate copying of Plaintiffs' copyrighted works constituted a fair use under 17 U.S.C. § 107—a ruling that applied to 185 of the 217 copyrighted works (the "Works") at issue in Plaintiffs' motion for summary judgment.

2.  Whether the district court erred in refusing to enter a permanent injunction after finding that Public.Resource.Org infringed 32 of the copyrighted works at issue.

## STATUTES AND REGULATIONS

Pertinent statutory and regulatory provisions are reproduced in the Addendum to this brief.

1

## INTRODUCTION

This case concerns Public.Resource.Org's copying and distribution of hundreds of Plaintiffs' copyrighted standards, many of which have been incorporated by reference ("IBR'd") into statute or regulation. Public.Resource.Org tries to justify its mass infringement arguing that these privately authored standards are "the law." Declining to adopt that sweeping argument, this Court remanded this case with instructions to "weigh the [statutory fair use] factors as applied to [Public.Resource.Org]'s use of *each standard*" in issue. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 449 (D.C. Cir. 2018) (*ASTM II*) (emphasis added). Under that directive, the district court should have determined whether "the *relevant portions* of... particular standard[s]" that Public.Resource.Org copied and distributed were "essential to comprehending one's legal duties" (factor one), and whether Public.Resource.Org's actions created an "adverse impact on the market for the copyrighted works [Public.Resource.Org] reproduced" (factor four). *Id*. at 450, 452-53 (emphasis added).

The district court failed to follow this Court's direction. The district court ignored Plaintiffs' uncontroverted evidence establishing that Public.Resource.Org copied and distributed substantial portions of Plaintiffs' works that are neither "legally binding" nor "essential to comprehending one's legal duties." *Id.* at 447, 450. This material included, for example, background information regarding the

standards' histories and material that expressly stated that it did *not* impose any requirement or obligation.  On market harm, the district court committed legal error by placing on Plaintiffs the burden of negating the existence of such harm, when Public.Resource.Org has the burden of proving each factor of its fair use affirmative defense.  The court compounded this error by failing to account for Plaintiffs' unrebutted evidence that unrestricted use of the type Public.Resource.Org made of Plaintiffs' works would destroy the market for Plaintiffs' works, and therefore concluding this factor favored Public.Resource.Org.  Even for the couple dozen standards where the district court did not find fair use, it erred, denying the injunction Plaintiffs sought even where the court found they had met, at least in part, all four injunctive-relief factors.

The result of these and other errors is a decision that threatens a public-private partnership that has made invaluable contributions to public safety and the country's economic well-being for over a century.  Plaintiffs and other self-funded, non-profit standards development organizations are able to create, maintain, and disseminate their works—including making those works available online for free viewing—only because copyright protects those organizations' right to receive remuneration from the businesses and industry professionals who consume copies and downloads of those works in furtherance of their profit-making enterprises.  Plaintiffs make the standards in issue available for free public viewing by anyone who wants to know

what they say.  Public.Resource.Org's indiscriminate mass copying and distribution of Plaintiffs' works allows the same market participants who otherwise would pay for Plaintiffs' works to, instead, freely copy and further disseminate those works, including substantial portions that are not essential for anyone to comprehend any legal duties.

This Court specifically noted that the fair use defense was supposed to "allow[] copying only where it serves a public end rather than permitting competitors to merely sell duplicates at a lower cost." *ASTM II*, 896 F.3d at 447.  But in allowing Public.Resource.Org's mass infringement, the district court's decision invites exactly the result this Court sought to avoid.  Already, a venture-capital-backed startup that directly competes with standards development organizations is arguing that fair use permits its wholesale copying and distribution of huge swaths of copyrighted standards that are IBR'd (including standards of Plaintiffs NFPA and ASHRAE), regardless of whether the copied portions may be said to impose any legal duties.  *See Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021); *Int'l Code Council, Inc. v. UpCodes, Inc.*, 2020 WL 2750636 (S.D.N.Y. May 27, 2020).

The district court's decision on fair use should be vacated and remanded for proper application of this Court's fair use test, focusing on whether Public.Resource.Org has posted only material "essential" to complying with the law.

And, given Plaintiffs' clear entitlement to a permanent injunction as to certain standards, the Court should also reverse the district court's denial of that injunction.

## STATEMENT OF THE CASE

### I.     Background

#### A.     Plaintiffs' creation of voluntary consensus standards depends on robust copyright protection.

Plaintiffs—private non-profits—are standards development organizations whose public-service missions include promoting public health and safety and encouraging environmental sustainability.  JA258, 270, 278 (SMF ¶¶9, 86, 129). The standards at issue include product specifications, methods for manufacturing and testing materials, and recommended practices to ensure safety and efficiency. *See ASTM II*, 896 F.3d at 441.  Plaintiffs create their standards through a voluntary consensus process. *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, 2017 WL 473822, at *2 (D.D.C. Feb. 2, 2017) (*ASTM I*).  That consensus process ensures that standards reflect balanced input and expertise of a wide range of interested parties, including consumer groups, industry representatives, academics, technical experts, and representatives from government. *See id.*; *ASTM II*, 896 F.3d at 441.

It requires a substantial investment—millions a year—to create voluntary consensus standards.  JA263, 273, 283 (SMF ¶¶44, 105, 152).  Those expenses arise from work including convening technical committee meetings, collecting research

and data, employing technical experts, and gathering public input.  JA263, 273, 283 (SMF ¶¶43, 104, 152).

Plaintiffs recoup those substantial costs, and support their overall mission-driven activities, the same way copyright owners generally do:  by selling and licensing copies of their copyrighted standards.  JA263-264, 273, 283-284, 301 (SMF ¶¶43-47, 104-08, 152-56, 251-52).  The companies and individuals who buy Plaintiffs' standards are typically people in the affected industries who use standards in their professional trade.  *See ASTM I*, 2017 WL 473822, at *4, 10-11; JA264, 273, 283-284 (SMF ¶¶45-47, 106-08, 153-54).  Plaintiffs generate the majority of their revenues (sometimes two-thirds or more) from selling copies of their standards.  JA264, 273, 283 (SMF ¶¶47, 106, 153).  Threatening Plaintiffs' ability to enforce their copyright jeopardizes their ability to continue their current standards-development work.  JA709-710, 772, 776 (Jarosz Report ¶¶6, 153, 163).

## B.  Incorporation by reference is a longstanding public-private partnership that protects copyright.

Governments have long recognized the value of voluntary consensus standards.  At the federal level, Congress mandated in the National Technology Transfer and Advancement Act of 1995 that agencies "use technical standards that are developed or adopted by voluntary consensus standards bodies, using such technical standards… to carry out policy objectives or activities."  Pub. L. No. 104-

113, § 12(d)(1), 110 Stat. 775, 783 (1996). Some states have similar requirements. *See, e.g.*, Cal. Health and Safety Code § 18910 *et seq.*

Governments are cognizant of the copyrights held by Plaintiffs and others and the importance of that protection to the overall public-private partnership. They have accordingly relied on those standards in their statutes and regulations through a process of IBR. Under this approach, rather than creating a new set of rules out of whole cloth, a government entity—for example, a federal agency or a state legislature—references the applicable standard as extrinsic material when drafting its statute or regulation. *See* 5 U.S.C. § 552(a)(1); 1 C.F.R. § 51.1 *et seq.* IBR serves an intentional balance: it saves governments (and, in turn, taxpayers) the cost and administrative burden of creating and updating their own standards, and also protects the copyrights of standards development organizations. *See* Office of Management and Budget Circular A-119, 63 Fed. Reg. 8546 (Feb. 19, 1998), *as revised* 81 Fed. Reg. 4673 (Jan. 27, 2016), *available at* 2016 WL 7664625, at *13, 19-20. Because standards reflect best practices and accordingly often already dictate industry norms, the IBR process decreases "the burden of complying with agency regulation." *Id.* at 13. Further, IBR "provid[es] incentives" for private standards development organizations to create "standards that serve national needs… promoting efficiency, economic competition, and trade." *Id.*

Given the tremendous public benefits that flow from reliance on private standards, the IBR process is incredibly widespread.  The Code of Federal Regulations has over 23,000 sections incorporating private standards.  Emily S. Bremer, *Technical Standards Meet Administrative Law: A Teaching Guide on Incorporation by Reference*, 71 Admin. L. Rev. 315, 316-17 (2019).  All 50 states and numerous localities also employ the practice.  For example, NFPA standards have been IBR'd, either directly or indirectly, in over 16,000 state and local statutes and regulations.

Because copyright protection is necessary for Plaintiffs to continue developing standards, that copyright protection is, in turn, necessary for governments to be able to rely on those standards.  If Plaintiffs cannot fund their work through copyright, governments cannot use those standards in their statutes and regulations.  As the Office of the Federal Register put it, making IBR'd standards free "would compromise the ability of regulators to rely on voluntary consensus standards, possibly requiring them to create their own standards, which is contrary to the [National Technology Transfer and Advancement Act of 1995] and the [Office of Management and Budget] Circular A-119."  79 Fed. Reg. 66,267, 66,268 (Nov. 7, 2014).

C.     **Plaintiffs make their IBR'd standards widely available to the public, including through free online access.**

Consistent with Plaintiffs' non-profit status and public-service missions, Plaintiffs make their IBR'd standards available to the public through multiple channels.  Most notably, Plaintiffs make all their IBR'd standards available for free read-only access on their websites.  JA5107 (2d. Supp. SMF ¶85); *see also infra* note 10.[1]  That format allows anyone to read the text of a standard but prevents downloading and printing copies that would substitute for Plaintiffs' paid offerings.  *See* pp. 43-45, *infra*.  Thus, this format permits Plaintiffs to further their public-interest missions, while preventing unauthorized distribution that would supplant Plaintiffs' sales of standards to the industry professionals who rely on those standards in their work.  JA5107-5108 (2d. Supp. SMF ¶¶85, 88-89).

