# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 20, 2023      Decided September 12, 2023

No. 22-7063

AMERICAN SOCIETY FOR TESTING AND MATERIALS, ET AL.,
APPELLANTS

v.

PUBLIC.RESOURCE.ORG, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01215)

*Kelly M. Klaus* argued the cause for appellants. With him on the briefs were *J. Kevin Fee*, *Jane W. Wise*, *Stanley J. Panikowski*, *Donald B. Verrilli, Jr., Rachel G. Miller-Ziegler*, *Jeffrey S. Bucholtz*, *David P. Mattern*, *Kenneth L. Steinthal*, and *Rose Leda Ehler*. *Alexandra C. Lim* entered an appearance.

*Gary D. Sesser* was on the brief for *amici curiae* American National Standards Institute and Six Standards Organizations in support of appellants.

*Jack R. Bierig* was on the brief for *amici curiae* American Medical Association, et al. in support of appellants.

2

*Nancy E. Wolff* and *Scott J. Sholder* were on the brief for *amicus curiae* Copyright Alliance in support of appellants. *Brian A. Coleman* entered an appearance.

*Corynne McSherry* argued the cause for appellee. With her on the brief were *Andrew P. Bridges*, *Matthew B. Becker*, *Mitchell L. Stoltz*, and *David E. Halperin*.

*Charles Duan* was on the brief for *amici curiae* Former Government Publishing Officials Raymond A. Mosley and Robert C. Tapella in support of appellee.

*Blake E. Reid* was on the brief for *amicus curiae* Prime Access Consulting, Inc., in support of appellee.

*Harold Feld* was on the brief for *amici curiae* Library Futures Institute, et al., in support of appellee.

*Erik Stallman* and *Jennifer M. Urban* were on the brief for *amici curiae* Intellectual Property Law Professors in support of appellee.

*Gabriel Rottman*, *Bruce D. Brown*, and *Katie Townsend* were on the brief for *amici curiae* Reporters Committee for Freedom of the Press and 11 Media Organizations in support of appellee.

*Joseph C. Gratz* was on the brief for *amicus curiae* County of Sonoma in support of appellee.

*Jef Pearlman* was on the brief for *amicus curiae* Congresswoman Zoe Lofgren in support of appellee.

3

*Jacob M. Karr* was on the brief for *amicus curiae* National Association for the Advancement of Colored People in support of appellee.

*Nina Srejovic*, *Rebecca Chambers*, and *Teague Paterson* were on the brief for *amicus curiae* American Federation of State, County and Municipal Employees in support of appellee.

Before: HENDERSON, PILLARD, and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  Many private organizations develop and copyright suggested technical standards for an industry, product, or problem.  Federal and state governments often incorporate such standards into law.  This case presents the question whether third parties may make the incorporated standards available for free online.  We hold that the non-commercial dissemination of such standards, as incorporated by reference into law, constitutes fair use and thus cannot support liability for copyright infringement.

I

Three standard-developing organizations raised copyright infringement claims against a defendant for posting online their copyrighted standards, as incorporated into law.  The district court granted summary judgment to the organizations, but we reversed and remanded for further factual development.  *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018) (*ASTM II*).  On remand, the district court held that the non-commercial posting of standards incorporated by reference into law is fair use.

4

*ASTM II* gave detailed background information on standard-developing organizations, incorporation by reference, and the genesis of this dispute. 896 F.3d at 440–45. We give only a brief overview here.

A

Various private organizations promulgate standards establishing best practices for their respective industries or products. These organizations copyright their standards and generate revenue by selling copies. For example, the National Fire Protection Association (NFPA), one plaintiff in this suit, develops standards addressing the prevention of fire, electrical, and related hazards. One such standard, NFPA 10, addresses the design, inspection, maintenance, and testing of portable fire extinguishers. The NFPA sells hard copies of its standards as well as a subscription service that allows digital access.

Federal agencies may incorporate privately developed standards into law by referencing them in agency rulemaking. Incorporation by reference (IBR) in a published rule allows agencies to satisfy the requirement to publish rules in the Federal Register without reproducing the standards themselves. 5 U.S.C. § 552(a)(1). The Code of Federal Regulations contains more than 27,000 incorporations of privately developed standards by reference. *See Standards Incorporated by Reference Database*, Nat'l Inst. of Safety & Tech., https://sibr.nist.gov [perma.cc/W4BN-HLZG] (last visited Aug. 30, 2023). For example, 29 C.F.R. § 1915.507(b)(1) requires shipyard operators to select, maintain, and test portable fire extinguishers in accordance with NFPA 10, which is incorporated by reference in 29 C.F.R. § 1915.5(i)(6). States and municipalities also have incorporated thousands of standards by reference into their regulations.

