ORAL ARGUMENT NOT YET SCHEDULED

**No. 22-7063**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS, et al.,
Appellants

v.

PUBLIC.RESOURCE.ORG, INC.,
Appellee

---

Appeal from the United States District Court
for the District of Columbia
Hon. Tanya S. Chutkan, No. 1:13-cv-1215-TSC

---

**APPELLANTS' REPLY BRIEF**

---

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

*Counsel for American Society for Testing
and Materials d/b/a/ ASTM International*

Donald B. Verrilli, Jr.
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
donald.verrilli@mto.com

Kelly M. Klaus
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
kelly.klaus@mto.com

*Counsel for National Fire Protection
Association, Inc.*

January 13, 2023
(*additional counsel on inside cover*)

UNDER SEAL

Jeffrey S. Bucholtz
David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 737-0500
jbucholtz@kslaw.com

Kenneth L. Steinthal
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
ksteinthal@kslaw.com

*Counsel for American Society of Heating,
Refrigerating, and Air Conditioning
Engineers, Inc.*

Rose Leda Ehler
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
rose.ehler@mto.com

*Additional Counsel for National Fire
Protection Association, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Appellants certify as follows:

## A.    Parties and amici

Appellants are American Society for Testing and Materials d/b/a ASTM International ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE"), which were the Plaintiffs/Counter-Defendants in the district court. Appellee is Public.Resource.Org, which was the Defendant/Counter-Plaintiff in the district court.

The following individuals/entities submitted amicus briefs to the district court:

- Ann Bartow

- American Insurance Association

- American Library Association

- American National Standards Institute, Incorporated

- American Property Casualty Insurance Association

- American Society of Safety Engineers

- Brian L. Frye

- David Ardia

- Elizabeth Townsend Gard

- Institute of Electrical and Electronic Engineers, Incorporated

- International Association of Plumbing & Mechanical Officials

- International Code Council, Inc.

- James Gibson

- Jessica Silbey

- Jennifer Urban

- Jonathan Zittrain

- Knowledge Ecology International

- National Electrical Manufacturers Association

- North American Energy Standards Board

- Pamela Samuelson

- Public Knowledge

- Rebecca Tushnet

- Reporters Committee for Freedom of the Press

- Sina Bahram

- Stacey Dogan

- Stacey M. Lantagne

- Underwriters Laboratories Inc.

The following individuals/entities submitted amicus briefs to this Court:

- Aaron Perzanowski

- American Dental Association

- American Federation of State, County and Municipal Employees

- American Hospital Association

- American Medical Association

- American National Standards Institute, Inc.

- American Society of Civil Engineers

- The American Society of Magazine Editors

- Atlantic Monthly Group LLC

- Authors Alliance

- Christine Farley

- The Copyright Alliance

- County of Sonoma

- EveryLibrary Institute

- Freedom of the Press Foundation

- Institute of Electrical and Electronics Engineers, Inc.

- International Code Council

- Investigative Reporting Workshop

- James Gibson

- Jamie Boyle

- Jessica Silbey

- Joshua Sarnoff

- Julie Cohen

- Lawrence Lessig

- Library Futures Institute

- Mark Lemley

- Matthew Sag

- Media Institute

- Michael A. Carrier

- Michael Carroll

- National Association for the Advancement of Colored People

- National Electrical Manufacturers Association

- National Press Photographers Association

- The News Leaders Association

- North American Energy Standards Board

- Pamela Samuelson

- Peter Jaszi

- Prime Access Consulting, Inc.

- Pro Publica, Inc.

- Public Knowledge

- Radio Television Digital News Association

- Raymond A. Mosley

- Reporters Committee for Freedom of the Press

- Robert C. Tapella

- Society of Environmental Journalists

- Shubha Ghosh

- Tully Center for Free Speech

- ULSE Incorporated

- Victoria Phillips

- Xiyin Tang

- Yvette Joy Liebesman

- Zoe Lofgren

**B.    Rulings under review**

References to the rulings under review appear in Appellants' Brief.

**C.    Related cases**

A statement of related cases appears in Appellants' Brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF CONTENTS....................................................................vi

TABLE OF AUTHORITIES ........................................................... viii

GLOSSARY OF ABBREVIATIONS .................................................XIII

STATUTES AND REGULATIONS...................................................XIV

SUMMARY OF ARGUMENT ............................................................1

ARGUMENT ...................................................................................2

I.  PUBLIC.RESOURCE.ORG'S REQUEST FOR A BROAD
    CONSTITUTIONAL RULING IS LEGALLY AND FACTUALLY
    UNSUPPORTED.........................................................................2

    A.  No one has been unable to access the Works........................3

    B.  Eliminating Plaintiffs' copyrights in IBR'd Works would exact
        significant and needless costs from Plaintiffs and the public. ..............5

    C.  Congress balanced the public's entirely compatible interests in
        access to IBR'd standards and allowing copyright to support the
        independent creation of those standards. ...............................8

II. THE GOVERNMENT EDICTS DOCTRINE IS INAPPLICABLE
    TO PLAINTIFFS' WORKS. ........................................................10

III. PUBLIC.RESOURCE.ORG FAILS TO SATISFY ITS BURDEN TO
     SHOW THAT ITS WHOLESALE APPROPRIATION OF
     PLAINTIFFS' WORKS IS FAIR USE.........................................15

    A.  Factor 1: Public.Resource.Org fails to show that its use of
        Plaintiffs' Works is transformative. ...................................16

        1.  Public.Resource.Org copies portions that are not essential
            to complying with legal duties..................................16

        2.  Public.Resource.Org's purpose overlaps with Plaintiffs'
            and is non-transformative. .......................................22

    B.  Factors 2 and 3: Public.Resource.Org fails to show that the
        nature of Plaintiffs' Works, and the amount and substantiality
        of its copying, favor fair use................................................24

## TABLE OF CONTENTS
### (continued)

C.    Factor 4: Public.Resource.Org failed to meet its burden to show
a lack of market harm. .........................................................................25

    1.    The district court erred in shifting to Plaintiffs
Public.Resource.Org's affirmative-defense burden. ................25

    2.    The uncontroverted evidence shows that
Public.Resource.Org's copying causes market harm. .............26

    3.    Public.Resource.Org's truncated responses to this Court's
questions further confirm market harm. ...................................29

    4.    At a minimum, there is a disputed fact issue on factor
four. ...........................................................................................30

    5.    The claimed "public benefits" from
Public.Resource.Org's unrestricted copying are illusory. ........33

IV.    PUBLIC.RESOURCE.ORG'S ARGUMENTS DO NOT CHANGE
THE DISTRICT COURT'S ABUSE OF DISCRETION IN
REFUSING TO ENJOIN THE INFRINGEMENT IT FOUND. ..................34

CONCLUSION ..........................................................................................................38

CERTIFICATE OF COMPLIANCE .......................................................................40

ADDENDUM OF STATUTES AND REGULATIONS ................................... A-1

CERTIFICATE OF SERVICE ...................................................................... COS-1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

\* *American Society for Testing & Materials v. Public.Resource.Org, Inc.*,
896 F.3d 437 (D.C. Cir. 2018)..... 1, 6, 7, 9, 11, 15, 16, 17, 20, 21, 22, 24, 29, 32

*Brammer v. Violent Hues Prods., LLC*,
922 F.3d 255 (4th Cir. 2019) ...........................................................................23

*Building Officials & Code Administrators v. Code Technology, Inc.*,
628 F.2d 730 (1st Cir. 1980).................................................................................7

*Cambridge Univ. Press v. Patton*,
769 F.3d 1232 (11th Cir. 2014) .......................................................................26

\* *Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)......................................................................................15, 22

\* *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*,
44 F.3d 61 (2d Cir. 1994) ..............................................................................6, 12

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) ...........................................................................34

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)...............................................................................................9

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) ...........................................................36

\* *Georgia v. Public.Resource.Org, Inc.*,
140 S. Ct. 1498 (2020).......................................................................1, 9, 10, 15

*Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*,
391 F.3d 312 (1st Cir. 2004)................................................................................3

*Golan v. Holder*,
565 U.S. 302 (2012)...............................................................................................9

\* Authorities upon which Plaintiffs principally rely are marked with asterisks.