Given Plaintiffs' efforts to ensure public access to their standards, it is unsurprising that there is no evidence in the record that anyone has ever been unable to access one of the standards at issue in this litigation to comply with a government regulation.  To the contrary, the undisputed evidence shows that people who rely on

---

[1] Plaintiffs also sell hard and digital copies of their standards, principally to industry professionals, at reasonable prices.  JA265, 272, 284 (SMF ¶¶58, 99, 158) (prices generally ranged from $25 to $120, with no standard more than $200).  Some standards are also available as part of a membership or subscription.  JA5105 (2d. Supp. SMF ¶78).

standards can obtain them with little difficulty.  JA270, 305 (SMF ¶¶89, 275); JA703 (Thomas Decl. ¶¶44-54); JA674-675 (Reiniche Decl. ¶¶18-20).

## II.    Procedural History

### A.    *ASTM I*

Public.Resource.Org is a non-profit with the stated mission of "mak[ing] the law and other government materials more widely available."  *ASTM I*, 2017 WL 473822, at *2 (citation omitted).  Public.Resource.Org does not claim that it needs access to any of Plaintiffs' standards to comply with government regulations. Instead, it seeks the right to post copies of Plaintiffs' standards on its website so that others can copy, print, distribute, or make derivative works of Plaintiffs' standards for free.

Starting in December 2012, Public.Resource.Org began posting copies of Plaintiffs' standards that it claimed (erroneously, in some instances, JA5070-5081 (2d. Supp. SMF ¶36)) had been IBR'd on its website and on the Internet Archive. JA289 (SMF ¶186).  Any user can download, copy, or print Public.Resource.Org's versions of Plaintiffs' standards for free, without any restrictions on use or further dissemination of the standards. *ASTM I*, 2017 WL 473822, at *23; JA289, 292 (SMF ¶¶185, 202, 204).  Plaintiffs' standards have been downloaded tens of thousands of times from the Public.Resource.Org and Internet Archive sites.  JA299 (SMF ¶¶241-42); JA5110-5115 (2d. Supp. SMF ¶¶98, 102).  And, while Public.Resource.Org

posted those standards bearing Plaintiffs' names and logos, Public.Resource.Org's copying process introduced errors into the reproduced works.  JA288-290, 294 (SMF ¶¶182, 185, 188-91, 195, 214-216).  The net result is that Public.Resource.Org reproduces and displays wholesale, inferior copies of Plaintiffs' standards with the purported aim of making IBR'd standards freely accessible—even though Plaintiffs already provide free access to all IBR'd standards.

In 2013, Plaintiffs filed suit for copyright infringement to enjoin Public.Resource.Org's mass copying and distribution of their standards.  Rejecting Public.Resource.Org's arguments across the board, the district court granted summary judgment and permanent injunctive relief to Plaintiffs.  *ASTM I*, 2017 WL 473822, at *25.

## B.    *ASTM II*

On appeal, this Court understood both Plaintiffs and Public.Resource.Org to be seeking "a bright-line rule either prohibiting (the [Plaintiffs]) or permitting ([Public.Resource.Org]) *all* of [Public.Resource.Org]'s uses of *every* standard incorporated by reference into law."  *ASTM II*, 896 F.3d at 446.  This Court declined to adopt such a rule.  Instead, it remanded for further factual development regarding Public.Resource.Org's argument that its use of Plaintiffs' standards was a fair use on the theory that Public.Resource.Org was merely posting material "essential to understanding one's legal obligations."  *Id.* at 453.  The Court emphasized that the

fair use analysis would need to take account of the significant variation among standards and the way standards are IBR'd.  *See, e.g.*, *id.* at 443, 447.  And it directed the district court to assess whether Public.Resource.Org had justified its fair use defense as to each portion of the standards it posted.  *Id.* at 450.  As this case involves about 200 standards, the Court suggested considering "whether the standards are susceptible to groupings that are relevant to the fair use analysis."  *Id.* at 449.

### C.    *ASTM III*

On remand, the parties cross-moved for summary judgment as to 217 of Plaintiffs' standards.  Following this Court's direction, Plaintiffs engaged in a detailed analysis of each standard, explaining why Public.Resource.Org's fair use defense failed for (at least) portions of each standard, and offering various groupings "relevant to the fair use analysis," *ASTM II*, 896 F.3d at 449.  JA5070-5105 (2d. Supp. SMF ¶¶36-76).  Disregarding this Court's effort to avoid a "bright-line" resolution of the case, *ASTM II*, 896 F.3d at 446, Public.Resource.Org, by contrast, insisted that any standard that has been IBR'd in any way and to any extent could be freely posted in its entirety.  *See* Public.Resource.Org Second Motion for Summary Judgment 21-30, Dkt. 202; JA5068 (2d. Supp. SMF ¶¶31-32) (Public.Resource.Org disavowing obligation to conduct fine-grained analysis of standards' legal effect, claiming that "entirety of each standard" is IBR'd and Public.Resource.Org "is not an attorney" and could not provide legal advice).  Public.Resource.Org largely did

not respond to Plaintiffs' arguments about why particular standards or particular portions thereof were not essential to complying with any legal duty.

The district court granted in part and denied in part both motions. The court first ruled that Plaintiffs own valid copyrights in each standard. JA9280-9285 (Memorandum Opinion 16-21). In the process, the court rejected Public.Resource.Org's argument—based on an erroneous reading of *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498 (2020)—that Plaintiffs' standards become uncopyrightable "government edicts" once IBR'd. *See* Public.Resource.Org Supplemental Brief 3-4, Dkt. 226. The district court correctly found that Public.Resource.Org did "not offer any evidence that a judge or legislator wrote any of Plaintiffs' standards" or that "state legislators hired Plaintiffs to draft the standards." JA9284 (Memorandum Opinion 20). As such, the court concluded that "[a] government body that merely incorporates a standard by reference does not independently create any content, and therefore does not become an 'author' of the standard." JA9284 (Memorandum Opinion 20); *accord Georgia*, 140 S. Ct. at 1507 (holding the government edicts doctrine "does not apply… to works created by… private parties… who lack the authority to make or interpret the law").

Turning to fair use, the district court rejected Public.Resource.Org's fair use defense as to 32 standards that Public.Resource.Org had not shown were even IBR'd, but found fair use for 185 standards (the "Works") where

Public.Resource.Org had identified some past or current incorporating statute or regulation. The district court acknowledged that this Court had directed an analysis that "consider[ed] the variations and legal status of each of the standards." JA9271 (Memorandum Opinion 7). And it issued a lengthy appendix that addressed each of the four fair use factors for each of the standards. JA9312-9498 (District Court Appendix). For the most part, though, the district court offered the same conclusory reasoning as to each fair use factor for each Work. And, with a few exceptions, it examined standards in their entirety, ignoring Plaintiffs' arguments about (and this Court's direction to consider) portions of Works that Public.Resource.Org copied that did not impose any legal obligations.

Despite finding infringement, the court denied a permanent injunction as to the 32 standards where it concluded Public.Resource.Org's fair use defense failed. JA9311 (Memorandum Opinion 47). Plaintiffs appealed.[2]

## SUMMARY OF ARGUMENT

I. Because this case implicates substantial policy considerations, this Court rejected any "bright-line rule," including one that would permit "*all* of

---

[2] Public.Resource.Org did not cross-appeal. It is accordingly barred from presenting any argument that would "enlarg[e] [its] own rights" or "lessen[] [Plaintiffs'] rights" under the district court's judgment, *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (citation omitted)—*e.g.*, any argument that would require setting aside the district court's ruling that Public.Resource.Org had infringed 32 of Plaintiffs' copyrights.

[Public.Resource.Org]'s uses of every standard incorporated by reference into law." *ASTM II*, 896 F.3d at 446. This Court instead remanded for a "narrower" fair-use analysis, which the Court recognized would need to consider that standards "vary considerably in form, substance, and effect." *Id.* at 443, 447.[3]

Fair use is an affirmative defense so, on remand, Public.Resource.Org was required to justify its copying as to each portion of (or the entirety of) each standard that it posted. *See, e.g.*, *id.* at 450, 452. It did not. Plaintiffs, by contrast, did that work and identified the copyrighted material that Public.Resource.Org posted for which, under this Court's prior analysis, verbatim copying was unjustified (including by grouping standards into categories based on type of non-essential material). The district court all but ignored Plaintiffs' analysis. While issuing a lengthy appendix, the district court largely copied and pasted the same conclusory reasoning as to each factor for each of the 185 Works—and did not consider that large portions of each Work were not essential to understanding legal duties.

Public.Resource.Org also had the burden to establish that its unauthorized use would not harm the market for Plaintiffs' Works. The district court committed legal error—and parted ways with two courts of appeals—by improperly shifting to

---

[3] Plaintiffs recognize *ASTM II* is binding but respectfully preserve their arguments that the decision's interpretation of the fair use factors as applied to IBR'd standards was in error.

Plaintiffs the burden on factor four, tainting the court's entire analysis of market harm. The undisputed evidence on this factor favors Plaintiffs.

The upshot was that the district court adopted the bright-line rule this Court rejected: without exception, when the court found a standard had been IBR'd, it found fair use. This Court should remand for the analysis it required.