5

Congress has authorized and encouraged the use of IBR because it allows agencies to avoid duplication of effort and helps conform legal standards to industry best practices. *See*, *e.g.*, National Technology Transfer and Advancement Act of 1995, Pub. L. No. 104-113, § 12(d)(1), 110 Stat. 775, 783. The Office of the Federal Register has promulgated regulations and guidance governing the IBR process. *See* 1 C.F.R. §§ 51.1–11. As its IBR Handbook explains, "the legal effect of IBR is that the referenced material is treated as if it were published in the Federal Register and the CFR. When IBRed, this material has the force and effect of law." J.A. 9511 (cleaned up).

B

The plaintiffs in this case are three standard-developing organizations: the American Society for Testing and Materials (ASTM), the American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE), and the NFPA. The defendant, Public.Resource.Org, is a non-profit group that disseminates legal and other materials. It has posted on its websites copies of hundreds of incorporated standards—including standards produced and copyrighted by the plaintiffs. As a result, any internet user may view, download, or print these standards for free.

In 2013, the plaintiffs sued Public Resource for copyright infringement. The plaintiffs moved for summary judgment on their claims as to nine of the disputed standards. The district court granted the motion and enjoined Public Resource from posting these standards. The court rejected a defense that posting incorporated standards constitutes fair use. *ASTM v. Public.Resource.Org, Inc.*, No. 13-cv-1215, 2017 WL 473822 (D.D.C. Feb. 2, 2017) (*ASTM I*).

This Court reversed and remanded for further consideration of the fair-use defense. We faulted the parties

6

for failing to distinguish among the disputed standards in conducting the fair-use analysis, and we instructed the parties on remand to "develop a fuller record regarding the nature of each of the standards at issue, the way in which they are incorporated, and the manner and extent to which they were copied." *ASTM II*, 896 F.3d at 449. We provided several guideposts for the fair-use analysis, three of which tended to favor the defense. *See id.* at 448–54. But given the differences among the disputed standards and the thinness of the record before us, we thought it prudent "to remand the case for the district court to further develop the factual record and weigh the factors as applied to [Public Resource's] use of each standard in the first instance." *Id.* at 448–49.

On remand, the parties developed more information about 217 incorporated standards. Each of them has been superseded as a recommended industry standard, yet most remain incorporated into law. On cross-motions for summary judgment, the district court held that the posting of 184 standards was fair use, the posting of 32 standards was not fair use, and the posting of one standard was fair use in part. *ASTM v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213 (D.D.C. 2022) (*ASTM III*). In a nutshell, the court found fair use as to the posting of standards incorporated into law and infringement as to the standards not so incorporated. *Id.* at 232–41. The court's opinion included a 187-page, single-spaced appendix separately analyzing each of the disputed standards. Despite finding infringement as to the unincorporated standards, the court denied injunctive relief based on its finding that Public Resource intends to post only incorporated standards and thus would voluntarily take down unincorporated ones in response to an infringement determination. *Id.* at 245–47.

The plaintiffs appealed, but Public Resource did not. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We review the

7

grant of summary judgment *de novo*, *ASTM II*, 896 F.3d at 445, and the denial of injunctive relief for abuse of discretion, *Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018).

II

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The owner of a valid copyright has the exclusive right to reproduce, distribute, or display the copyrighted work. *Id.* § 106. To prove infringement, a plaintiff must show (1) its ownership of a valid copyright and (2) the defendant's copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Fair use is an affirmative defense to a claim of copyright infringement. Originally a creature of common law, it is now codified at 17 U.S.C. § 107, which provides:

> [T]he fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

8

>  (4) the effect of the use upon the potential market for or value of the copyrighted work.

Fair-use analysis is highly fact-intensive, and the four enumerated factors are not exclusive. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).

The district court separately analyzed the four factors for each of the 217 standards at issue, but its bottom line was straightforward: Public Resource's copying of material incorporated by reference into law, for free dissemination to the public, was fair use. We agree.

A

1

The first three factors strongly support holding that Public Resource's posting of incorporated standards was fair use, as our opinion in *ASTM II* suggested.

The first factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). This factor "focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1273 (2023). It supports the defense here for two reasons.

First, Public Resource's use is for nonprofit, educational purposes. The inquiry focuses on the defendant's use of the material. *Harper & Row*, 471 U.S. at 562. In *ASTM II*, we held that Public Resource—which disseminates the disputed materials for free—is engaged in a nonprofit as opposed to

commercial use. 896 F.3d at 449. Since then, the Supreme Court confirmed the importance of that conclusion: "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021).