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021)................................................................33, 34

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)...........................................................................9

*Jennings v. Stephens*,
    574 U.S. 271 (2015)...........................................................................9

\* *Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019)................................................................18, 19

*LaShawn A. v. Barry*,
    87 F. 3d 1389 (D.C. Cir. 1996)........................................................11

*McGucken v. Pub Ocean Limited*,
    42 F.4th 1149 (9th Cir. 2022) ....................................................27, 32

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir.
    2013) ............................................................................................36, 37

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................36

*MidCap Media Finance, LLC v. Pathway Data, Inc.*,
    929 F.3d 310 (5th Cir. 2019) ............................................................33

*National Lifeline Ass'n v. FCC*,
    983 F.3d 498 (D.C. Cir. 2020).........................................................18

*Nintendo of Am. Inc. v. Lewis Galoob Toys Inc.*,
    No. 90-15936, 1991 WL 5171 (9th Cir. Jan. 24, 1991) ...................37

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) ..........................................................9

\* *Practice Mgmt. Info. Corp. v. American Med. Ass'n*,
    121 F.3d 516 (9th Cir. 1997) ..............................................................6

TABLE OF AUTHORITIES
(continued)

Page(s)

*Princeton Univ. Press v. Mich. Doc. Servs., Inc.*,
  99 F.3d 1381 (6th Cir. 1996) ...............................................................26

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) ...................................................................36

*Seshadri v. Kasraian*,
  130 F.3d 798 (7th Cir. 1997) ...............................................................12

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017)......................................................................4, 5

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
  689 F.3d 29 (1st Cir. 2012).................................................................27

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .............................................................37

*Suntrust Bank v. Houghton Mifflin Co.*,
  268 F.3d 1257 (11th Cir. 2001) ...........................................................31

*Swatch Group Management Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) .............................................................23, 24

*Veeck v. Southern Building Code Congress International, Inc.*,
  293 F.3d 791 (5th Cir. 2002) .................................................................7

STATE CASES

*Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*,
  87 N.E.3d 462 (Ind. 2017) .....................................................................3

*Public.Resource.Org Inc. v. Cal. Office of Administrative Law*,
  No. 24-2021-80003612 (Cal. Super. Ct. filed Mar. 17, 2021) ............4

FEDERAL STATUTES

* 5 U.S.C. § 552(a) ......................................................................2, 8, 17

17 U.S.C. § 108 .....................................................................................22

# TABLE OF AUTHORITIES
## (continued)

Page(s)

\* Copyright Act of 1976 ............................................................................7, 9, 13, 35

1995 National Technology Transfer and Advancement Act ...................................13

**FEDERAL REGULATIONS**

1 C.F.R. 51.9(a)............................................................................................17

1 C.F.R. 51.9(b) ......................................................................................18, 19

1 C.F.R. 51.3(b) .............................................................................................20

79 Fed. Reg. 66,267 (Nov. 7, 2014)...................................................................8, 14

**LEGISLATIVE MATERIALS**

H.R. 5305, 115th Cong. (2018)............................................................................8

H.R. Rep. 94-1476 (1976)..................................................................................13

H.R. Rep. 113-152 (2013)..................................................................................14

**OTHER AUTHORITIES**

*CPSC Br., Milice v. Consumer Product Safety Commission*,
   2 F.4th 994 (D.C. Cir. 2020) (No. 21-1071), 2020 WL 8641276 ...............13, 14

Letter from Raymond Mosley, Director of the Federal Register, to
   Carl Malamud (Aug. 3, 2009),
   https://law.resource.org/pub/us/case/govdocs/gov.nara.fedreg_200
   90803_from.pdf ......................................................................................20

*Nat'l Fire Protection Ass'n, Inc. v. UpCodes, Inc.*,
   Case No. 21-5262 (C.D. Cal., filed June 29, 2021).......................................8, 29

National Research Council, *Standards, Conformity Assessment, and
   Trade: Into the 21st Century* (1995)..............................................................14

*Nimmer on Copyright* § 5.06[C] .......................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3 *Nimmer on Copyright* § 10.03[A][7] ....................................................................13

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ASHRAE | American Society of Heating, Refrigerating, and Air Conditioning Engineers |
| ASTM | American Society for Testing and Materials |
| IBR | Incorporation by Reference |
| NFPA | National Fire Protection Association |
| OFR | Office of Federal Register |
| SMF | Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment |
| Supp. SMF | Plaintiffs' Supplemental Statement of Material Facts in Support of Their Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment |
| 2d. Supp. SMF | Plaintiffs' Second Supplemental Statement of Material Facts in Support of Their Second Motion for Summary Judgment |

\* Authorities upon which Plaintiffs principally rely are marked with asterisks.

## STATUTES AND REGULATIONS

Except for the following, all applicable statutes, rules, regulations, etc. are contained in Appellants' Brief or Appellee's Brief.

- Office of Management and Budget Circular A-119 (2016)

- Incorporation by Reference, 79 Fed. Reg. 66,267 (Nov. 7, 2014)

- H.R. Rep. 94-1476 (1976)

- H.R. Rep. 113-152 (2013)

Excerpts of or a complete version of the above-listed sources are set forth in the Addendum to this brief.

# SUMMARY OF ARGUMENT

Public.Resource.Org cannot square the district court's decision with this Court's fair use guidance in *American Society for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018) ("*ASTM II*"). Public.Resource.Org ignores this Court's direction in favor of cherry-picked quotations from an Office of the Federal Register ("OFR") Handbook and an OFR official's three-line email response to Public.Resource.Org. Although Public.Resource.Org has the burden, Plaintiffs' undisputed expert economic evidence establishes the consequences to Plaintiffs' markets if its conduct were to become widespread. Public.Resource.Org's mass copying and distribution is not fair.

Public.Resource.Org alternatively makes a sweeping and meritless argument that incorporation by reference ("IBR") strips the Works of copyright. Copyright protection is instant and automatic for privately-authored works, like Plaintiffs'. No government official writes any Works verbatim into statute or regulation through IBR, and Plaintiffs' copyrights are not divested by subsequent IBR. To argue otherwise, Public.Resource.Org must contort the Supreme Court's "straightforward rule" for whether a work is a government edict which turns "on the identity of the author." *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1506 (2020). Nor does the Constitution require vitiating Plaintiffs' copyrights. All the Works are

"reasonably available," 5 U.S.C. § 552(a): Plaintiffs post them online for anyone to read for free. This Court, like all other appellate courts to consider similar arguments, previously declined the extreme result Public.Resource.Org advocates. It should do so again—such a result lacks legal basis, and would thwart Congress' will and undermine the self-funded process necessary to create independent voluntary-consensus standards.

Finally, Public.Resource.Org's unlawful copying and distribution of non-IBR'd Works warrants a permanent injunction.

The judgment should be vacated and remanded for the proper application of *ASTM II*, and the denial of injunctive relief reversed.

## ARGUMENT

## I.    Public.Resource.Org's Request For A Broad Constitutional Ruling Is Legally and Factually Unsupported.

Swinging for the fences, Public.Resource.Org and its chorus of amici argue that the Constitution commands that Plaintiffs' copyrights be vitiated so "the law" may be set free. The various incantations of this argument ignore that Plaintiffs' Works are already available on their websites without charge; no one has been deprived of the ability to read, comment on, or criticize them. Congress and the Executive Branch have balanced the need to incentivize the creation of standards with the public's right to know what they say. There is no cause to upset that balance when there is no evidence anyone has been unable to access Plaintiffs' Works.

2

### A.    No one has been unable to access the Works.

Public.Resource.Org and its amici say that allowing the copyrights to stand imperils the public's right to "[a]ccess, [a]nalyze, and [c]riticize the law," Appellee's Br. 24; forces citizens and government enforcers "to pay [Plaintiffs] to find out what [the law] says," Sonoma County Br. 6; and makes "access to the law" turn on one's "resources," AFSCME Br. 10.

This dramatic rhetoric has no support. No one has to pay a penny to read the Works. JA5107 (2d. Supp. SMF ¶85). After a decade of litigation, neither Public.Resource.Org nor its amici cited a *single instance* in which anyone who wanted to access, discuss, or comment on any Work was unable to do so for free. JA286, 305 (SMF ¶¶168, 275).

Public.Resource.Org's extra-record anecdotes provide no support. *Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 468 (Ind. 2017), Appellee's Br. 8-9, 16, 54, involved a *non*-Plaintiff organization's standard. *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004), Appellee's Br. 9, 38, involved a standard also not in issue.[1]

---

[1] Plaintiffs did not move for summary judgment on ASHRAE's "1993 Handbook," Appellee's Br. 41, and that work is not before this Court. The graduate student who contacted ASTM, *id.* 41-42, did not claim to be unable to access any ASTM standard and was seeking permission to post online two standards, not Works in suit, for non-educational purposes, JA8796-8797 (Dkt. 212-1, ¶106); JA2631 (Dkt. 122-7, Ex. 117).