II. The district court also erred in failing to grant a permanent injunction after finding that Public.Resource.Org infringed the copyrights of 32 standards. Plaintiffs showed that each of the four injunctive-relief factors favored entering such relief and that they are not adequately protected absent an injunction. The Court should reverse that ruling.

## STANDARD OF REVIEW

This Court reviews a decision on summary judgment de novo, "viewing the evidence in the light most favorable to [the non-moving party], and drawing all reasonable inferences in [its] favor." *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020); *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 223 (D.C. Cir. 2011). The Court reviews the district court's balancing of injunctive-relief factors for an abuse of discretion, "review[ing] any underlying legal conclusions de novo." *Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018).

16

## ARGUMENT

## I.    The District Court Erred In Analyzing Fair Use.

Public.Resource.Org did not meet its burden of demonstrating fair use as to the Works, and it was not entitled to summary judgment.  Plaintiffs recognize that, under *ASTM II*, fair use permits *some* use of their standards, but Public.Resource.Org's use is not fair.  It involves wholesale, indiscriminate copying of the entirety of Plaintiffs' standards.  At a minimum, disputed factual questions regarding the extent to which vast portions of each of the Works impose any binding obligation and the impact on the market preclude summary judgment.  This Court should vacate and remand for the district court to apply the four fair use factors as this Court directed.  In particular, the Court should direct the district court to do the following on remand:

- Address whether the incorporating regulation makes the entire Work or only some portion thereof "essential to understanding one's legal obligations," *ASTM II*, 896 F.3d at 453;

- Address whether the Work includes portions that are not "essential" but merely "help[ful]" to understanding the Work, *id.* at 450;

- Address whether Plaintiffs and Public.Resource.Org have overlapping purposes and, if so, whether Public.Resource.Org's use can nonetheless be considered transformative;

- Analyze the record evidence regarding market harm with the burden of proof properly allocated to Public.Resource.Org; and

- Explain its conclusions regarding each factor either for each Work or for representative Works (*e.g.*, why a Work is or is not a reference

17

procedure) and how those conclusions weigh into its bottom-line holding regarding fair use.

**A.    Factor 1: Public.Resource.Org's wholesale distribution of Plaintiffs' Works is not transformed by purportedly making "the law" available to the public.**

The first fair use factor requires courts to consider "the purpose and character of the use." 17 U.S.C. § 107(1).[4]  In its prior opinion, this Court directed the district court to consider "whether, in certain circumstances, distributing copies of *the law* for purposes of facilitating public access could constitute transformative use." *ASTM II*, 896 F.3d at 450 (emphasis added).  The Court made clear that "the law" for these purposes was not co-extensive with all IBR'd material and that the fairness of "[Public.Resource.Org]'s specific use" must be assessed for each portion of a standard.  *See id.* at 450-51.  The summary judgment record demonstrates conclusively that Public.Resource.Org's wholesale copying and public distribution of Plaintiffs' standards is not transformative for two independent reasons.  First, Public.Resource.Org does not limit its copying and distribution to "relevant portions of… particular standard[s]" that could be called "the law" under any approach, instead indiscriminately posting text that is "not essential to complying with any

---

[4] This Term, the Supreme Court will hear *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, No. 21-869, which raises an issue regarding what constitutes a transformative use.  Given the importance of transformativeness to this appeal, this Court may wish to consider ordering supplemental briefing once that decision is issued.

legal duty." *Id.*  Second, Plaintiffs already make the Works freely accessible to the public and Public.Resource.Org's copies serve the same purpose.[5]

> 1.    *Public.Resource.Org does not limit its copying to portions of Works that are essential to comprehending legal duties.*

Public.Resource.Org's threat to Plaintiffs is so dire because it copies and distributes the Works wholesale—*i.e.*, far more than what is essential to complying with the law.  In *ASTM II*, the Court distinguished between specific portions of standards that are "*essential* to comprehending one's legal duties" (which could tilt toward a transformative use as to those portions), and those portions that just "*help inform* one's understanding of the law" (which would cut against transformation for those portions).  *ASTM II*, 896 F.3d at 450 (emphasis added).  It emphasized that this inquiry would require assessing the legal significance of particular portions of standards, and the particular way in which each standard was incorporated.  *See id.* at 450-51.  The record demonstrates that Public.Resource.Org has posted significant portions of material from each Work that are not essential to comprehending legal duties and that Plaintiffs are entitled to summary judgment that Public.Resource.Org's copying of these sections is not transformative.  At the least,

---

[5] Although this Court previously concluded that Public.Resource.Org's use was not commercial, it made clear that this was merely one "facet" of the first fair use factor and "'does not insulate [Public.Resource.Org] from a finding of infringement.'"  *ASTM II*, 896 F.3d at 449 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994)).

there are factual questions about whether those portions are necessary to comply with the law such that Public.Resource.Org did not meet its burden of demonstrating transformative use.

> a.   *Plaintiffs introduced substantial evidence showing that whole Works and portions thereof were not essential to complying with the law.*

Following this Court's direction, Plaintiffs exhaustively detailed the many reasons that Public.Resource.Org's postings do not consist of only portions of Works that are critical to complying with the law.

<u>Works where only portions are relevant to incorporation</u>:  When only specific portions of incorporated standards are relevant to an incorporating regulation, posting the irrelevant portions cannot be transformative.  *See ASTM II*, 896 F.3d at 450 (explaining that posting "the relevant portions" of a standard could be considered transformative); *see also id.* at 452.   Yet for every Work, Public.Resource.Org posted the standard in its entirety even though, for numerous Works, only a portion was relevant to the incorporating regulation.  *See, e.g.*, JA5085-5086 (2d. Supp. SMF ¶48); JA8860-8861 (3d. Supp. SMF ¶8).

For example, Public.Resource.Org relied on 46 C.F.R. § 56.60-2 (1997) as the basis for posting ASTM B85 (1984).  JA9370-9371 (District Court Appendix ¶71). That regulation provides that "[m]inimum values" for certain tension tests "shall be those listed in table X-2 of ASTM B85."  46 C.F.R. § 56.60-2, n.14 (1997).  The

parts of ASTM B85 outside of table X-2 are unnecessary to determine the minimum values in X-2. JA5085 (2d. Supp. SMF ¶48(b)). Nonetheless, Public.Resource.Org posted the entirety of ASTM B85.

Similarly, Public.Resource.Org sought to justify its posting of the full text of NFPA 11 (2005) based on a regulation that provides that "[f]ixed extinguishing systems" must comply with the standard. JA9318-9319 (District Court Appendix ¶8). The standard, however, includes provisions related to not just fixed, but also semifixed and portable systems. The standard's provisions related to semifixed and portable systems are *not* necessary to complying with the regulation Public.Resource.Org identified. *See* JA8860-8861 (3d. Supp. SMF ¶8).

And, by the same token, the regulation that Public.Resource.Org identified requiring veterans cemeteries to meet the architectural and structural requirements of NFPA 101 (2003), JA9333 (District Court Appendix ¶25 (citing 38 C.F.R. § 39.63 (2011))), does not require compliance with, for example, NFPA 101's provisions related to one- and two-family dwellings, day-care occupancies, and educational occupancies. JA8860-8861 (3d. Supp. SMF ¶8).

Works incorporated as reference procedures: This Court explained that Public.Resource.Org likely could not show a transformative use for a standard that was incorporated "as a reference procedure"—*i.e.*, in instances where the regulation

21

explains that complying with the standard would "satisf[y] the codified requirements." *ASTM II*, 896 F.3d at 443, 450.

Yet many of the Works were incorporated as reference procedures. *See, e.g.*, JA5084-5085 (2d. Supp. SMF ¶¶46-47). For example, Public.Resource.Org relied on 40 C.F.R. Appendix D to Part 75 (2010) as the regulation incorporating ASTM D1217 1993 (1998). *See* JA9374 (District Court Appendix ¶76). As Plaintiffs explained, that regulation expressly provides an "*Optional* SO₂ Emissions Data Protocol for Gas-Fired and Oil-Fired Units" that "*may be used* in lieu of" alternative options. 40 C.F.R. Pt. 75, App. D (2010) (emphasis added). The subsection referencing D1217 provides a list of options for "[d]etermin[ing] the density or specific gravity of the oil sample," including D1217, other incorporated standards, or "any consensus standard method prescribed for the affected unit under part 60 of this chapter." *Id.* § 2.2.6. D1217 is thus an option, provided as a reference point, but it is not itself "essential to complying with any legal *duty*." *ASTM II*, 896 F.3d at 450 (emphasis added).

<u>Non-mandatory portions of Works</u>: Plaintiffs' standards are designed to be comprehensive documents describing the authoring Plaintiff's view of best practices for performing work in a particular field or context, not statute books containing a list of mandatory rules. For that reason, each of the Works contains significant optional or explanatory material—*i.e.*, information that, when IBR'd, would, at

most, be "help[ful]" for following that regulation, but would not be "essential" for doing so. *ASTM II*, 896 F.3d at 450. That material includes informational appendices and annexes that are expressly non-mandatory, JA5086-5088, 5100-5104 (2d. Supp. SMF ¶¶51(a), 52, 67, 72-74); prefatory and background material regarding, for example, the history and development of standards, JA5096-5097, 5103 (2d. Supp. SMF ¶¶62-63, 71); reference and informational notes that state that they are "informational only" and "not enforceable as requirements" of the standard, JA5098-5099 (2d. Supp. SMF ¶64); diagrams, figures, illustrations, and examples that illustrate concepts for guidance but do not impose any requirements themselves, JA5099-5100 (2d. Supp. SMF ¶¶65-66); statements regarding the developing organization's policy positions, JA5105 (2d. Supp. SMF ¶76); provisions that "describe options or alternative methods," but are not "required" portions of the standards, JA5094-5096 (2d. Supp. SMF ¶¶57-60); and sections identifying the "location of selected changes" from previous editions, JA5087-5089 (2d. Supp. SMF ¶¶51(b), 53). None of that information could possibly be considered *essential* to complying with the law, but Public.Resource.Org copied it all anyway.