Second, Public Resource's use is transformative because it serves a different purpose than the plaintiffs' works. In *Warhol*, the Supreme Court stressed that "the first factor … asks whether *and to what extent* the use at issue has a purpose or character different from the original." 143 S. Ct. at 1275 (cleaned up). The plaintiffs seek to advance science and industry by producing standards reflecting industry or engineering best practices. For example, ASHRAE says its mission is to "advance the arts and sciences of heating, ventilation, air conditioning and refrigeration to serve humanity and promote a sustainable world." J.A. 7169. Public Resource's mission in republishing the standards is very different—to provide the public with a free and comprehensive repository of the law. This distinction is fundamental: Public Resource publishes only what the law is, not what industry groups may regard as current best practices. And although the standards at issue have been superseded or withdrawn as private standards, they remain important to someone trying to figure out what the law is (or, in the case of standards prospectively repealed or amended as law, what law governs disputes about past conduct).

The distinction between standards as best practices and standards as law matters even though Public Resource does not alter or add to the standards. As we explained in *ASTM II*, "a secondary work can be transformative in function or purpose without altering or actually adding to the original work." 896 F.3d at 450 (cleaned up). Consider news reporters, who must "faithfully reproduce an original work without alteration." *Id.*

10

(cleaned up). As one court has explained, a reporter's message ("this is what they said") is very different from the original message ("this is what you should believe"). *Swatch Grp. Mgmt. Servs. v. Bloomberg LP*, 756 F.3d 73, 85 (2d Cir. 2014). The same principle applies here: Public Resource's message ("this is the law") is very different from the plaintiffs' message ("these are current best practices for the engineering of buildings and products").

The second fair-use factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). It "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). Application of this factor often depends on whether the work is factual or fictional, for "the law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563.

This factor strongly supports a finding of fair use. As we explained in *ASTM II*, standards "fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use." 896 F.3d at 451. Moreover, legal text "falls plainly outside the realm of copyright protection." *Id.* And because incorporated standards have legal force, they too fall, "at best, at the outer edge of copyright's protective purposes." *Id.* (cleaned up). Finally, "[w]here the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law, this factor weighs heavily in favor of fair use." *Id.* at 452. Following this guidance, the district court correctly concluded that if a standard "is incorporated into law without limitation," the result is "virtually indistinguishable from a situation in which the standard had been expressly copied into law," so the

11

second factor thus "weighs heavily in favor of fair use." *ASTM III*, 597 F. Supp. 3d at 249.

The third fair-use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). It turns on whether the extent of the copying is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. In *ASTM II*, we stressed that Public Resource's copying must be considered "in light of its purpose of informing the public about the specific incorporation at issue." 896 F.3d at 452.

This factor strongly supports fair use because the standards at issue have been incorporated and thus have the force of law. Public Resource posts standards that government agencies have incorporated into law—no more and no less. If an agency has given legal effect to an entire standard, then its entire reproduction is reasonable in relation to the purpose of the copying, which is to provide the public with a free and comprehensive repository of the law. Given the "nature" of the works at issue, "the fact that the entire work is reproduced does not have its ordinary effect of militating against a finding of fair use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449–50 (1984) (cleaned up).

2

The plaintiffs make two principal objections to this analysis of the first three fair-use factors.

First, they argue that the district court ignored important differences among three different categories of incorporated text. The first category includes portions of standards essential to comprehending legal duties—for example, NFPA 10's provision for portable fire extinguishers to be inspected monthly, given the federal regulation requiring shipyard

operators to follow that standard, 29 C.F.R. § 1915.507(b)(1). The second category includes standards prescribing how compliance may be assessed, also known as reference procedures. For example, 40 C.F.R. § 86.113-04(a)(1) states that the maximum permissible lead content in certain gasoline is 0.05 grams of lead per gallon as measured by the test procedure in ASTM D3237, which is incorporated by reference. The third category includes material that does not directly prescribe necessary or sufficient conditions for complying with a legal duty—introductory or background material, for example, along with material addressing contexts other than the focus of the incorporating regulation. For example, a regulation governing the operation of veterans' cemeteries incorporates NFPA 101 by reference and requires covered cemeteries to meet the standard's applicable architectural and structural requirements. 38 C.F.R. § 39.63(a)(1). Yet NFPA 101 also provides standards for houses, schools, and many other kinds of structures.