Public.Resource.Org also mischaracterizes *Public.Resource.Org Inc. v. Cal. Office of Administrative Law*, No. 24-2021-80003612 (Cal. Super. Ct. filed Mar. 17, 2021), Appellee's Br. 22.  Public.Resource.Org challenged the denial of its request for an electronic copy of an NFPA Work under the California Public Records Act.  That denial was no different from the numerous federal denials of Public.Resource.Org's similar requests.  JA287 (SMF ¶¶176-77).  Again, no one has been unable to access the IBR'd standard.  JA7274 (Dkt. 204-42, Marvelli Dep. 179:10-14).

Public.Resource.Org says the access Plaintiffs provide is not free because online users must register or agree to terms of service.  Appellee's Br. 10.  Such terms are ubiquitous and do not show lack of access.  The Internet Archive, where Public.Resource.Org posts Plaintiffs' Works, has terms of service.  *See* Internet Archive's Terms of Use, Privacy Policy, and Copyright Policy, https://archive.org/about/terms.php (Dec. 31, 2014).  PACER requires registration and consent to monitoring.  *See* Registration, https://pacer.psc.uscourts.gov/pscof/registration.jsf (accessed Jan. 13, 2023); Manage My Account, https://pacer.psc.uscourts.gov/pscof/login.xhtml (accessed Jan. 13, 2023).

Public.Resource.Org, moreover, lacks standing to bring a due process claim.  It does not claim to be subject to enforcement arising out of any IBR'd Work and cannot satisfy the exacting requirements for third-party standing.  *See Sessions v.*

*Morales-Santana*, 137 S. Ct. 1678, 1689 (2017).    Public.Resource.Org's constitutional arguments fail in this case, with these parties, and these Works.

### B.    Eliminating Plaintiffs' copyrights in IBR'd Works would exact significant and needless costs from Plaintiffs and the public.

Contrary to Public.Resource.Org's misleading characterization that Plaintiffs merely "convene volunteers," Appellee's Br. 3, 45, Plaintiffs develop their Works through a robust voluntary consensus process that requires *millions of dollars* of annual investment from each organization, JA257, 261-263, 273-276, 279-281, 283 (SMF ¶¶6-8, 28-37, 43-44, 104-05, 109-19, 135-41, 152).  Plaintiffs depend on sales of their Works to self-fund standards development.    JA264, 273, 283-284 (SMF ¶¶45-46, 106, 153-54).  Without copyright protection, Plaintiffs would lose a crucial funding stream necessary to support their work, JA741-743, 745-746, 748-749, 763-766 (Jarosz Report ¶¶80-83, 90-91, 97-98, 131-38); JA5105-5107 (2d. Supp. SMF ¶¶77-84), and the public would lose the benefits of an important private-public partnership that enhances safety without burdening taxpayers, JA303-304 (SMF ¶¶265-71; JA666-667 (Dkt. 118-9, ¶¶11-14); JA355-356 (Dkt. 118-6, ¶¶22-24). While purporting to express gratitude for the work Plaintiffs do, JA893-895 (Dkt. 118-12, Ex. 2 (C. Malamud Dep. 306:03-308:04)); Sonoma County Br. 11, Public.Resource.Org and its amici offer no viable solution for how Plaintiffs can continue that work without the protection of their copyrights.

5

*ASTM II* recognized the importance of Plaintiffs' Works and declined to consider Public.Resource.Org's "bright-line rule" eliminating copyright because of, *inter alia*, "the economic consequences that might result from [Plaintiffs] losing copyright." 896 F.3d at 446-47. The same reasoning applies now. Every other appellate court has declined to accept the sort of all-or-nothing framework Public.Resource.Org presses.

The Second and Ninth Circuits reaffirmed copyright protection for IBR'd standards, rejecting the plea to "vitiate copyright," noting that it could "prove destructive of the copyright interest in encouraging creativity," by depriving private entities of an "economic incentive[]" to develop their work. *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 65, 73-74 n.30 (2d Cir. 1994) (quoting *Nimmer on Copyright* § 5.06[C] at 5-60); *Practice Mgmt. Info. Corp. v. American Med. Ass'n*, 121 F.3d 516, 518 (9th Cir. 1997).

Public.Resource.Org's attempted distinction of *CCC* and *Practice Management,* as involving mere "*citations to* reference works," Appellee's Br. 23, is wrong. In *Practice Management*, a party that wanted to obtain Medicaid reimbursement had to utilize codes the medical association created. 121 F.3d at 518. Under this Court's articulation, the association's work was "legally binding." *ASTM II*, 896 F.3d at 443. In *CCC*, the publisher's car-valuation book had been adopted as one means of complying with a binding legal requirement, 44 F.3d at 73, and thus

6

told "the regulated entity how it" could satisfy "codified requirements," *ASTM II*, 896 F.3d at 443.

*Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002), and *Building Officials & Code Administrators v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980) ("*BOCA*"), likewise refrained from adopting the uncompromising position Public.Resource.Org advances. *Veeck*, responding to an amicus brief filed by NFPA and others, said its holding did not apply to "references to extrinsic standards," and so would not result in organizations' copyrights "be[ing] vitiated simply by the common practice of governmental entities' incorporating their standards in laws and regulations." 293 F.3d at 803-04.[2] *BOCA* declined to "rule finally on the question," recognizing the potential need "to accommodate modern realities" and the "important public function" served by standards development organizations. 628 F.2d at 735-36. This reasoning is even more true today given Public.Resource.Org's ambition of copying and distributing *all* of Plaintiffs' IBR'd

---

[2] The Solicitor General's brief that Public.Resource.Org cites is not a precedential court decision. That brief limited its discussion to the particular circumstances of *Veeck* and said mere IBR of a work might not allow the public to "copy it freely." U.S. Br. 15, 18-19, *Veeck*, No. 02-355 (U.S. May 2003). This is consistent with the Solicitor General's position in *Practice Management* that "[n]othing in the Copyright Act . . . would permit a termination of copyright protection in these circumstances." U.S. Br. 7, *Practice Mgmt.*, No. 97-1254 (U.S. Aug. 1998). Regardless, interpreting *Veeck* to strip copyright from privately-authored works that later become "the law" is inconsistent with the Supreme Court's holding in *Georgia*. *See infra*, II.

Works, Appellee's Br. 58; the emergence of for-profit companies copying Public.Resource.Org, *Nat'l Fire Protection Ass'n, Inc. v. UpCodes, Inc.*, Case No. 21-5262 (C.D. Cal., filed June 29, 2021); and the political branches' reaffirmation of the importance of respecting copyright in IBR'd standards, *see* Appellants' Br. 6-8; *infra*, I.C., II.

    **C.**    **Congress balanced the public's entirely compatible interests in access to IBR'd standards and allowing copyright to support the independent creation of those standards.**

Congress addressed Public.Resource.Org's concerns through 5 U.S.C. § 552(a), which requires that any standard to be IBR'd be "reasonably available to the class of persons affected thereby." Under this provision, agencies "work with the relevant standards developer to promote the availability of [their] materials," while "*respecting the copyright owner's interest in protecting its intellectual property*." Office of Management and Budget Circular A-119, at 21 (2016) (emphasis added).

Public.Resource.Org and amicus Congresswoman Lofgren have urged Congress and the Executive Branch to reconsider that balance, but were rejected. In 2012, Public.Resource.Org's founder (and others) petitioned OFR to vitiate copyright and make material IBR'd available for free online; that proposal was rejected. 79 Fed. Reg. 66,267, 66,268 (Nov. 7, 2014). In 2018, Congresswoman Lofgren co-sponsored a bill to end copyright protection for IBR'd standards. H.R.

5305, 115th Cong. (2018).  That bill did not become law.  Public.Resource.Org and amici may ask Congress to rethink its judgment but provide no cause for this Court to upset it.  *Georgia*, 140 S. Ct. at 1511 ("[I]t is generally for Congress, not the courts, to decide how best to pursue the Copyright Clause's objectives.") (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 212 (2003)).

Congress also "balance[d] … the First Amendment and the Copyright Act" through the fair use defense.  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985); *see also Golan v. Holder*, 565 U.S. 302, 328 (2012) (fair use is a "built-in First Amendment accommodation").[3]  *ASTM II* provides that fair use may permit limited copying of IBR'd material essential to complying with a legal duty, but otherwise protects Plaintiffs' copyrights.  *See infra*, III.  While

---

[3] First Amendment protections are also built into the Copyright Act's distinction between copyrightable expression and uncopyrightable ideas.  *Golan*, 565 U.S. at 328.   Public.Resource.Org argues that Plaintiffs' Works are uncopyrightable.  Appellee's Br. 27-28, 44-45.  Copyrightability is gauged at the time of creation.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014); U.S. Br. at 14-15, *Google LLC v. Oracle Am., Inc.*, No. 18-956 (Sept. 2019).  At the time Plaintiffs created the Works, they were copyrightable: they had not been IBR'd and were original expressions of ideas that can be expressed in multiple ways (as evidenced by the fact that standards development organizations write standards on similar subjects in different ways).  JA262 (SMF ¶38).