<u>Works that are not IBR'd by in-force regulations</u>: Plaintiffs identified dozens of instances where Public.Resource.Org identified only an outdated regulation incorporating the Works. *See, e.g.*, JA8860 (3d. Supp. SMF ¶5). For example, Public.Resource.Org pointed to 40 C.F.R. § 1065.1010 (2008) as the regulation that

IBR'd ASTM D2163-91 (1996).[6]    JA9386 (District Court Appendix ¶91).    That regulation was amended in 2008 and it no longer incorporates that version of that standard.  JA8925 (Wise Decl., Ex. 176, at 61); *see also* 73 Fed. Reg. 25,098, 25,349 (May 6, 2008) (IBR'ing ASTM D2163-05); 40 C.F.R. § 1065.1010 (2021) (IBR'ing ASTM D2163-07).  Whatever the significance of D2163-91 (1996) prior to 2008, that version can no longer be said to have a "direct legal effect on any private party's conduct."  *ASTM II*, 896 F.3d at 443.

        b.     *The district court's truncated review of the Works did not follow this Court's direction.*

The district court largely ignored Plaintiffs' detailed analysis.  For 132 of the 185 Works, the court stated only that "the incorporated standard provides information essential for a private entity to comprehend its legal duties," supporting fair use.  Brief Appendix §§ B.1-B.2 (132 Works).[7]  For nearly all the other Works, the court concluded that the standard did "not provide information essential for a private entity to comprehend its legal duties" because it was incorporated as a

---

[6] For ASTM standards, numbers after a dash indicate the original adoption or revision year and a year in parentheses denotes a reapproval without changes in that year.  JA5069-5070 (2d. Supp. SMF ¶35).

[7] As to *one* of these 132 Works, the court limited its conclusion about "essential" information to the standard's Test Methods A and B.  JA9312 (District Court Appendix ¶1).

For the Court's convenience, Plaintiffs have prepared a summary appendix quoting the district court's different treatments of each fair use factor and identifying each standard to which the district court applied that treatment.  *See* Brief Appendix.

reference or discretionary procedure.  Brief Appendix § B.3 (48 Works).  Here, too, the court provided almost no additional explanation for its conclusion.[8]  For the remaining Works, the court found two were incorporated as discretionary procedures but nonetheless were essential to complying with the law; and three were not essential to any private entity's compliance with the law but helped "facilitate[] public debate."  Brief Appendix §§ B.4-B.5 (5 Works).

This is not what *ASTM II* directed the district court to do.  And, by addressing the Works this way, the court failed to provide any meaningful basis for appellate review.  *See OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir. 2002) (vacating summary judgment:  "[o]ur review would be greatly facilitated by a comprehensive analysis by the district court of the relevant facts as to which there is no genuine dispute and by a comprehensive analysis of the legal issues"); *Klein v. Perry*, 216 F.3d 571, 575 (7th Cir. 2000) (vacating summary judgment:  "district court was not as thorough as it should have been" and provided "unsupported conclusion [that] is insufficient to permit this court to engage in meaningful review").  More particularly,

---

[8] For six Works, the court provided some (often minimal) standard-specific statement. *See, e.g.*, JA9318 (District Court Appendix ¶7) (standard "is incorporated as a reference procedure *for a public Department*" (emphasis added)); *see also* JA9321-9322, 9359-9361, 9435-9437 (District Court Appendix ¶¶11, 57, 59, 150-51).  But for the remaining 42 Works, the court's conclusion was a summary sentence stating the standard was "incorporated as a discretionary procedure" or "as a reference procedure"—either of which weighed *against* fair use.

the court's evaluation of the essential-to-complying issue suffered from three fundamental errors.

First, despite finding 48 Works were *not* essential to complying with the law, the court did not appear to factor that conclusion into its overall fair use balancing. Brief Appendix § B.3.  The court held Public.Resource.Org could post *all* of those Works.  Brief Appendix §§ F.1-F.2.  In other words, the factor-one analysis not only did not change the court's bottom-line conclusion, but the court gave no indication that it even weighed this factor into its ultimate holding.  Public.Resource.Org did not need to prevail on every fair use factor, but it is inexplicable how Public.Resource.Org could prevail on a defense predicated on "inform[ing] the public about the law," *ASTM II*, 896 F.3d at 453, for Works the court concluded were not the law.

Second, as to 182 of the Works, the court did not consider which specific *portions* were essential to complying with the law.  This Court was explicit that Public.Resource.Org's fair use defense could justify "reproduc[ing] in full the *relevant portions* of th[e] particular standard" that were "essential to comprehending one's legal duties."  *ASTM II*, 896 F.3d at 450 (emphasis added).  With only three exceptions, *see* JA9312, 9382, 9412 (District Court Appendix ¶¶1, 85, 122), however, the district court did not engage in any portion-by-portion analysis on the first factor.  As explained above, Plaintiffs provided groupings of particular portions

26

of standards for which Public.Resource.Org's transformative use argument failed, identifying numerous (1) portions of standards that were non-mandatory, and (2) instances where a standard was incorporated in such a way that only parts of it could be considered relevant to complying with the law. *See* pp. 20-23, *supra*. The district court disregarded this framework and the extensive record Plaintiffs developed in support.

As to the non-mandatory sections of *all* 185 Works, the decision says nothing in response to Plaintiffs' arguments and the hundreds of supporting examples they provided. A section of an IBR'd standard regarding NFPA's history or ASHRAE's goals concerning the environmental impact of its activities, JA5097, 5105 (2d. Supp. SMF ¶¶63, 76), could not "help inform one's understanding of the law," much less be "essential to complying with any legal duty." *ASTM II*, 896 F.3d at 450.

As to incorporations that make only portions of standards relevant, for 182 of 185 Works, the court responded that the incorporating regulation did not "specify that only certain provisions" are incorporated or "indicate which specific provisions… are relevant for compliance." Brief Appendix §§ A.1-A.3; *see also* Brief Appendix § D.1. In other words, because almost no regulations use the magic words "only X, Y, and Z provisions are incorporated by reference," the court deemed the *entirety* of (sometimes hundreds-of-pages) standards "essential" to comprehending those regulations. That illogical conclusion cannot be squared with

*ASTM II*.  There, this Court discussed the example of 46 C.F.R. § 39.1005(h)(1), which incorporates NFPA 70 (2011) for § 39.2009(a)—though without specifying that any particular sections are incorporated.  Section 39.2009(a), in turn, dictates that certain cargo tank barges should meet "NFPA 70, Articles 406.9 and 501-145." 46 C.F.R. § 39.2009(a)(1)(iii)(B).  This Court said that the regulation might justify reproducing *those two* provisions.  *ASTM II*, 896 F.3d at 450, 452.  Section 39.1005(h)(1) does not "specify that only certain provisions" were incorporated, but this Court did not say or suggest this could justify Public.Resource.Org posting the *entirety* of the standard.

Plaintiffs gave numerous examples of analogous regulations.  In some instances, the regulation specifically refers to a particular portion of the standard— *e.g.*, the regulation that refers to specific portions of table X-2 in ASTM B85.  *See* pp. 20-21, *supra*.  In other instances, the regulation's scope makes clear that only portions of that standard are relevant—*e.g.*, while parts of NFPA 101 (2003) may be necessary to comply with 38 C.F.R. § 39.63 (2011)'s requirement that veterans cemeteries meet the "[a]rchitectural and structural requirements" of that standard, surely Chapter 16, specifying rules for "New Day-Care Occupancies" is not.  *See* p. 21, *supra*.

The district court did not address any of this evidence.[9]  Its reasoning collapses largely into just whether the standard had been IBR'd or not, contrary to this Court's direction to examine "*the way in which* [standards] are incorporated," *ASTM II*, 896 F.3d at 449 (emphasis added).

Third, the district court failed to explain its conclusions that certain Works were essential to complying with the law, while others were not.  For 180 of the 185 Works, the court said the standard either was or was not essential for complying with legal duties—but never adequately explained its summary conclusion.    Brief Appendix §§ B.1-B.3.  It is impossible to know why the district court reached those conclusions—as inconsistencies in its decision make particularly plain.  To take just a few:

- The court concluded that Public.Resource.Org could reproduce only Test Methods A and B of ASTM D2036 (1998) because the incorporating regulation stated that the "full text of the referenced test procedures are incorporated by reference," and the regulation referenced only test methods A and B.   JA9312 (District Court Appendix ¶1 (quoting 40 C.F.R. § 136.3(a) (2003))).  But precisely the same regulation incorporates only specified test procedures from ASTM D1688 (1995) and ASTM D512 1989 (1999), and the district court held that Public.Resource.Org could produce those standards in full.  JA9382, 9412 (District Court Appendix ¶¶85, 122).

---

[9] The district court stated that it "d[id] not rely on the disputed evidence." JA9273 (Memorandum Opinion 9 n.3).  To the extent the court failed to account for Plaintiffs' evidence without any articulated basis for doing so, the refusal to consider such evidence constitutes reversible error.  *See Klein*, 216 F.3d at 575.