The plaintiffs argue that under *ASTM II*, Public Resource may copy the first category of material but not the other two. In *ASTM II*, we did stress that material in the first category has the strongest claim to fair use. *See* 896 F.3d at 450. But we did not hold that material in the other categories has no such claim. Rather, we explained that, if an entity is "distributing copies of the law for purposes of facilitating public access," the most important question is what material counts as "law." *Id.* And all material that has been validly incorporated by reference carries the force of law and is treated as having been published in the Federal Register and Code of Federal Regulations, regardless of where it falls among the three categories. *See* 5 U.S.C. § 552(a)(1); J.A. 9511.

Moreover, because law is interpreted contextually, even explanatory and background material will aid in understanding

13

and interpreting legal duties—especially when the promulgating agency references it. Courts routinely consult congressional findings, statements of purpose, and other background material enacted by Congress to decipher the meaning of ambiguous statutory provisions. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 218 (2012). The introductory and background material of an incorporated standard—along with rules addressing how the standard operates in other contexts besides the one directly at issue—may prove similarly important for resolving ambiguities in the portions of standards that set forth the directly binding legal obligations.

The plaintiffs object that if Public Resource may post all portions of all incorporated standards, then parts of our discussion in *ASTM II* would be superfluous. Why, they ask, did we bother to remand for a standard-by-standard analysis and say that material "essential to comprehending one's legal duties" has a stronger claim to fair use than background material that merely "help[s] inform one's understanding" of regulatory requirements? *See* 896 F.3d at 450. One answer is that although the distinction among the three categories turns out not to matter much here, it might be dispositive in other contexts—for example, in assessing the fair-use defense of a for-profit firm that charges customers for copies of incorporated standards. Another answer is that although *ASTM II* stated that material in the first category has the strongest claim to fair use, we hardly suggested that material in the other categories would not also have strong claims. To the contrary, our overall analysis made clear that the first three factors tilt strongly in favor of Public Resource. *See*, *e.g.*, *id.* at 449 ("at least as a general matter, [Public Resource's] attempt to freely distribute standards incorporated by reference into law qualified as a use that furthered the purposes of the fair use defense"); *id.* at 451 ("All of the works at issue here fall at the

14

factual end of the fact-fiction spectrum, which counsels in favor of finding fair use."); *id.* at 459 (Katsas, J., concurring) ("The Court's fair-use analysis … puts a heavy thumb on the scale in favor of an unrestrained ability to say what the law is.").

Second, the plaintiffs argue that, because they make standards available for free in online reading rooms, Public Resource's use cannot be transformative. Yet all but one of these rooms opened after Public Resource began posting incorporated standards. Moreover, the plaintiffs' reading rooms do not provide equivalent or even convenient access to the incorporated standards. Among other things, text is not searchable, cannot be printed or downloaded, and cannot be magnified without becoming blurry. Often, a reader can view only a portion of each page at a time and, upon zooming in, must scroll from right to left to read a single line of text. Public Resource's postings suffer from none of these shortcomings.[1]

---

[1] The plaintiffs also challenge three alleged inconsistencies in the district court's analysis of particular standards. They first complain that the court found ASTM D1688 and ASTM D512 had been incorporated in full, but ASTM D2036 had been incorporated only in part, even though the same regulation incorporates all three standards. But the version of the regulation analyzed by the district court only references two of four test procedures from ASTM D2036, whereas the relevant version references every procedure from ASTM D1688 and ASTM D512. *See* 40 C.F.R. § 136.3, Table IB (2003); *id.* (2010). The plaintiffs also argue that the district court inconsistently characterized certain incorporated material as "essential for comprehending legal duties" as opposed to providing discretionary or reference procedures. Appellants' Br. 30 (cleaned up). But this distinction was not dispositive to that court's fair-use analysis, nor is it to ours. If anything, the difficulty in distinguishing "essential" material from discretionary or reference procedures supports the district court's decision not to make that line dispositive.

15

B

The fourth fair-use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (cleaned up).

In *ASTM II*, we noted that Public Resource's copying may harm the market for the plaintiffs' standards, but we found the extent of any such harm to be unclear. 896 F.3d at 453. We noted three considerations that might reduce the amount of harm: First, the plaintiffs themselves make the incorporated standards available for free in their reading rooms. Second, Public Resource may not copy unincorporated standards—or unincorporated portions of standards only partially incorporated. Third, the plaintiffs have developed and copyrighted updated versions of the relevant standards, and these updated versions have not yet been incorporated into law. We asked the parties to address these issues, among others, on remand. *See id.*

The updated record remains equivocal. The plaintiffs press heavily on what seems to be a common-sense inference: If users can download an identical copy of an incorporated standard for free, few will pay to buy the standard. Despite its intuitive appeal, this argument overlooks the fact that the plaintiffs regularly update their standards—including all 185 standards at issue in this appeal. And regulators apparently are much less nimble in updating the incorporations. So, many of the builders, engineers, and other regular consumers of the plaintiffs' standards may simply purchase up-to-date versions