Separately, by failing to cross-appeal on its copyrightability or constitutional arguments, Public.Resource.Org has waived these arguments to the extent they would expand the judgment below.  *See Jennings v. Stephens*, 574 U.S. 271, 276 (2015).

Plaintiffs disagree that Public.Resource.Org satisfied its burden of proving fair use, the defense exists and fully addresses the claimed First Amendment concerns.

## II.    The Government Edicts Doctrine Is Inapplicable To Plaintiffs' Works.

Public.Resource.Org wrongly argues the *Georgia* decision "[n]aturally [e]xtends" to Plaintiffs' Works. Appellee's Br. 19. The district court properly rejected this argument. JA9283-9284 (Memorandum Opinion 19-20).

*Georgia* held the government edicts doctrine imposes a "straightforward rule," which turns "on the identity of the author." 140 S. Ct. at 1506. If the author is an "official[] empowered to speak with the force of law," they are not a copyright "author" if they "create[d the work] in the course of their official duties." *Id.* at 1504. But the doctrine "does not apply" to works authored by "*private parties*[] who lack the authority to make or interpret the law." *Id.* at 1507 (emphasis added). Thus:

> Instead of examining whether given material carries "the force of law," we ask only whether the author of the work is a judge or a legislator. If so, then whatever work that judge or legislator produces in the course of his judicial or legislative duties is not copyrightable. That is the framework our precedents long ago established, and we adhere to those precedents today.

*Id.* at 1513. Following the Supreme Court's "straightforward rule," the government edicts doctrine does not apply to Plaintiffs' *privately* authored Works. *Id.* at 1506.

Public.Resource.Org's argument that government officials authored the Works because some government employees participate on Plaintiffs' technical committees, Appellee's Br. 20, mischaracterizes the process as government-driven

10

(it is not) and re-litigate the authorship question this Court rejected.  *ASTM II*, 896 F.3d at 446 (claim of government authorship "forfeited" and "meritless").  That ruling is law of the case as to the ten Works previously at issue.  *See LaShawn A. v. Barry*, 87 F. 3d 1389, 1393 (D.C. Cir. 1996).  As to the remaining Works, the district court correctly found that Public.Resource.Org "proffered no evidence" of government authorship.  JA9283 (Memorandum Opinion 19).  Public.Resource.Org, Appellee's Br. 20, does not identify a single word of any Work that a government official supposedly wrote.

Public.Resource.Org's argument for an extension of *Georgia* would stretch the government edicts doctrine beyond recognition.  Public.Resource.Org argues that IBR should be treated *as if* the agency "pasted [the standard] word-for-word into a regulation," *i.e.*, the same as a legislature writing into the statute books words drafted by lobbyists.  *Id.* 20-22.  That is *not* IBR.  The specific text of the regulation or statute authored by the government that effectuates the IBR is a government edict, not the Works themselves.  The Works are *referenced* and never *written* word-for-word into any regulation, statute, or other "law."

Beyond that fundamental and dispositive distinction, Public.Resource.Org's contentions are wrong for multiple additional reasons.

First, IBR'ing a preexisting standard is fundamentally different from the legislature enacting language that a lobbyist created for the sole purpose of inclusion

in a statute.  Plaintiffs generally do not "lobby" for their standards to be IBR'd.

JA265 (SMF ¶56).  Unlike lobbyists, standards development organizations do not

develop standards solely for the purpose of government incorporation; standards

have a range of uses, including by industry, insurance companies, and others.

JA265, 270, 279 (SMF ¶¶54, 90, 134); JA699 (Dkt. 118-11, ¶16); JA339 (Dkt. 118-

4, ¶20); JA631 (Dkt. 118-8, ¶10); JA669-670 (Dkt. 118-10, ¶3); JA9265

(Memorandum Opinion 1).  Unlike lobbyists, Plaintiffs make their standards

available for IBR *subject to* copyright protection.[4]  *See, e.g.*, JA5574 (Dkt. 199-27,

Ex. P at NFPA-PR0098063) (explaining, as for all NFPA Works, that "[b]y making

these documents available for use and adoption by public authorities . . . NFPA does

not waive any rights in copyright"); JA5063 (2d. Supp. SMF ¶8) (standards bear

copyright notice in favor of Plaintiff); JA2816 (Dkt. 122-8, Ex. 139) (same).  And

again—unlike lobbyist-drafted legislation—the text of the standards is not copied

word-for-word into the statute books or regulations.[5]

---

[4] Public.Resource.Org is wrong to dismiss the constitutional issues under the Takings Clause if IBR were deemed to eviscerate copyright protection.  Appellees' Br. 29.  The current public-private partnership in IBR turns on copyright being protected and a contrary ruling would raise precisely those concerns.  *CCC*, 44 F.3d at 74.

[5] Public.Resource.Org tries to confuse the issue by speculating that someone who drafted a bill for a legislator could try to enforce copyright in an enacted statute. Appellee's Br. 20-21.  There is no evidence anyone has ever made such a claim.  If someone did, a court could address that without undermining IBR.  *See Seshadri v. Kasraian*, 130 F.3d 798, 805 (7th Cir. 1997) ("Authorizing another to publish under

Second, Public.Resource.Org's equating IBR with lobbyist-drafted bills ignores Congress' and the Executive Branch's decades-long treatment of IBR. When Congress enacted the Copyright Act of 1976, IBR was an established practice of federal agencies. *See* Act of June 5, 1967, Pub. L. No. 90-23, § 552, 81 Stat. 54, 54 (specifically authorizing agencies to IBR). Neither Public.Resource.Org, nor others advancing similar arguments, can identify any "provision of the Copyright Act that would terminate existing copyright protection in a work merely because the work was subsequently incorporated by reference." *See* CPSC Br., *Milice v. Consumer Product Safety Commission*, 2 F.4th 994 (D.C. Cir. 2020) (No. 21-1071), 2020 WL 8641276, at *29. The House Report underlying the Copyright Act shows that Congress did not intend IBR to divest copyright. *See* H.R. Rep. 94-1476, at 60 (1976) ("[P]ublication or other use by the Government of a private work would not affect its copyright protection in any way").

Congress expressed a clear preference for federal agencies to use privately-developed standards, whenever possible, in the 1995 National Technology Transfer and Advancement Act. Appellants' Br. 6. That Act was based on a congressionally-authorized study recognizing that organizations "offset expenses and generate income through sales of standards documents, *to which they hold the copyright*."

---

his sole name would amount to a public disclaimer of authorship"); 3 *Nimmer on Copyright* § 10.03[A][7] (implied license).

National Research Council, *Standards, Conformity Assessment, and Trade: Into the 21st Century* 32 (1995) (emphasis added).  It would have been illogical for Congress to direct agencies to IBR standards if doing so would destroy copyright and standards development organizations' ability to fund the creation of standards in the first place.  *See also* H.R. Rep. 113-152, at 3 (2013) (standards development organizations' "business model[s] could be jeopardized" by allowing third parties to provide free internet access to standards).

Likewise, numerous agencies have taken positions demonstrating IBR is intended to and does preserve copyright.  *See* Appellants' Br. 7-8; JA287 (SMF ¶¶175, 177); JA972-974 (Dkt. 118-12, Ex. 3 (C. Malamud Dep. 232:14-234:08)); JA1006-1013 (Dkt. 118-12, Ex. 10); *supra*, 8 (Office of Management and Budget Circular).  Public.Resource.Org is wrong that "the bulk of the Code of Federal Regulations" is the reason agencies IBR.  Appellee's Br. 5.  The Consumer Product Safety Commission "chose to utilize [IBR] procedures" given "ASTM's copyright in its voluntary consensus standard," while ensuring there were "means of reasonable access."  CPSC Br., 2020 WL 8641276, at *22-23.  The practice of IBR is reserved for privately-authored works, and agency materials are "inappropriate for IBR."  79 Fed. Reg. at 66,268.