- The district court held that ASTM F715 (1995) and ASTM F715 1981 (1986) were incorporated as "discretionary procedure[s] because entities may comply with the regulation by relying on 'other test[s] approved by the Coast Guard.'" JA9435-9437 (District Court Appendix ¶¶150-51 (citing 33 C.F.R. Pt. 154, App. C, § 2.3.1 (1999); 33 C.F.R. Pt. 154, App. C, § 2.3.1 (2014))). By contrast, the court found that ASTM F631 (1993) and ASTM F631 1980 (1985) "provide[d] information essential for… comprehend[ing]… legal duties." JA9433-9435 (District Court Appendix ¶¶148-49). Yet the F631 standards are *also* incorporated as merely one *option*: a regulated entity may comply with the incorporating regulation by, *inter alia*, (1) using a formula expressly stated in the regulation, (2) using the standard, or (3) using "an equivalent test approved by the Coast Guard." 33 C.F.R. Pt. 154, App. C, §§ 6.2-6.3 (1999); 33 C.F.R. Pt. 154, App. C, §§ 6.2-6.3 (2014); JA9433-9435 (District Court Appendix ¶¶148-49). If anything, then, the F631 standards are even more discretionary than the F715 standards, as complying with the regulations related to the F631 standards does not even require the Coast Guard to approve another test—the regulatory text already provides a way of complying.

- The court, without explanation, rejected Plaintiffs' argument that 40 C.F.R. Appendix D to Part 75 (2010) incorporated ASTM D1217 as a reference procedure. *See* p. 22, *supra*. That holding is difficult to square with the court's finding that 48 Works were incorporated as discretionary or reference procedures. And it cannot be explained by any convincing rebuttal specific to that standard: Public.Resource.Org did not engage in any standard-specific arguments. It is impossible to know why the district court held this standard was essential to complying with the law because it did not say.

Plaintiffs *do not* (and *did not*) argue that the district court had to examine every

line of every standard to determine what was "essential to complying" with the law.

*ASTM II*, 896 F.3d at 450. Nor do Plaintiffs suggest the court had to address every

example they provided as to every standard. The court could have analyzed a few

standards Plaintiffs argued were reference procedures and explained why it accepted

30

some arguments but not others.  Or it could have "direct[ed] the parties… to file briefs addressing whether the standards are susceptible to groupings that are relevant to the fair use analysis." *Id.* at 449.  Indeed, following this Court's direction, *see id.*, Plaintiffs *did* propose various ways of grouping the standards.  *See, e.g.*, JA5087-5105 (2d. Supp. SMF ¶¶52-57, 59, 62-68, 70-76); JA8860-8861 (3d. Supp. SMF ¶¶7-9).  Public.Resource.Org, by contrast, "poorly served the court," *ASTM II*, 896 F.3d at 449, by refusing to engage in the analysis this Court directed and, instead, insisting that its use of the entirety of any standard that had been IBR'd was fair.  *See* pp. 12-13, *supra*.

To be sure, the required fair use analysis is substantial.  But that is only because the scope of Public.Resource.Org's infringement is so massive.  The fact that Public.Resource.Org appropriated hundreds of works does not excuse Public.Resource.Org from its burden of proving transformativeness or justify the district court's truncated analysis.  The court's failure to grapple with Plaintiffs' arguments regarding the reasons standards and portions thereof are not essential for legal compliance was error.

> 2. *Under the "circumstances" of Public.Resource.Org's copying and distribution, Public.Resource.Org's use is not transformative because Plaintiffs already make their standards freely available.*

a.  A transformative use "adds something new, with a further purpose or different character" from the original work.  *Campbell*, 510 U.S. at 579.  The

pertinent question is whether a defendant's use of a work "serves a new and different function from the original work and is not a substitute for it." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).  And that inquiry is an objective one focused on "how the work in question appears to the reasonable observer, not simply what an [accused infringer] might say about a particular piece or body of work." *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).

The prior panel recognized that the context of Public.Resource.Org's copying matters for this analysis, directing consideration of whether "*in certain circumstances*, distributing copies of the law for purposes of facilitating public access could constitute transformative use." *ASTM II*, 896 F.3d at 450 (emphasis added).  The circumstances here are that Plaintiffs make all of the IBR'd Works available for free, read-only access in their online reading rooms.  *See* JA5107 (2d. Supp. SMF ¶85).[10]  Plaintiffs do so to "provid[e] a resource for individuals to educate

---

[10] At the time Plaintiffs moved for summary judgment, the only Works that were not available in Plaintiffs' reading rooms were certain ASTM standards for which ASTM was not aware of any IBR'ing regulation.  *See* JA8861 (3d.Supp.SMF ¶9).  In Public.Resource.Org's summary judgment filings, it, for the first time, identified regulations IBR'ing some of those standards.  Consistent with ASTM's policy of making IBR'd standards available to the public for free, JA266 (SMF ¶63), ASTM placed those standards in its reading room.  At present, the only Works that are not available in Plaintiffs' reading rooms are certain ASTM standards where a regulation IBR's a substantively identical ASTM standard; in those instances, the substantively identical ASTM standard (*i.e.*, the one actually IBR'd) is available in ASTM's reading rooms.

themselves as to the contents of standards, including standards that have been incorporated by reference."  JA5107 (2d. Supp. SMF ¶86); *see also* JA272 (SMF ¶101), JA5108 (2d. Supp. SMF ¶90) (describing other tools Plaintiffs developed to educate the public about incorporated standards).  Under these circumstances, Public.Resource.Org's copies serve no purpose beyond Plaintiffs' copies.  Far from meeting the standard for transformativeness, Public.Resource.Org admittedly just offers an inferior substitute for what Plaintiffs already provide.  *See* JA5065 (2d. Supp. SMF ¶20) (Public.Resource.Org's copies of standards direct readers to consult with standards development organizations or governments for "definitive versions"); JA5064 (2d. Supp. SMF ¶¶13-18) (discussing errors in Public.Resource.Org's postings); *see also, e.g.*, JA5081-5082 (2d. Supp. SMF ¶37) (Public.Resource.Org posting stating standard had been IBR'd by non-existent section of C.F.R.).  While the analysis might be different if an organization *did not* make its works accessible at no charge, the context here matters.

b.    The district court's opinion does not address whether, under the circumstances, Public.Resource.Org's unauthorized copying serves "a further purpose or different character" from Plaintiffs' free-access offerings. *Campbell*, 510 U.S. at 579.  The decision considered only whether Public.Resource.Org had posted material that was "essential to comprehending one's legal duties," but it never addressed whether—even if Public.Resource.Org had—that conduct would add any

purpose or character beyond Plaintiffs' activities.  JA9291 (Memorandum Opinion 27 (citation omitted)).[11]  Skipping over that critical predicate question was error.  It cannot be transformative for an unauthorized use to merely duplicate the copyright holder's use.  Because that is all Public.Resource.Org does, its use is not transformative.

*    *    *

In short, the district court's analysis of the first fair use factor neither follows this Court's instructions nor provides any meaningful basis for this Court's review. For each of the Works, Plaintiffs have identified reasons that the Work or significant portions thereof are definitively *not* essential to complying with the law such that factor one should weigh against fair use.  At the least, however, there are genuine factual disputes that preclude summary judgment in favor of Public.Resource.Org.

## B.    Factor 2:  The "nature of the copyrighted works" does not favor fair use.

The second fair use factor ("the nature of the copyrighted work") asks whether the work is "close[] to the core of intended copyright protection."  *Campbell*, 510 U.S. at 586.  Plaintiffs' standards are original and complex works that take enormous

---

[11] As to each standard, the district court repeated this Court's statement that Public.Resource.Org's "attempt to freely distribute standards incorporated by reference into law qualifie[s] as a use that further[s] the purposes of the fair use defense."  Brief Appendix n.2.  But that statement was about Public.Resource.Org's non-profit status, not whether its use was transformative.  *See ASTM II*, 896 F.3d at 449.

resources to produce and that serve important public functions, including promoting public safety, supporting building and construction, and advancing product testing. *See, e.g.*, JA263, 273, 283, 285-286, 303 (SMF ¶¶43-44, 104-05, 152, 164-67, 266). Indeed, it is for that reason that voluntary consensus standards have been IBR'd in tens of thousands of instances and form a critical part of the United States' regulatory landscape. *See* p. 8, *supra*. Providing an incentive for Plaintiffs to develop and publish these standards is at the core of copyright law. Additionally, this Court's previous opinion emphasized that this factor "demands an individual appraisal of each standard and its incorporation" to determine whether the standard has been incorporated in a way that makes it "virtually indistinguishable" from being "expressly copied into law." *ASTM II*, 896 F.3d at 451-52.

The district court failed to conduct that individualized inquiry. For 181 of the 185 Works, the district court asserted that the standard was incorporated "without limitation[], such that 'the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law.'" Brief Appendix § C.1. As to the remaining four Works, the court held that the standard was only partially incorporated, making Public.Resource.Org's copying "harder to justify." Brief Appendix § C.2.