16

as a matter of course. Moreover, some evidence casts doubt on the plaintiffs' claims of significant market injury. Public Resource has been posting incorporated standards for fifteen years. Yet the plaintiffs have been unable to produce any economic analysis showing that Public Resource's activity has harmed any relevant market for their standards. To the contrary, ASTM's sales have increased over that time; NFPA's sales have decreased in recent years but are cyclical with publications; and ASHRAE has not pointed to any evidence of its harm. *See ASTM III*, 597 F. Supp. 3d at 240.

The plaintiffs' primary evidence of harm is an expert report opining that Public Resource's activities could put the plaintiffs' revenues at risk. Yet although the report qualitatively describes harms the plaintiffs could suffer, it makes no serious attempt to quantify past or future harms. Like the district court, we find it "telling" that the plaintiffs "do not provide any quantifiable evidence, and instead rely on conclusory assertions and speculation long after [Public Resource] first began posting the standards." *ASTM III*, 597 F. Supp. 3d at 240.

Finally, our analysis of market effects must balance any monetary losses to the copyright holders against any "public benefits" of the copying. *Oracle*, 141 S. Ct. at 1206. Thus, even if Public Resource's postings were likely to lower demand for the plaintiffs' standards, we would also have to consider the substantial public benefits of free and easy access to the law. As the Supreme Court recently confirmed: "Every citizen is presumed to know the law, and it needs no argument to show that all should have free access" to it. *Georgia v. Public.Resource.Org., Inc.*, 140 S. Ct. 1498, 1507 (2020) (cleaned up).

17

We conclude that the fourth fair-use factor does not significantly tip the balance one way or the other. Common sense suggests that free online access to many of the plaintiffs' standards would tamp down the demand for their works. But there are reasons to doubt this claim, the record evidence does not strongly support it, and the countervailing public benefits are substantial.[2]

\* \* \* \*

In sum, the first three factors under section 107 strongly favor fair use, and the fourth is equivocal. We thus conclude that Public Resource's non-commercial posting of incorporated standards is fair use.

### III

Finally, the plaintiffs contend that the district court abused its discretion by refusing to enjoin Public Resource after finding that it had infringed the copyrights for the 32 standards not incorporated by reference into law. We disagree.

The Copyright Act provides that a district court "may … grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement." 17 U.S.C. § 502(a). Such language gives the court "considerable discretion" in deciding whether to issue an injunction. *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 865 (Fed. Cir. 1984) (interpreting analogous language in the Patent Act). Thus, the Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a

---

[2] Because these considerations make the fourth factor equivocal, we need not, and thus do not, resolve the parties' extended debate over who bears the burden of proof on that factor.

18

copyright has been infringed." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).

One important equitable consideration is whether the defendant "has ceased its infringing conduct and shows no inclination to repeat the offense." *Reader's Digest Ass'n v. Conservative Digest, Inc.*, 821 F.2d 800, 807 (D.C. Cir. 1987). If so, a court may decline to enter an injunction. *See id.* (defendants had ceased infringing trade dress, and district court "had ample reason to find that they did not intend to infringe again"); *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996) ("When there is no probability or threat of continuing infringements, injunctive relief is ordinarily inappropriate." (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.06[B] (1995))).

Here, the district court reasonably declined to enter an injunction. Public Resource promptly removed from its website the 32 standards found not to have been incorporated into law. Moreover, the district court found that Public Resource intends "to only post documents that have been incorporated into law," *ASTM III*, 597 F. Supp. 3d at 245, and the plaintiffs do not challenge this finding as clearly erroneous. Nor do they point to any instance where Public Resource intentionally posted a standard knowing that it had not been incorporated. So, an injunction is unlikely to serve any useful purpose. And as the district court explained, "the public would be greatly disserved by an injunction barring distribution of any of the 32 standards which may later be incorporated by reference into law." *Id.* at 246.

The plaintiffs object that Public Resource has continued to post additional standards since this lawsuit began. This misses the point—what Public Resource intends to continue is its permissible practice of posting incorporated standards for

19

educational purposes. The plaintiffs also cite cases where a defendant ceased infringement after being "caught red-handed" yet would likely attempt future infringement if the threat of punishment disappeared. *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990). But as noted above, the plaintiffs give us no reason to think that Public Resource will post unincorporated standards again absent an injunction.

For these reasons, the district court reasonably exercised its discretion in declining to award injunctive relief.

*Affirmed.*