Third, Public.Resource.Org would have judges engage in the vexing exercise of "attempting to catalog the materials that constitute 'the law,'" beyond the more

14

straightforward determination of authorship. *Georgia*, 140 S. Ct. at 1507. Does the purely informational History and Development of the National Electrical Code, which appears in each edition of NFPA 70, become a non-copyrightable government edict because the standard has been IBR'd? JA5575 (Dkt. 199-27, Ex. P at NFPA-PR0098064); JA5097 (2d. Supp. SMF ¶63 (listing similar histories in each NFPA standard)); JA4991 (Dkt. 198-50, ¶28.b). What about the text of non-IBR'd standards or other works that are referenced as requirements within an IBR'd standard, *e.g.*, *Merriam-Webster's Collegiate Dictionary,* 11th edition? JA6924 (Dkt. 199-33, Ex. V at NFPA-PR0020217). What about law review articles that set forth the legal standard later adopted by a court? *E.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (relying on Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105 (1990), for "transformative" test of fair use). Although Public.Resource.Org identifies no limiting principle to prevent its government-edicts theory from unsettling the copyright status of an untold number of privately-authored works, the Supreme Court's authorship-based analysis properly answers each of these questions: no.

### III. Public.Resource.Org Fails To Satisfy Its Burden To Show That Its Wholesale Appropriation Of Plaintiffs' Works Is Fair Use.

In *ASTM II*, this Court said that fair use had to be analyzed "standard by standard" and "use by use," according to the guidance this Court set forth for applying each of the four fair use factors. 896 F.3d at 451. Ignoring this instruction,

Public.Resource.Org asserts that whenever a governmental entity IBR's a standard, it is *per se* fair for any party in Public.Resource.Org's position to copy and distribute that standard without restriction. Public.Resource.Org's overbroad conception of fair use sidesteps the careful inquiry this Court mandated and well-established fair use principles. The Court should reject Public.Resource.Org's dramatic restructuring of fair use.

### A. Factor 1: Public.Resource.Org fails to show that its use of Plaintiffs' Works is transformative.

#### 1. Public.Resource.Org copies portions that are not essential to complying with legal duties.

This Court said "distributing copies of the law" to facilitate public access could be a transformative use. But it made clear "the law" is not co-extensive with all parts of an IBR'd standard. *ASTM II*, 896 F.3d at 450. The Court differentiated between portions of Plaintiffs' Works critical to complying with the law (suggesting transformativeness), and portions that are not (cutting against transformativeness).

Plaintiffs' opening brief reviewed substantial evidence showing that large portions of the copied Works are not "essential to understanding one's legal obligations," *id.* at 453. Appellants' Br. 19-23. But Public.Resource.Org barely tries to defend the district court's failure to analyze the standards as this Court directed. Public.Resource.Org claims the district court did not have to do this work, because federal agencies already did the work for it. Under this view, whenever a

16

federal agency IBR's a standard without an express limitation, the agency has decided the entire standard is essential to complying with the law.  *See* Appellee's Br. 32-35.  In Public.Resource.Org's view, when the Department of Veterans Affairs referred to NFPA 101 without expressly limiting its IBR to the portions of that Work dealing with veterans cemeteries, *everything*—414 pages, cover-to-cover, JA6502-6915 (Dkt. 199-31, Ex. T at NFPA-PR0019355-NFPA-PR0019768)—in that Work as a matter of law became essential to comprehending the requirements for such cemeteries, including material designated for "informational purposes only," and sections that relate to one- and two-family dwellings and day-care occupancies.[6]

No authority supports Public.Resource.Org's radical theory.  The statute authorizing federal agencies to IBR does not say anything that supports Public.Resource.Org's theory.  5 U.S.C. § 552(a).  Nor do OFR's regulations on IBR.  Those regulations state agencies should identify standards "precise[ly] [and] complete[ly]," 1 C.F.R. 51.9(a), but they also say language is "precise and complete if it," *inter alia*, "[s]tates the title, date, edition, author, publisher, and identification

---

[6] Public.Resource.Org also refuses the logical consequence of its argument—that when an agency *has* specified particular sections of a standard or a specific edition of a standard *only* those sections impose a legal obligation.  *See, e.g.*, Appellants' Br. 28-29.  Public.Resource.Org asks the Court to simply excuse as "best efforts" its copying and distributing in full Works where the incorporating regulation identifies particular sections or a different edition.  Appellee's Br. 39 (contending that "differences are largely immaterial").

number *of the publication*," and "[i]nforms the user that *the incorporated publication is a requirement*," *id*. § 51.9(b)(2)-(3) (emphases added). The regulation does *not* state that the agency has to expressly specify by section number or heading the portion of the publication that is incorporated or essential to understanding any legal requirements.

Public.Resource.Org relies instead on what it calls OFR's "clear guidance" and "interpretation" of the regulations, to which this Court supposedly owes "substantial deference." Appellee's Br. 32-33 & n.8. But these sources consist only of a Document Drafting Handbook and IBR Handbook, and a hearsay email statement. *Id*. 6, 33. Public.Resource.Org fails to cite the controlling authority on deference to an agency's interpretation of its regulations, *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), much less show that such deference applies, which "it often doesn't," *id*. at 2418.

First, the relevant regulation, 1 C.F.R. 51.9(b), is not "genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415. The regulation requires the agency to state identifying information for "the publication" as a whole and the fact "the publication" establishes a "requirement." Nothing in the regulation is susceptible to the reading Public.Resource.Org tries to wring out of it.

Second, the sources Public.Resource.Org cite do not meet the requirements for deference. *Id*. at 2416-18; *National Lifeline Ass'n v. FCC*, 983 F.3d 498, 507

18

(D.C. Cir. 2020).  None of them purports to construe 1 C.F.R. 51.9(b), much less reflects any "fair and considered judgment" of how to construe that regulation. *Kisor*, 139 S. Ct. at 2417 (citation omitted).  The cited sources are not "authoritative" or an "official position" on §51.9(b), *Kisor*, 139 S. Ct. at 2416 (citations omitted), because they do not show OFR taking a position on Public.Resource.Org's proffered interpretation.  The Handbooks are simply practical guidance manuals to agencies. The email is just an informal response to Public.Resource.Org's founder.

Agency and OFR practice undercuts Public.Resource.Org's construction of §51.9(b).  As Plaintiffs demonstrated, numerous IBR'd Works contain sections expressly stating that they are *not* legally-binding requirements.  Appellants' Br. 22; *see also, e.g.*, JA5098 (2d. Supp. SMF ¶64); JA2992 (Dkt. 155-6, Ex. A at NFPA-PR0017561); JA5100-5102 (2d. Supp. SMF ¶67); JA5223 (Dkt. 199-17, Ex. F at NFPA-PR0014507); JA5424 (2d. Supp. SMF ¶71); JA6956 (Dkt. 199-34, Ex. 1 at 6).  Other Works are IBR'd by regulations whose plain language makes clear that the standards are incorporated as reference procedures.  Appellants' Br. 21.  Still other Works have sections that are obviously not essential to understanding any legal duty—because, for example, those sections address a completely different topic than the regulation, or on their face provide optional or explanatory material.  *See id.* 19-23; *see also, e.g.*, JA8860 (Dkt. 213-1, ¶8); JA5121-5222 (Dkt. 199-15); JA5104-5105 (2d. Supp. SMF ¶75); JA7096-7117 (Dkt. 199-34, Ex. 1 at 146-67).  In these

19

instances, the agency did not limit its IBR to only mandatory provisions of the Work, yet it could not rationally have determined the entire standard was necessary to comply with legal duties. Despite the agencies not having followed Public.Resource.Org's claimed interpretation of the regulation, OFR approved the IBR, thus demonstrating that OFR does not read the regulation Public.Resource.Org's way. *See* 1 C.F.R. 51.3(b).

Finally, if Public.Resource.Org's citations require deference, then so too do the statements in the IBR Handbook that express OFR's position that agencies must respect organizations' copyrights. Office of the Federal Register, IBR Handbook at 8-9 (July 2018) (recognizing the need to balance copyright interests and that one way of doing so is to "[m]ake the incorporated material publicly available in read-only form on the copyright owner's website"). Indeed, OFR has consistently taken this position. *See* Letter from Raymond Mosley, Director of the Federal Register, to Carl Malamud, at 2 (Aug. 3, 2009), https://law.resource.org/pub/us/case/govdocs/gov.nara.fedreg_20090803_from.pdf (explaining that "some documents incorporated by reference do or may have copyright protection"); *see generally* Mosley and Tapella Br. (declining to endorse Public.Resource.Org's interpretation of regulations).