But many standards other than the four the district court identified are also at best "only partially incorporated." For instance, the IBR'ing regulation for ASTM

D1688 is the same one that the court held only partially incorporated four of the Works, but the court inexplicably held D1688 was incorporated "without limitation." *Compare* JA9382 (District Court Appendix ¶85), *with* JA9312-9313, 9398-9399, 9412 (District Court Appendix ¶¶1, 105-06, 122).  In other instances, the IBR'ing regulations incorporate Works that include portions that have absolutely no relevance to the regulations.  *See* pp. 20-21, *supra*.  Returning again to 38 C.F.R. § 39.63, its requirement that veterans cemeteries meet the "[a]rchitectural and structural requirements" of NFPA 101 (2003) is not "indistinguishable" from a regulation that "expressly copied into law" the standard's chapter on day-care occupancies—that chapter is entirely irrelevant to the regulation.  *ASTM II*, 896 F.3d at 452.

Moreover, as with factor one, even for the four Works where the district court held that this factor did not favor fair use, it reached the same ultimate conclusion, holding that Public.Resource.Org could copy them.  It is thus, again, unclear how, if at all, the court weighed this factor into the fair use analysis.

**C.    Factor 3:  Public.Resource.Org copies and posts entire Works without attempting to limit its distribution to those portions of Works that are essential to complying with the law.**

The third fair use factor looks to "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  "While 'wholesale copying'" like Public.Resource.Org's "'does not preclude fair use per

36

se,' copying an entire work 'militates against a finding of fair use.'" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (citation omitted).  As the quantity of copied material increases, so too does the likelihood that the copy "could serve [someone] as an effective, free substitute for the purchase." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 222 (2d Cir. 2015).

This Court instructed the district court to consider whether Public.Resource.Org had "limit[ed] its copying to only what is required to fairly describe the standard's legal import" and, "where the incorporation merely makes reference" to the standard, whether "a paraphrase or a summary" would suffice. *ASTM II*, 896 F.3d at 452.  As explained above, Public.Resource.Org has not even attempted to so limit its copying.  It always posts the *entirety* of each of the Works— some of which run hundreds of pages long.  *See* JA5068 (2d. Supp. SMF ¶32). Public.Resource.Org's copying and distribution of large quantities of material that "does not govern any conduct" makes this factor lean decidedly in Plaintiffs' favor. *ASTM II*, 896 F.3d at 452.

Again, the district court did not do what this Court required.  The district court asserted that "this third inquiry is ill-suited to wholesale resolution," JA9293 (Memorandum Opinion 29), but then copied and pasted nearly identical analyses about the *entirety* of 182 of the 185 Works, asserting that because the incorporating regulation "does not specify that only certain provisions" are IBR'd or "indicate

which specific provisions of the standard are relevant for regulatory compliance…

'a greater amount of the standard's text might be fairly reproduced,'" Brief Appendix § D.1. That reasoning runs headlong into this Court's prior opinion, which recognized that only portions of standards might be relevant even where a regulation did not state that "only certain provisions" were being incorporated. *See* pp. 27-28, *supra*. Whatever is necessary to "fairly describe" the "legal import" of a standard incorporated for a veterans-cemetery regulation, a chapter on day-care occupancies is not it.

Moreover, this Court stated that this factor might not support fair use for standards that were incorporated as reference procedures, *see ASTM*, 896 F.3d at 452, yet the district court held that each of the 48 Works it concluded were incorporated as reference procedures could be copied in full. *Compare* Brief Appendix § B.3, *with* §§ D.1 & F.1. And non-mandatory portions of a standard—like informational appendices and notes that are expressly "not enforceable as requirements" or lists of changes from a prior version of a standard, *see* pp. 22-23, *supra*—"do[] not govern any conduct," *ASTM II*, 896 F.3d at 452, yet the district court ignored those portions in examining this factor.

Looking to the three Works where the district court applied standard-specific reasoning only makes its analysis harder to follow. The court concluded that the incorporation of ASTM D2036 (1998) supported posting only the test procedures

that the regulation referenced, because the incorporating regulation stated that the "full text of the referenced test procedures are incorporated by reference." JA9312 (District Court Appendix ¶1 (quoting 40 C.F.R. § 136.3(a) (2003))). But the same regulatory language incorporates specific test procedures in ASTM D1688 (1995) and ASTM D512 1989 (1999), and the district court concluded that, for those Works, "copying and republishing the standard's background sections and appendix 'are reasonable in relation to the purpose of the copying.'" JA9382, 9412 (District Court Appendix ¶¶85, 122 (quoting *Campbell*, 510 U.S. at 586-87)). If the background and appendix were not necessary to describe the legal import of D2306, then they are not necessary to describe the legal import of D1688 and D512. The unexplained inconsistency in the court's analysis demonstrates the need for further review on remand.

### D.    Factor 4:  Public.Resource.Org's substitutional use undermines the actual and potential markets for Plaintiffs' Works.

The fourth fair use factor—harm to the copyright owner's "potential market[s]" or the "value of the copyrighted work," 17 U.S.C. § 107(4)—requires the Court to consider "'whether unrestricted and widespread conduct of the sort engaged in by the defendant… would result in a substantially adverse impact on the potential market'" for both the original and derivative works. *Campbell*, 510 U.S. at 590 (citation omitted); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985). The district court concluded that this factor weighed in favor of

fair use, but it did so based on the premise that it was *Plaintiffs'* burden to prove market harm. That is not the law. Public.Resource.Org bears the burden on each of the four factors of its affirmative defense, including market harm. Public.Resource.Org did not meet that burden. This Court should either reverse the district court's ruling as to market harm or remand for an analysis under the appropriate framework.

        1.     *Public.Resource.Org bears the burden on the fourth fair use factor.*

Fair use is an affirmative defense. *Campbell*, 510 U.S. at 590; *Harper & Row*, 471 U.S. at 561. A defendant accordingly bears the burden on each of its factors—including the fourth one. The Supreme Court was explicit on this point in *Campbell*, explaining that "[s]ince fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." 510 U.S. at 590.

The district court erred in ruling otherwise. It appeared to reason that *Campbell* was limited to the commercial context and that the Supreme Court's earlier decision in *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), dictates that a plaintiff bears the burden on the fourth factor where a use is noncommercial. *See* JA9294 (Memorandum Opinion 30). But that is not what *Campbell* says: it makes an across-the-board statement about the factor-four burden. *See Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1280 n.36 (11th Cir.

2014) (rejecting argument that "the *Campbell* court was dealing with commercial use and did not disapprove *Sony*'s shifting of the burden in noncommercial cases" and noting *Campbell* "Court's unqualified statement").  Moreover, "[t]he portion of *Sony*" on which the district court relied "discusses a presumption that commercial uses are not fair use and noncommercial uses are fair use," but *Campbell* "clarified that such presumptions have no place in the fair use analysis."  *Id.*; *see* JA9294 (Memorandum Opinion 30 (quoting *Sony*, 464 U.S. at 451)); *see also Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 324 n.4 (5th Cir. 2022) ("Although some courts once interpreted *Sony* as creating a presumption of *de minimis* harm for nonprofit uses, the Supreme Court has since clarified that no such presumption exists." (citations omitted)).  Other circuits have thus concluded following *Campbell* that the burden on the fourth factor rests with the defendant, even in cases of noncommercial use.  *See Bell*, 27 F.4th at 324 n.4; *Cambridge Univ. Press*, 769 F.3d at 1280 & n.36; *see also* 4 *Patry on Copyright* § 10:148.[12]

---

[12] The district court rested its contrary conclusion on two pre-*Campbell* opinions (one a concurrence) and a Ninth Circuit decision from 2014.  *See* JA9294 (Memorandum Opinion 30 (citing, *inter alia*, *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060 (9th Cir. 2014))).  But the Ninth Circuit has subsequently clarified that it has "never adopted th[e] view" that it might "sometimes [be] 'reasonable to place'" even the burden of production on a plaintiff.  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 n.6 (9th Cir. 2020) (quoting *Cambridge Univ. Press*, 769 F.3d at 1279).  *Dr. Seuss* correctly recognized *Campbell*'s rejection of presumptions and that it "squarely forecloses" an argument that a copyright plaintiff must "prove potential market harm."  *Id.* at 459.  And any discussion in *Fox*, on which the district court relied, about the market-harm burden was, at most, dicta, as

Public.Resource.Org bears the burden on the fourth factor and the district court's contrary ruling should be reversed.

        2.     *Public.Resource.Org did not meet its burden.*

With the burden properly allocated, the fourth factor heavily favors Plaintiffs.[13]

a. Both common sense and the summary judgment evidence demonstrate that widespread use similar to Public.Resource.Org's would be detrimental to Plaintiffs' markets. *See Cambridge Univ. Press*, 769 F.3d at 1276 ("The central question… is not whether Defendants' use of Plaintiffs' Works caused Plaintiffs to lose some potential revenue. Rather, it is whether Defendants' use—taking into account the damage that might occur if 'everybody did it'—would cause *substantial* economic harm…."). As the district court explained in its initial decision, users can choose between purchasing a standard from Plaintiffs or downloading "an identical standard for no cost [from Public.Resource.Org]. *The only logical conclusion is that this choice negatively impacts the potential market for Plaintiffs' standards*." *ASTM I*, 2017 WL 473822 at *18 (emphasis added). The only expert evidence as to market harm confirmed that logical inference: Plaintiffs' expert concluded that "Plaintiffs

---

*Fox* held that the alleged market harm did not even result from activity that "implicate[d] any copyright interest." *Fox*, 747 F.3d at 1069.

    [13] Even if Plaintiffs did bear the burden, Plaintiffs raised a genuine issue of material fact with respect to this factor, precluding summary judgment.

are likely to stand to lose a majority of their revenue and gross profits from the loss of copyright protection here." JA766 (Jarosz Report ¶138); *see also* JA762-771 (Jarosz Report ¶¶130-49).