Public.Resource.Org's backup argument fights this Court's test. It argues that copying IBR'd content that is merely "help[ful]" to understanding legal duties is

transformative.  *ASTM II*, 896 F.3d at 450; Appellee's Br. 31, 35-36, 39.  This Court said that "where knowing the content of an incorporated standard might help inform one's understanding of the law but is not essential to complying with any legal duty, the nature of PRO's use might be less transformative and its wholesale copying, in turn, less justified."  *ASTM II*, 896 F.3d at 450.  A rule that draws the line at "helpful" has no limiting principle, encompassing Plaintiffs' "explanatory material" that might be found in introductions, annexes, notes, trainings, and handbooks.  NAACP Br. 19-20.

Public.Resource.Org misstates Plaintiffs' argument as one that would require "a sentence-by-sentence analysis."  Appellee's Br. 32.  That is *not* Plaintiffs' argument.  Appellants' Br. 30-31.  Following this Court's direction, Plaintiffs proposed different ways of grouping the Works.  *Id*. 31; *see* JA5027-5034 (Dkt. 199-1, at 17-24) (grouping (1) standards not IBR'd by Public.Resource.Org's identified reference; (2) optional standards or reference procedures; (3) standards with no direct legal effect on private party conduct; (4) standards posted wholesale when only a portion was IBR'd; and (5) merely informational portions or background text).  The district court ignored those groupings.  Its analysis of the remanded questions the Court asked it to answer was perfunctory, incomplete, and in many cases demonstrably wrong.  Appellants' Br. 24-30.

In sum, Public.Resource.Org fails to justify the district court's factor one errors.

### 2.    Public.Resource.Org's purpose overlaps with Plaintiffs' and is non-transformative.

Public.Resource.Org has not "add[ed] something new, with a further purpose or different character," beyond what Plaintiffs already do.  *Campbell*, 510 U.S. at 579.  Public.Resource.Org argues that its mission of making "the law" publicly available is different from Plaintiffs' public-service missions, such as promoting health and safety.  But Plaintiffs *share* this purpose.  They put the Works online so members of the public have access to them.  JA266, 272, 285 (SMF ¶¶63-67, 100, 161); JA1014 (Supp. SMF ¶¶23-24); JA5107 (2d. Supp. SMF ¶¶85-87).

Public.Resource.Org and its amici also contend that its use is transformative because it makes the Works more "user-friendly" and "genuinely accessible," and provides an "archive."[7]    Appellee's Br. 37-38, 40, 46; Sonoma County Br. 5; NAACP Br. 20.  But this Court already rejected these and similar arguments.  *ASTM II*, 896 F.3d at 450 (rejecting transformative claims based on "converting the works

---

[7] Public.Resource.Org speculates that its "archive" might be used by others for transformative uses, such as research or machine learning, Appellants' Br. 37, 41, but transformativeness is assessed on a "case by case" basis, *Campbell*, 510 U.S. at 581.  Whether a hypothetical researcher's copying, or amicus the National Association for the Advancement of Colored People's copying, might be fair is legally irrelevant to Public.Resource.Org's fair use defense.  Congress has imposed substantial limitations on archiving that Public.Resource.Org's model would undermine. *See* 17 U.S.C. § 108.

into a format more accessible for the visually impaired or . . . producing a centralized database of all incorporated standards").

There is no record evidence that low-income communities or print-disabled users, represented by amici, are unable to access the Works through Plaintiffs' sites. The evidence shows Plaintiffs regularly grant requests to use the Works for limited, non-commercial purposes without charge or at lower cost, and provide accommodations to users with disabilities.  JA364, 371 (Dkt. 118-7, ¶¶13, 65); JA308 (Dkt. 118-3, ¶10); JA674-675 (Dkt. 118-10, ¶¶18-20); JA1004 (Dkt. 118-12, Ex. 8 (Comstock Dep. 106:19-22)); JA3851 (Dkt. 155-7, ¶17); JA2961 (Dkt. 155-6, ¶¶4-7); JA2956-2957 (Dkt. 155-5, ¶¶4-6).

"[A] simple assertion of a subjectively different purpose, by itself, does not necessarily create" transformative use; what matters "is how the work in question appears to the reasonable observer." *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 263 & n.3 (4th Cir. 2019) (citations and quotation marks omitted). Public.Resource.Org provides a substitute for Plaintiffs' Works. *Swatch Group Management Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014), is inapposite.  The court described Bloomberg's use as "arguably transformative" because it made a company's earning call publicly available while the underlying company intended "to restrict the information" to "a relatively small group of

analysts." *Id.* at 85.  Here, Plaintiffs and Public.Resource.Org both do the same

thing:  they make the Works accessible for free online.[8]

> **B.**  **Factors 2 and 3: Public.Resource.Org fails to show that the nature of Plaintiffs' Works, and the amount and substantiality of its copying, favor fair use.**

Each of these factors "demands an individual appraisal of each standard and

its incorporation" and "is ill-suited to wholesale resolution."  *ASTM II*, 896 F.3d at

451-52.  Plaintiffs showed that, despite a lengthy appendix, the district court did not

give individual consideration to the vast majority of Works.  Appellants' Br. 34-37.

---

[8] Although Public.Resource.Org is a non-profit, Plaintiffs maintain that its use is commercial because it fundraised by promising to copy and distribute Plaintiffs' Works.   JA296-297 (SMF ¶¶227-29); *see also $10 million for Project 10^100 winners*, Google Blog (Sept. 24, 2010) https://googleblog.blogspot.com/2010/09/ 10-million-for-project-10100-winners.html.

Public.Resource.Org's primary response is to repeat its argument that IBR'ing makes the entire standard "essential."[9]  Appellee's Br. 42-43, 46.  As demonstrated, that argument fails.  *See supra*, III.A.1.[10]

### C.   Factor 4: Public.Resource.Org failed to meet its burden to show a lack of market harm.

#### 1.   The district court erred in shifting to Plaintiffs Public.Resource.Org's affirmative-defense burden.

Public.Resource.Org fails to rebut Plaintiffs' showing that *Campbell* and cases following it place the burden on Public.Resource.Org, the proponent of the affirmative defense of fair use.  Appellants' Br. 40-42.

---

[9]  Plaintiffs pointed out that the district court held that the regulation incorporating ASTM D2036 (1998) supported posting only certain test procedures— but that for other Works IBR'd by the same regulatory language (ASTM D1688 (1995) and ASTM D512 1989 (1999)), Public.Resource.Org was not limited to copying test procedures, but could *also* copy background sections and appendices. Appellants' Br. 37-38.  Public.Resource.Org argues that the district court treated ASTM D2036 differently because "it found that only two of the four testing methods described in that standard had been incorporated," while *all* the test procedures in the other standards were IBR'd.  Appellee's Br. 47.  That distinction would explain why Public.Resource.Org could copy half the test procedures in ASTM D2036 and all the test procedures in the other standards.  But it does *not* explain the district court's holding that Public.Resource.Org could copy material *other than test procedures* for ASTM D1688 and ASTM D512.

[10]  Public.Resource.Org's assertion that partially incorporated standards are "inherently bound together" with the "uncopyrightable idea" of the agencies' "decisions" to IBR, Appellee's Br. 45 (citation omitted), is specious.  The "fact" or "idea" of any agency IBR'ing all or part of a Work can be expressed in a sentence stating that fact; it does not justify copying it.

*Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996), Appellee's Br. 49, does not change this. The court not only found the defendant's use *was* commercial, but it explained that market harm was obvious because if others "were to start doing what the defendants have been doing here," the plaintiffs' "revenue stream would shrivel and the potential value of the copyrighted works" would drop. *Princeton*, 99 F.3d at 1387. The same is true here.

### 2. The uncontroverted evidence shows that Public.Resource.Org's copying causes market harm.

The pivotal question is "whether Defendants' use—taking into account *the damage that might occur if 'everybody did it'*—would cause substantial economic harm." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1276 (11th Cir. 2014) (emphasis added). The answer is clear: if everyone could copy and distribute any Work IBR'd anywhere, that would cause Plaintiffs substantial economic harm. "The threat of market substitution here is great and thus the fourth factor looms large in the overall fair use analysis." *Id.* at 1275. Even if *some* copying of limited portions were permissible fair use, Public.Resource.Org's wholesale copying and distribution cannot be justified.