Public.Resource.Org never offered any evidence in rebuttal, either initially or on remand—even though the absence of "favorable evidence about relevant markets" makes it "difficult[]" for a defendant to show fair use. *Campbell*, 510 U.S. at 590. At a minimum, it was error to conclude that uses like Public.Resource.Org's were, as a matter of law, *not* likely to cause market harm. *See id.* at 594 ("[I]t is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense… to summary judgment.").

b. In its previous opinion, this Court directed the district court to consider three questions relating to this factor. Plaintiffs' unrebutted evidence as to each question demonstrates that Public.Resource.Org cannot meet its burden of demonstrating this factor weighs in its favor as to *any* Work.

First, this Court urged consideration of whether Public.Resource.Org's activities could lead to "additional [market] harm" where Plaintiffs themselves offer free access online "presumably… without entirely cannibalizing sales of their standards." *ASTM II*, 896 F.3d at 453. Plaintiffs' provision of free online access *advances* their market for disseminating their standards. Plaintiffs offer their

43

standards in a read-only format: this carefully controlled environment, designed to be educational and informational, does not substitute or compete in the commercial marketplace for the sale of less restricted versions of Plaintiffs' standards. JA5107 (2d. Supp. SMF ¶¶85, 88). As Plaintiffs' expert explained, "parties that are interested in or affected by [Plaintiffs' standards], but who do not necessarily need a digital or hardcopy of the standards" are well served by Plaintiffs' online versions. JA744 (Jarosz Rep. ¶86). By contrast, Plaintiffs' websites would not be a substitute for purchasing a downloadable and searchable copy from Plaintiffs for industry professionals and tradespeople who purchase the standards to use in their work. JA745 (Jarosz Rep. ¶¶88-89). Indeed, Plaintiffs view the provision of free access as furthering their overall mission by encouraging more users to visit Plaintiffs' websites, and to do so more frequently, thus creating opportunities for website visitors to learn about Plaintiffs' other mission-driven activities and potentially to purchase the materials so they can have a copy to download. JA744-745 (Jarosz Rep. ¶¶86-87).

Public.Resource.Org's postings, by contrast, substitute for and cannibalize Plaintiffs' sales, licensing efforts, and free access distribution. Public.Resource.Org intentionally makes its versions of Plaintiffs' standards—which are widely viewed, *see, e.g.*, JA5110-5115 (2d. Supp. SMF ¶¶98, 102)—available on an anonymous and unrestricted basis. JA5108, 5115-5116 (2d. Supp. SMF ¶¶92, 104). This means its

users include those individuals and entities who would otherwise purchase or license copies of Plaintiffs' standards.  JA5108-5109 (2d. Supp. SMF ¶93).  Its users also include *further* infringers who, by virtue of the anonymity Public.Resource.Org and the Internet Archive offer, can easily profit unlawfully from selling Public.Resource.Org's copies.  *See* JA5116 (2d. Supp. SMF ¶¶105-06);[14] JA299 (SMF ¶240); *see also BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005) (noting that because "[m]usic downloaded for free from the Internet is a close substitute for purchased music[,] many people are bound to keep the downloaded files without buying originals").  That Plaintiffs' free access does not entirely cannibalize their sales does not mean that Public.Resource.Org's free substitute is not a serious threat to Plaintiffs' ability to generate revenue from their standards.

Second, the Court asked whether there would continue to be a market for Plaintiffs' standards if, when "only a few select provisions of a much longer standard" are IBR'd, Public.Resource.Org limited its copying to only IBR'd provisions.  *ASTM II*, 896 F.3d at 453.  Public.Resource.Org has no supporting

---

[14] The district court held that this argument was "tenuous" because Plaintiffs had not shown that third parties were infringing as "a result of Defendant's actions." JA296 (Memorandum Opinion 32 (citing 2d. Supp. SMF ¶¶105-06)).  Even if that did not misconstrue the appropriate burden, it is wrong:  Plaintiffs presented evidence that third parties were charging for access to ASTM standards that included the Public.Resource.Org cover sheet—*i.e.*, for copies that came from Public.Resource.Org.  JA5116 (2d. Supp. SMF ¶¶105-06).

evidence to answer this question because, as demonstrated, Public.Resource.Org does *not* so limit its copying and has maintained that position since the remand, despite this Court's direction that Public.Resource.Org should revisit its wholesale copying. Accordingly, Public.Resource.Org failed to meet its burden on this question.

Third, this Court directed the district court to consider whether Public.Resource.Org's conduct would harm any markets for derivative works, *e.g.*, if Public.Resource.Org's posting of out-of-date standards would help or harm the market for the current versions of the same standards. *See ASTM II*, 896 F.3d at 453. The evidence is undisputed that Public.Resource.Org's use harms the market for the current and most up-to-date works which Plaintiffs both distribute directly and through authorized licensees. ASTM frequently reapproves the identical standard in an updated version, making the old version a perfect substitute for the up-to-date version. JA5109 (2d. Supp. SMF ¶96). Even when standards are revised in subsequent versions, the latest frequently retains substantial portions of the prior version. JA5069-5070 (2d. Supp. SMF ¶35). As a result, a copy of the prior version may be a perfect or near-perfect substitute for the current version, such that the unrestricted download and distribution of Plaintiffs' standards will interfere with the authorized market for these derivative works. JA5109 (2d. Supp. SMF ¶96).

The evidence also shows that Public.Resource.Org does not limit its copying to out-of-date standards. Many jurisdictions incorporate—and Public.Resource.Org promptly posts—the most recently published versions of Plaintiffs' standards. *See, e.g.*, 30 Tex. Admin. Code § 217.326 (incorporating most recent version of NFPA 1 and NFPA 70); Alaska Stat. Ann. § 44.42.067(b)-(c) (same for ASHRAE 90.1). For example, after the parties filed their initial summary judgment motions, NFPA published the NFPA 70 (2017). Public.Resource.Org has now copied and distributed that version. JA5117 (2d. Supp. SMF ¶110). The undisputed evidence on this question—like the prior two—reveals that Public.Resource.Org cannot meet its burden on the fourth fair use factor.

*    *    *

This Court viewed fair use as a "narrow[] approach" that would "limit[] the economic consequences that might result from [Plaintiffs] losing copyright" and "avoid[] creating… *sui generis* caveats to copyright law for incorporated standards." *ASTM II*, 896 F.3d at 447. The district court's opinion, however, is anything but narrow. Under the district court's approach, any time a regulation IBR's a standard in any way without expressly limiting its IBR to a portion of the standard, it is fair use for Public.Resource.Org to post the entirety of that standard. In other words, the district court adopted precisely the "bright-line rule" this Court sought to avoid through fair use, threatening disastrous "economic consequences" for Plaintiffs and

their important public-interest work[15] and creating a "*sui generis* caveat[]" to copyright law for incorporated standards." *Id.* at 446-47. This Court should not allow that decision—and its far-reaching consequences—to stand.

## II. The District Court Abused Its Discretion In Not Enjoining Public.Resource.Org From Future Infringement Of Plaintiffs' Copyrights.

A court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). When assessing entitlement to a permanent injunction, a court must look to a plaintiff's evidence "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Here, each of these four factors weighs in favor of enjoining future copyright

---

[15] The district court's decision loses sight of this Court's concern about the "economic consequences" that might follow if competitors were permitted to "sell duplicates at a lower cost." *ASTM II*, 896 F.3d at 447. That concern is anything but hypothetical: Using Public.Resource.Org's "IBR'd standards are the law" playbook, UpCodes, Inc., a venture-capital-backed startup, copies and posts dozens of privately developed standards (including NFPA's and ASHRAE's) and attempts to sell industry professionals a paid "premium" service that allows them to access the standards using various features—all without even an attempt at licensing or authorization from the copyright owners. *See UpCodes, Inc.*, 2021 WL 4913276, at *1-3. And UpCodes, just like Public.Resource.Org, claims that this activity constitutes fair use. *See id.* at *2.

infringement. The district court abused its discretion in refusing to enjoin Public.Resource.Org from engaging in future copyright infringement. That ruling should be reversed.

### A. The district court correctly found that remedies available at law are inadequate and the balance of hardships favors an injunction.

As the district court correctly concluded, the second and third *eBay* considerations favor an injunction. JA9310-9311 (Memorandum Opinion 46-47). First, money damages are inadequate both because the types of harms Plaintiffs have suffered (*e.g.*, harm to their goodwill and threats to their business models) and the amounts of that harm (given the likelihood of down-the-line infringement) are difficult to quantify, and because Public.Resource.Org's limited assets are plainly insufficient to pay the potential damages. JA299-300, 304 (SMF ¶¶241-44, 272-73); JA5108, 5117 (2d. Supp. SMF ¶¶92, 111); *see Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274-75 (D.D.C. 2015) ("losses to… customer base and reputation defy attempts at valuation[] and are unlikely to be remedied through a simple damages calculation" (citations omitted)). Second, as Public.Resource.Org has admitted, it will face no financial harm if forced to stop posting Plaintiffs' copyrighted standards. JA305 (SMF ¶277). The balance of hardships thus "weighs strongly in favor of an injunction." JA9311 (Memorandum Opinion 47).

**B.    The district court correctly found at least some irreparable harm and a public interest that favors an injunction.**

The district court also found that Plaintiffs had shown irreparable harm—though "meager"—and thus met the first factor.    JA9309-9311 (Memorandum Opinion 45-47).    As explained in the next section, the district court plainly erred by not recognizing that (1) the irreparable harm took several forms and (2) far exceeded the "meager" label it was given.    That error should be corrected on appeal.    Nonetheless, the district court found at least a threshold amount of irreparable harm.