Public.Resource.Org argues there was no harm because witnesses said it was difficult to quantify precisely how many sales Plaintiffs *had* lost because of Public.Resource.Org's conduct. Appellee's Br. 49-50. This argument improperly conflates the fact of harm to *potential* markets (which is all that needs to exist) with

26

the precise quantification of harm. *McGucken v. Pub Ocean Limited*, 42 F.4th 1149, 1163 (9th Cir. 2022) ("an infringing use would destroy a derivative market when the infringing work is of the same type as existing works by licensed users."); *see also Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 64 (1st Cir. 2012) (rejecting argument that plaintiff had "not shown specific lost sales or profits" because "inquiry cannot be reduced to strictly monetary terms"). The cited testimony, Appellee's Br. 49-50, actually explained that Public.Resource.Org's copying and distribution "caused a drag on [ASTM's] revenue," even if the amount was not easily quantified, JA8082 (Dkt. 204-51, Grove Dep. 145:07-12). The evidence further showed that Public.Resource.Org took users who would otherwise have gone to Plaintiffs' free-access sites and may have purchased Plaintiffs' Works, JA5110-5114, 5115 (2d. Supp. SMF ¶¶97-99, 102); *infra*, 30; and that Plaintiffs' licenses would have less value if licensees could obtain the Works from Public.Resource.Org, JA5106, 5115 (2d. Supp. SMF ¶¶82, 101); JA4995 (Dkt. 198-50, ¶36).

The record includes an unrebutted expert economist opining on the fact of economic harm and the consequences of Public.Resource.Org's conduct if unaddressed. That evidence analyzed the specific numbers of views and downloads of the Works through Public.Resource.Org (as of 2014) and estimated that, in light of an NFPA study showing a ten percent decrease in downloads of NFPA 70 due to

27

numerous online postings of NFPA standards, NFPA was experiencing an equal or greater impact after Public.Resource.Org's postings. JA763-765 (Jarosz Report ¶133). It also included the economic consequences if Public.Resource.Org's conduct—which *currently* covers a small fraction of Plaintiffs' standards—were not stopped: "virtually all of the [] revenues"— ██████████████ 70.2% for NFPA, 49.5% for ASHRAE—"could be lost." JA765-766, 815 (Jarosz Report ¶¶134-35, Tab 5). And it highlighted that many of Plaintiffs' current most important standards, which are not at issue here, have been IBR'd, meaning that giving Public.Resource.Org free rein to continue would lead to a substantial impact on Plaintiffs' standards. JA765-766 (Jarosz Report ¶135)

The record also contains abundant evidence that market harm will only grow if Public.Resource.Org and everyone else can wholesale copy and distribute the Works. Plaintiffs sell copies of their Works to the industries and professionals that use them in their jobs. JA5105-5106 (2d. Supp. SMF ¶¶77-80); JA4994, 4998 (Dkt. 198-50, ¶¶34, 43); JA674 (Dkt. 118-10, ¶¶17-18); JA4944 (Dkt. 198-49, ¶14). Public.Resource.Org's copying naturally leads to at least some of those industry professionals using its unlicensed copies *instead* of purchasing Plaintiffs' Works. JA5109 (2d. Supp. SMF ¶¶94-95); JA4995 (Dkt. 198-50, ¶35); JA6946 (Dkt. 198-53, ¶5); JA4944 (Dkt. 198-49, ¶16); *see also* AFSCME Br. 7. An engineering firm reached out to Public.Resource.Org asking "How might we access the documents

28

you offer?" and another engineer asked, after this Court's prior remand, "Does Friday's decision mean you can update the site?" JA5108-5109 (2d. Supp. SMF ¶93); JA4938, 4935 (Dkt. 198-48, Ex. 173 at PRO_00267293, PRO_00267241).

The fact of "everyone doing" what Public.Resource.Org has done is not theoretical. UpCodes obtained venture-capital funding for its for-profit business, which entices paying subscribers with unrestricted access to NFPA and ASHRAE Works. *See UpCodes, Inc.*, No. 21-5262 (C.D. Cal.). Amicus American Federation of State, County, and Municipal Employees argues that union members *and management* should be able to obtain the Works for free instead of paying for them. AFSCME Br. 3-4.

### 3. Public.Resource.Org's truncated responses to this Court's questions further confirm market harm.

The Court asked the district court and parties to attend to three market-harm questions on remand. *ASTM II*, 896 F.3d at 453. Public.Resource.Org devotes 12 lines to these questions. Appellee's Br. 51. Public.Resource.Org tries to minimize these questions because the record does not support its fleeting attempt to answer them.

First, Public.Resource.Org says Plaintiffs are like "[p]ublishers of public domain works," *id*., but that is not true. A public-domain publisher pays distribution, not content-creation, costs. Plaintiffs, in contrast, incur *millions* of dollars annually to develop and update their Works. *See supra* 5.

29

Second, Plaintiffs' read-only access—as compared to Public.Resource.Org's unauthorized wholesale distribution—brings individuals and professionals to Plaintiffs' websites, where they may buy a copy, subscribe, or purchase a training or other resource. JA5107-5109 (2d. Supp. SMF ¶¶88-90, 94); JA4998-4999 (Dkt. 198-50, ¶45); JA6946 (Dkt. 198-53, ¶4); JA4944 (Dkt. 198-49, ¶15). Public.Resource.Org siphons those potential customers away.

Third, Public.Resource.Org says it "seeks" to post only "the law," Appellee's Br. 51, but as demonstrated in Section III.A, it posts more than that.

Fourth, contrary to Public.Resource.Org's unsubstantiated statement that "superseded" versions have "minimal" commercial value, Public.Resource.Org admits that they are often perfect substitutes for later editions. Appellee's Br. 50; *id.* 39 (admitting "post[ing] . . . an *identical reissue* of the incorporated standard"); JA5109 (2d. Supp. SMF ¶96); JA4944 (Dkt. 198-49, ¶17).

### 4. At a minimum, there is a disputed fact issue on factor four.

Plaintiffs should prevail as a matter of law on factor four, but if not, the question should be remanded. Drawing all reasonable inferences in favor of Plaintiffs, there is at least a disputed fact question on market harm. JA8808-8816 (Dkt. 212-1, ¶¶133-65).

Echoing the district court's erroneous conclusion, Public.Resource.Org says Plaintiffs failed to show market harm for several years before that court's order.

Appellee's Br. 48.  But this ignores that Public.Resource.Org, at the district court's

request, stopped posting Plaintiffs' Works from November 2015 until at least July

2018.  JA289 (SMF ¶¶185-86); JA5063 (2d. Supp. SMF ¶¶11-12).  Courts exclude

that time from the calculus.  *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d

1257, 1275 n.32 (11th Cir. 2001) (relevant period for assessing harm was after the

court "lifted the injunction").  From July 2018 through present, Public.Resource.Org

almost entirely refrained from posting the most updated versions of IBR'd Works,

further masking the effect of unrestrained infringement.  Starting in January 2019,

Public.Resource.Org posted a single more-current standard, the then-most-recent

edition (2017) of NFPA's National Electrical Code.  JA5117 (2d. Supp. SMF ¶110);

JA4994 (Dkt. 198-50, ¶30); JA4933 (Dkt. 198-48, Ex. 167 at 6).  Discovery was

open for only six months after that.  *See* Order, Feb. 26, 2019 (reopening case) and

Order May 22, 2019 (fact discovery closed Sept. 9, 2019).[11]

This Court said Plaintiffs "are right to suggest that there may be some adverse

impact on the market for the copyrighted works [Public.Resource.Org] reproduced

---

[11]  In that time period, NFPA 70 (2017) was accessed through
Public.Resource.Org 5,320 times, JA4933 (Dkt. 198-48, Ex. 167 at 6), and NFPA's
overall sales, largely driven by sales from its flagship standard, NFPA 70, had also
been decreasing, including through this time period.  JA4995 (Dkt. 198-50, ¶38).
The most recent access count for NFPA 70 through Public.Resource.Org has now
increased *seven times*.  *See* Internet Archives, https://archive.org/details/
gov.law.nfpa.nec.2017/gov.law.nfpa.nec.2017/ (accessed Jan. 13, 2023).

on its website," and simply noted that "it remains unclear from this record just how serious that impact is." *ASTM II*, 896 F.3d at 453. The district court previously recognized that "the only logical conclusion" is that "where consumers in the online marketplace are currently presented with the option to purchase a PDF or hard copy version of Plaintiffs' standards directly from them, or may download a PDF of an identical standard for no cost," "this choice negatively impacts the potential market for Plaintiffs' standards." JA4041 (Dkt. 175, at 39); *McGucken*, 42 F.4th at 1164 (potential market harm when infringing work was a "ready market substitute"). At a minimum there is a genuine dispute of fact that if Public.Resource.Org's conduct became unrestricted and widespread, it would adversely impact the market for the Works and the market for derivative works.