On the fourth factor, the district court correctly found that an injunction serves the "policy interests that underlie the Copyright Act itself" by preserving the necessary financial incentives to "ensure continued development of technical standards."    JA9311 (Memorandum Opinion 47).    It went on, however, to assert that the public interest would be disserved if the standards at issue were later IBR'd.    JA9311 (Memorandum Opinion 47).    As explained below, *see* pp. 55-56, *infra*, giving that speculative possibility significant weight was error.

In short, the district court found all four factors, at least in part, supported Plaintiffs.    Once the errors as to the first and fourth factors are corrected, *see* pp. 51-56, *infra*, entry of a permanent injunction is the only outcome that the record can reasonably support.

50

C.    **The district court erred in not recognizing that Plaintiffs had proven several types of substantial irreparable harm.**

       1.    *Public.Resource.Org's copyright infringement threatens Plaintiffs' business models.*

Public.Resource.Org's activities threaten severe economic harm to Plaintiffs. *See* pp. 42-47, *supra*.  That economic harm, in turn, poses a threat of irreparable injury through shifts it may force to Plaintiffs' business models.  *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (finding irreparable harm when defendant's services undermined the value of plaintiffs' business model); *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) (finding irreparable harm where defendant's conduct would force a "significant change to its business model and… would negatively affect its revenue"); *see also Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude.").

Specifically, Plaintiffs' expert's unrebutted opinion was that Public.Resource.Org's actions pose two significant threats to Plaintiffs' existing business models.  First, Plaintiffs rely primarily on users of their standards to fund standards development, rather than charging upfront fees before developing a standard.  JA302 (SMF ¶257).  That "back-loaded" model presents extremely low

barriers to participating in the standards-creation process. JA302 (SMF ¶258). Public.Resource.Org's conduct threatens to force Plaintiffs to shift to a more "front-loaded" system that charges for participation in the standards-creation process, which would preclude the participation of certain stakeholders and increase the risk of industry capture. JA302 (SMF ¶¶259-60). Second, Plaintiffs currently decide whether to develop standards by considering factors like public safety and industry need—not whether the standard will generate significant revenues. JA302 (SMF ¶261). If Public.Resource.Org's conduct continues, Plaintiffs may be forced to focus on developing only the most profitable standards, JA302 (SMF ¶¶259, 262)—undermining their critical public-interest work.

Additionally, if Public.Resource.Org's conduct goes unchecked, it will act as a signal to the market that the creation of unauthorized versions of standards is acceptable. That will accelerate the proliferation of new versions of Plaintiffs' standards on other sites, thereby compounding Plaintiffs' harm over time. JA301 (SMF ¶254); *see also* JA5116 (2d. Supp. SMF ¶106), JA300 (SMF ¶249) (copies of Public.Resource.Org-versions of ASTM standards have been posted to third-party websites). In turn, the pressure for Plaintiffs to change their business models will only increase.

52

2.     *Plaintiffs face irreparable harm to the exclusivity of their rights.*

a.  Interference with Plaintiffs' right to prevent repeated infringement is an ongoing irreparable harm.  The loss of exclusive control over Plaintiffs' works is magnified by the realities of the online environment where unauthorized copies are repeatedly downloaded and shared.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007) ("every downloader… of the copyrighted works is in turn capable of also transmitting perfect copies of the works…. threatening virtually unstoppable infringement of the copyright." (citations omitted)).  Indeed, since the inception of the lawsuit, third parties have posted and charged fees for copies of Plaintiffs' standards obtained from Public.Resource.Org. JA5116 (2d. Supp. SMF ¶¶105-06); JA300 (SMF ¶249).  And there is a serious risk that if Public.Resource.Org's conduct goes unchecked, it will encourage other third parties to create unauthorized versions of Plaintiffs' works.  JA301 (SMF ¶254).

b.  The district court wrote off this harm because of Public.Resource.Org's "voluntary removal" of Plaintiffs' standards, many years into the litigation with Plaintiffs. JA9309 (Memorandum Opinion 45).  But the "sudden[] reform" where a defendant "simply took the action that best suited him at the time" and stopped only when "he was caught red-handed" does not reduce the likelihood that he will infringe again.  *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (citation omitted); *see also William R. Warner & Co. v Eli Lilly & Co.*, 265 U.S. 526, 532

(1924) (plaintiff "entitled to relief, is entitled to effective relief; and any doubt… must be resolved… against [defendant], which has shown by its conduct that it is not to be trusted").  Although Public.Resource.Org "voluntarily" removed Plaintiffs' standards at the district court's prompting, *see* JA64 (November 4, 2015 Hearing Tr. 20), Public.Resource.Org has continued to post additional standards owned by Plaintiffs since the lawsuit commenced, and Public.Resource.Org has indicated that it has no intention of stopping its conduct absent intervention from a court.  JA298 (SMF ¶¶235-36); JA5117 (2d. Supp. SMF ¶110).  Moreover, the record is replete with examples of Public.Resource.Org's reckless and inexact posting of its standards.  *See* pp. 10-11, 33, *supra*.  The district court erred in concluding that Plaintiffs would be adequately protected absent an injunction.

### 3. *Public.Resource.Org's conduct poses substantial reputational harm.*

Finally, Public.Resource.Org's conduct poses a significant risk of reputational injury because Public.Resource.Org's versions of Plaintiffs' standards contain errors that significantly altered the utility of standards.  *See, e.g.*, JA295 (SMF ¶219) (describing error in NFPA standard mistaking "M" (an abbreviation for meters) for "IN" (an abbreviation for inches)); JA5064 (2d. Supp. SMF ¶¶14-18) (errors have not been fixed by Public.Resource.Org); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204-05 (3d Cir. 2014) ("'Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.'"

(citation omitted)).   The district court itself acknowledged that this form of irreparable harm existed here and found Public.Resource.Org's claims that it would correct errors to be "hardly reassuring."  JA9310 (Memorandum Opinion 46).  While the court connected this finding specifically to Public.Resource.Org's use of Plaintiffs' logos, it applies equally to all standards where Public.Resource.Org infringed Plaintiffs' copyrights.   Because Public.Resource.Org identifies these standards as emanating from Plaintiffs, the risk that a reader will attribute erroneous material to Plaintiffs exists regardless of whether Public.Resource.Org also uses Plaintiffs' trademarked logos.

### D.    The district court abused its discretion in allowing the speculative possibility of future IBR to thwart entry of a permanent injunction.

The district court abused its discretion by finding that the public would be "greatly disserved" by an injunction if the 32 standards were later IBR'd.  JA9311 (Memorandum Opinion 47).  There is no evidence suggesting that any of these works are likely to be IBR'd in the future.  Allowing this future speculative possibility to thwart entry of a permanent injunction was error.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (directing the district court to "weigh the public interest in light of the *likely* consequences of the injunction… [which] must not be too remote, insubstantial, or speculative and must be supported by evidence").

Additionally, the conclusory assertion fails to address that Plaintiffs themselves provide free public access to all of their standards that are IBR'd.

55

JA5107 (2d. Supp. SMF ¶85). Therefore, even if any of those 32 standards were later IBR'd, the public would have free public access to those standards. After nearly a decade of litigation, the record contains not even a single instance of lack of access to the Plaintiffs' standards that would support finding a "great[] disserv[ice]." Rather, the public is greatly disserved by relying on Public.Resource.Org's error-ridden copies of Plaintiffs' standards. *See* pp. 54-55, *supra*.

*    *    *

In sum, each of the permanent injunction factors weighs in favor of enjoining Public.Resource.Org's conduct. The district court abused its discretion in denying a permanent injunction, and this Court should remand for entry of a permanent injunction for any of Plaintiffs' standards that have not been IBR'd. *See Walt Disney*, 897 F.2d at 568 (finding permanent injunction against future infringement of works owned by plaintiff but not in suit appropriate "[w]here… there has been a history of continuing infringement and a significant threat of future infringement remains").

## CONCLUSION

The Court should (1) vacate the district court's ruling that Public.Resource.Org had shown fair use as to the 185 Works and remand for analysis under the appropriate framework, and (2) reverse the district court's denial of a permanent injunction for the 32 standards where Public.Resource.Org's fair use defense failed.

Dated September 23, 2022

/s/ J. Kevin Fee
J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

Counsel for American Society for
Testing and Materials d/b/a/ ASTM
International

/s/ Jeffrey S. Bucholtz
Jeffrey S. Bucholtz
David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 737-0500
jbucholtz@kslaw.com

Kenneth L. Steinthal
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
ksteinthal@kslaw.com

Counsel for American Society of
Heating, Refrigerating, and Air
Conditioning Engineers, Inc.

Respectfully submitted,

/s/ Donald B. Verrilli Jr.
Donald B. Verrilli, Jr.
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
donald.verrilli@mto.com

Kelly M. Klaus
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
kelly.klaus@mto.com

Rose Leda Ehler
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
rose.ehler@mto.com

Counsel for National Fire Protection
Association, Inc.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are 12,992 words in the brief excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14 point font.

Dated:  January 27, 2023                    */s/  J. Kevin Fee*
                                             *J. Kevin Fee*

## CERTIFICATE OF SERVICE

I certify that on January 27, 2023, a true and correct copy of this Appellants'
Brief was filed via the Court's electronic filing system, which will forward a copy
to all counsel of record.  I certify that all participants in this case are registered
CM/ECF users.

Dated:  January 27, 2023                    */s/  J. Kevin Fee*
                                            *J. Kevin Fee*