In addition to the evidence cited above, judicially-noticeable evidence shows that, since the summary judgment record closed, NFPA's revenue has gone down cycle-over-cycle following the lifting of the district court's injunction. Between 2016 (a year in which a new version of the National Electrical Code was released and *no* version of the Code was available through Public.Resource.Org) and 2019 (the next year in which a new version of the Code was released but Public.Resource.Org *had* posted prior versions of the Code), NFPA's publication

32

revenue was down *$5.6 million*.[12]  These figures were not available when the district court considered the evidence and show that NFPA's revenue decreased after Public.Resource.Org resumed distribution of NFPA's standards.

### 5.  The claimed "public benefits" from Public.Resource.Org's unrestricted copying are illusory.

Public.Resource.Org argues that *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021), requires the Court to factor into the fourth factor "the public benefits the copying will likely produce," *id*. at 1206.  Appellee's Br. 48, 53-55.  But *Google* said this was relevant because of the unique context—computer program application programming interfaces—where enforcement of the copyright risked public harm because programmers faced potentially prohibitive switching costs that could deter new creativity.  141 S. Ct. at 1206, 1208.

No similar concerns exist here.  Plaintiffs provide online access to the Works, JA5107 (2d. Supp. SMF ¶85), so anyone who wants to know what they say does not have to buy a copy.  This case involves the "normal[] conflict" between "potential or presumed losses to the copyright owner" and "copyright's basic objective: providing authors with exclusive rights that will spur creative expression."  *Google*,

---

[12]  NFPA's tax filings are available at https://projects.propublica.org/ nonprofits/organizations/41653090. Its expenses and revenues are typically in the tens of millions.  Publication revenue was $48 million in 2016 and $42.4 million in 2019, with increased expenses.  *Compare* Form 990s, Part III.4a.  This Court can take judicial notice of information in tax filings.  *See MidCap Media Finance, LLC v. Pathway Data, Inc.*, 929 F.3d 310, 315 (5th Cir. 2019).

141 S. Ct. at 1206; *see also Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 461 (9th Cir. 2020) (same).

Public.Resource.Org claims that even absent copyright protection, Plaintiffs would have incentives to develop standards. Appellee's Br. 52-53. But Plaintiffs would not have the means that copyright provides to act on those incentives. JA741-743, 745-746, 748-749, 763-766 (Jarosz Report ¶¶80, 82-83, 90-91, 97-98, 131-38); JA264-265, 273, 283-284 (SMF ¶¶45-48, 51-52, 106-108, 152-156); JA5105-5107 (2d. Supp. SMF ¶¶77-84) If copying like Public.Resource.Org's becomes pervasive, the public-private partnership in standards that has served the public well for decades may cease to exist.

## IV.   Public.Resource.Org's Arguments Do Not Change The District Court's Abuse Of Discretion In Refusing To Enjoin The Infringement It Found.

The district court, after rejecting the fair use defense and finding Public.Resource.Org infringed 32 Works, JA9300 (Memorandum Opinion 36), found:

- Plaintiffs suffered at least a threshold amount of irreparable harm. JA9309-9311 (Memorandum Opinion 45-47).

- Monetary relief is inadequate, as Public.Resource.Org does not have the financial means to satisfy any judgment. JA9310 (Memorandum Opinion 46); JA299-300, 304 (SMF ¶¶241-44, 272-73); JA5108, 5117 (2d. Supp. SMF ¶¶92, 111).

- The balance of hardships "weighs strongly in favor of an injunction," and an injunction serves the "policy interests that underlie the Copyright Act" by preserving the necessary financial incentives to "ensure continued development of technical standards." JA9311 (Memorandum Opinion 47).

Given these findings, it was an abuse of discretion to allow Public.Resource.Org to continue its infringement unabated. Public.Resource.Org's contrary arguments fail.

First, Public.Resource.Org's argument that Plaintiffs have not proven ownership of the 32 works, Appellee's Br. 56, is specious, *see supra*, II.

Second, Public.Resource.Org is wrong that Plaintiffs suffered no economic harm. Appellee's Br. 56. Plaintiffs demonstrated several forms of harm; their showing was not "meager." JA9295 (Memorandum Opinion 31); *see* Appellants' Br. 50-55; *supra*, III.C.2

Third, Plaintiffs' future harm is not speculative. Following remand, Public.Resource.Org reposted the 32 Works, notwithstanding the lack of IBR. JA9300 (Memorandum Opinion 36). Copies of these Works were viewed and downloaded over *42,000 times*. *See* JA5110-5114 (2d. Supp. SMF ¶98) (views and downloads of the 32 Works).

Fourth, Public.Resource.Org's track record makes the likelihood of future infringement manifest. Appellants' Br. 54.

35

Fifth, Public.Resource.Org is wrong that "'harm to the exclusivity of [Plaintiffs'] rights' is irrelevant under *eBay [Inc. v. Mercexchange, LLC]*." Appellee's Br. 57. An invasion of exclusive rights *alone* may not create a presumption of irreparable harm, but it is not *irrelevant. See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 712 (D. Md. 2012) (plaintiff "demonstrated that its loss of exclusive control over its copyrighted content is likely to lead to irreparable harm"), *aff'd*, 722 F.3d 591 (4th Cir. 2013). Injunctive relief is necessary here because everyone who has downloaded (or will download) a copy from Public.Resource.Org can become an entirely new engine of unrestricted distribution. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007) ("virtually unstoppable" threat of future copyright infringement for downloaded works (citation omitted)).

Sixth, Public.Resource.Org is wrong that "reputational injury" is categorically irrelevant to the copyright irreparable harm inquiry. Appellee's Br. 58. Public.Resource.Org misreads *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) (en banc),[13] which said that "harm must stem from copyright—namely, harm to [the] legal interests *as an author*." *Id.* (citing *Salinger v. Colting*, 607 F.3d 68, 81

---

[13] In *Garcia*, the Ninth Circuit did not "foreclose" any argument for reputational injury. 786 F.3d at 746. It found that the particular harm plaintiff sought to prevent, including death threats and reputational injury, were too attenuated.

36

& n.9 (2d Cir. 2010)).   Public.Resource.Org caused reputational harm here by introducing errors that sometimes significantly alter the meaning of Plaintiffs' Works.   *See, e.g.*, JA295 (SMF ¶219).   The risk that, notwithstanding the disclaimers, a reader will misattribute these errors to Plaintiffs poses a significant reputational risk derived from Plaintiffs' legal interests as the author of the original works.   *See Nintendo of Am. Inc. v. Lewis Galoob Toys Inc.,* No. 90-15936, 1991 WL 5171 (9th Cir. Jan. 24, 1991) (recognizing irreparable harm based on impairment to plaintiff's reputation); *Metro. Reg'l*, 888 F. Supp. 2d at 712 (finding irreparable harm where defendant's inaccuracies were "likely to affect the credibility and integrity of the content published and disseminated by MRIS, and as a result, MRIS's reputation").

The balance of hardships and public interest favor Plaintiffs.   JA9311 (Memorandum Opinion 47)*.*   Public.Resource.Org essentially admits that it intends to post the entirety of any of the 32 Works if some portion of that work is ever IBR'd. Appellee's Br. 58.   As Public.Resource.Org concedes, if circumstances change that merit modification of an injunction, Public.Resource.Org can seek such modification, *see id.*, and it has admitted it will face no financial harm in the meantime, JA305 (SMF ¶277).   *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (court must weigh "*likely* consequences of the injunction" which cannot be "insubstantial" and "must be supported by evidence").

## CONCLUSION

The Court should vacate and remand the district court's decision in part and reverse in part.

Dated January 13, 2023

Respectfully submitted,

/s/  J. Kevin Fee
J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

*Counsel for American Society for Testing and Materials d/b/a/ ASTM International*

/s/  Jeffrey S. Bucholtz
Jeffrey S. Bucholtz
David P. Mattern
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 737-0500
jbucholtz@kslaw.com

Kenneth L. Steinthal
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
ksteinthal@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc.*

/s/  Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr.
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
donald.verrilli@mto.com

Kelly M. Klaus
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
kelly.klaus@mto.com

Rose Leda Ehler
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
rose.ehler@mto.com

*Counsel for National Fire Protection Association, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B).  As measured by the word-processing system used to prepare this brief, there are 8,392 words in the brief excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14 point font.

Dated:  January 27, 2023                */s/  J. Kevin Fee*
                                        J. Kevin Fee

# CERTIFICATE OF SERVICE

I certify that on January 27, 2023, a true and correct copy of this Appellants' Brief was filed via the Court's electronic filing system, which will forward a copy to all counsel of record.  I certify that all participants in this case are registered CM/ECF users.

Dated:  January 27, 2023                    */s/  J. Kevin Fee*
                                            J. Kevin Fee